# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FERROUS MINER HOLDINGS, LTD., | Case No. 14-12343 (BLS) |
| Debtor. | |
| | |
| In re: | Chapter 11 |
| GLOBAL NAPS, INC., | Case No. 14-12344 (BLS) |
| Debtor. | **Hearing Date: October 21, 2014 at 11:30 a.m. (ET)[1]**<br>**Objection Deadline: TBD** |

## MOTION OF CARL F. JENKINS, AS COURT-APPOINTED RECEIVER, TO DISMISS CHAPTER 11 BANKRUPTCY CASES PURSUANT TO 11 U.S.C. § 305(a)

Carl F. Jenkins ("**Mr. Jenkins**"), in his capacity as the court-appointed Receiver (the

"**Receiver**") of the assets and interests (including all shareholder and membership interests) of

Ferrous Miner Holdings, Ltd. ("**Ferrous Miner**") and Global NAPs, Inc. ("**GNAPs**"), hereby

files this motion (the "**Motion**") pursuant to section 305(a) of Title 11 of the United States Code

(the "**Bankruptcy Code**"), Rule 1017(d) of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**") and Rule 1017-2 of the Local Rules of Bankruptcy Procedure (the "**Local

Rules**") for entry of an order, substantially in the form attached hereto as **Exhibit A**, dismissing

---

[1] Contemporaneously herewith the Receiver is filing the *Motion to Shorten Time for Notice and Response to Motion of Carl F. Jenkins, as Court-Appointed Receiver, to Dismiss Chapter 11 Bankruptcy Cases Pursuant to 11 U.S.C. § 305* (the "**Motion to Shorten**"), and has requested that the Court hold a hearing on this Motion on October 21, 2014 at 11:30 a.m. (ET).  Once the Court enters an Order establishing a date and time for the hearing on this Motion the Receiver will file a Notice of Hearing giving notice of the hearing.

these Chapter 11 bankruptcy cases.  In support of this Motion, the Receiver respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      The commencement of these cases is the latest effort of the Debtors' former principal, Frank Gangi, to thwart the orderly wind-down of the Debtors (which have not been operating for years) and numerous related companies in proceedings that have been pending for years in the United States District Court for the District of Massachusetts (D. Mass, Case No. 02-12489), and which now stand near completion.  Mr. Gangi, who no longer controls the Debtors or their various subsidiaries and has no lawful authority to act on their behalf, filed the bankruptcy cases in an inappropriate attempt to stay certain hearings that had been scheduled for October 15, 2014 in the Massachusetts District Court (including a motion for an order directing the sale of Mr. Gangi's personal residence and a turnover and contempt motion directed at Mr. Gangi), and a court-supervised sale hearing scheduled for October 22, 2014.  The filing of the bankruptcy petitions was unaccompanied by any schedules, requests for relief, proposed plan or even a declaration that explains to this Court why the cases were filed and what the alleged debtors hope to achieve by the bankruptcy cases.  This is because the filings are nothing more than an abuse of the bankruptcy process aimed at doing an end-run around the pending receivership proceeding and its sale and claims process.  As a consequence, these cases should be dismissed.

**JURISDICTION AND VENUE**

2.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of

Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), and the Court may enter a final order consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 305 of the Bankruptcy Code, Bankruptcy Rule 1017, and Local Rule 1017-2.

## BACKGROUND

**A.      The Receivership Proceedings in Massachusetts District Court**

5.      Mr. Jenkins was appointed the Receiver of the assets and interests of Ferrous Miner and GNAPs in May 2010 by the United States District Court for the District of Massachusetts (the "**Massachusetts District Court**") pursuant to the *Amended Order for Appointment of Keeper and Receiver* [Docket No. 624] (the "**Receivership Order**") entered in a case pending before the Massachusetts District Court styled *Global NAPs v. Verizon New England, Inc.*, Civil Action Nos. 02-12489 (RWZ) and 05-10079 (RWZ) (the "**District Court Litigation**").[2]  A true and correct copy of the Receivership Order is attached hereto as **Exhibit B**.

6.      Prior to being appointed Receiver, Mr. Jenkins was appointed Monitor pursuant to the Massachusetts District Court's June 15, 2009 *Order Appointing Monitor* [Docket No. 589] (the "**Monitor Order**"), a true and correct copy of which is attached hereto as **Exhibit C**.  The Monitor Order appointed Mr. Jenkins as Monitor of all of the Judgment Debtors' property and

---

[2] The Receiver was initially appointed Receiver pursuant to the Massachusetts District Court's *Order for Temporary Appointment of Keeper and Receiver* [Docket No. 614] (the "**Temporary Receiver Order**"), entered on May 3, 2010.  The Massachusetts District Court subsequently entered the *Order for Appointment of Keeper and Receiver* [Docket No. 617] on May 6, 2010.  The Receivership Order was then entered on May 13, 2010, and remains the operative order of the Massachusetts District Court governing the Receiver's rights and responsibilities.

interests which was subject to the court's prior orders. Some of the Judgment Debtors' misconduct to that point in the Massachusetts District Court proceedings, and the court's reasoning in appointing Mr. Jenkins as Monitor, is summarized at page 3 of the Monitor Order:

> It is undisputed that Judgment Debtors: (1) transferred funds in the amount of approximately $4,000,000 to a bank account at TD Banknorth held in the name of Global NAPs Financial Services, Inc. ("GNAPs Financial") between December 5, 2008, and March 31, 2009; and (2) transferred funds in the amount of approximately $1,000,000 to an account held by Chesapeake Investment Services, Inc. ("Chesapeake") between December 5, 2008, and March 31, 2009. These actions violated the orders of this court. Judgment Debtors concede that the purpose of these transfers was to prevent creditors from locating and executing upon the assets, but assert that the funds were all used to pay the companies' reasonable and necessary business expenses. The court concludes that under these circumstances and given the traverse of this case, appointment of a Monitor to oversee and monitor the flow of funds into and out of the Judgment Debtors and related entities is appropriate and necessary to preserve both the companies' assets and the ability of Verizon and the Southern New England Telephone Company ("SNET") to satisfy their respective judgments.

Monitor Order, at p. 3.

7.      Nearly one year later, on May 3, 2010, the Massachusetts District Court entered the Temporary Receiver Order after Verizon New England Inc. ("**Verizon**"), which holds a Massachusetts District Court judgment in the amount of $57,716,714 against GNAPs, Ferrous Miner, various of their affiliate entities, and their former owner Frank Gangi ("**Mr. Gangi**" and collectively with GNAPs, Ferrous Miner, and their affiliated judgment debtors, the "**Judgment Debtors**"), filed a motion (the "**Receivership Motion**") seeking, *inter alia*, the appointment of a receiver over the property and interests of the Judgment Debtors to prevent the transfer of the Judgment Debtors' assets. On May 13, 2010, the Massachusetts District Court entered the Receivership Order.

8.      By the Receivership Order, the Receiver was granted, in relevant part:

> [T]he usual powers and duties according to the laws of the
> Commonwealth, over all the property and interests of the Judgment
> Debtors as identified in paragraphs (2a) and (2b) of this Order, and
> orders that the Receiver is authorized to take any actions to
> identify, safeguard and preserve the assets of Judgment Debtors, ***to
> make all business decisions over the assets and operations of the
> Judgment Debtors***, and to implement, satisfy and enforce this
> Order

Receivership Order, at ¶ 1 (emphasis added).

9.      The receivership property over which the Receiver was granted authority includes

all real and personal property of the Judgment Debtors, including GNAPs and Ferrous Miner

(but excluding Mr. Gangi's personal bank accounts).   Importantly, "Receivership Property"

includes  are "[a]ll shares and/or membership interests in … Ferrous Miner Holdings, Ltd. [and]

Global NAPs, Inc."  Receivership Order, at ¶ 2(b).  Thus Mr. Gangi's shares in Ferrous Miner,

and Ferrous Miner's shares in GNAPs, all are Receivership Property.

10.      The Receivership Order also imposed restrictions on the Judgment Debtors,

including Mr. Gangi, with respect to the Receivership Property:

> Judgment Debtors and Frank Gangi are restrained from: (i)
> disposing of the Receivership Property and any and all funds or
> property now or hereafter subject to this Order, except to transfer
> the Receivership Property to the Receiver; (ii) diverting,
> concealing, encumbering, or transferring any of the Receivership
> Property for any purpose; (iii) ***interfering in any manner with the
> discharge of the Receiver's duties under this Order***; and (iv)
> doing any act that will diminish or impair the value of the
> Receivership Property or Verizon's or SNET's interest therein.

Receivership Order, at ¶ 14 (emphasis added).

11.      In accordance with his rights and responsibilities under the Receivership Order,

for more than four years the Receiver has engaged in a court-supervised process of marshalling,

accounting for and liquidating the Judgment Debtors' assets.  During that time the Receiver has

sought and received approval from the Massachusetts District Court to sell almost all of the

assets of the Judgment Debtors.   All of the operating companies over which the Receiver was granted control have been sold or liquidated and closed through the Receivership, and there have been no operating companies for over two years.  Consequently, the principal assets that remain to be liquidated are a parcel of real property in Georgia, for which a sale motion is scheduled to be heard on October 22, 2014, and certain intellectual property.

12.      The Receiver's ability to conduct this liquidation process has been complicated immensely by the conduct of Mr. Gangi, the unauthorized filing of these bankruptcy petitions being only the latest example.  Mr. Gangi has been sanctioned by the Massachusetts District Court for transgressions in the District Court Litigation, including for destroying documents.  In February 2012, given Mr. Gangi's prior history of interference, the Massachusetts District Court specifically enjoined Mr. Gangi from interfering with a sale of Receivership Property.   That injunction was upheld on appeal to the United States Court of Appeals for the First Circuit, which found the injunction was "amply warranted" given Mr. Gangi's history of employing "nefarious tactics to avoid meeting his responsibilities to others."  *See Global NAPs, Inc. v. Verizon New England, Inc.,* Case Nos. 09-1308 and 09-1309 (1st Cir. Apr. 29, 2010), at p. 41-45, attached hereto as **Exhibit G.**

13.      In or about June 2012, the Receiver determined that the liquidation process was winding down and that a claim process should be established to facilitate the distribution of proceeds to creditors and the closure of the case.  On August 21, 2012, the Receiver sought, by the *Receiver Carl F. Jenkins' Motion for an Order Establishing Bar Date for Filing Claims and Approving Form and Manner of Notice Thereof* [Docket No. 893-4], to establish a process for the filing, evaluation and resolution of claims by putative creditors of the Judgment Debtors. Pursuant to the Massachusetts District Court's August 22, 2012 *Order Establishing Deadline for*

*Filing Claims and Approving the Form and Manner of Notice Thereof* [Docket No. 894], that

claims process was approved and has been undertaken.  Approximately 95 claims were filed, and

the Receiver has filed submissions with the Massachusetts District Court objecting to and

making recommendations with respect to the filed claims.  The Receiver expects that the

Massachusetts District Court in the near future will be determining the allowability and amounts

of the claims filed against the Judgment Debtors.[3]

> **B.**      **The Receiver's Pending Sale of Atlanta Property**

14.      On September 25, 2014, the Receiver filed in the Massachusetts District Court the

*Receiver's Motion for an Order Authorizing and Approving Private Sale of 1003 Donnelly Ave.,*

*Atlanta, Georgia Free and Clear of Liens, Claims and Encumbrances* [Docket No. 1178] (the

"**Sale Motion**"), a true and correct copy of which is attached hereto as **Exhibit D**.  By the Sale

Motion the Receiver seeks authority to sell Receivership Property consisting of real property

located at 1003 Donnelly Avenue, Atlanta, Georgia (the "**Atlanta Property**") for $600,000.00

(the "**Proposed Sale**"), free and clear of all liens, claims and encumbrances.  The Receiver also

sought authority to notice the private sale and solicit higher and/or better offers in connection

with the notice (the "**Sale Notice**").

15.      On September 26, 2014, the Massachusetts District Court approved the Sale

Notice and set a hearing for this coming Wednesday, October 22, 2014, at 3:00 p.m. (the "**Sale**

**Hearing**") for the Court to consider the Sale Motion and Proposed Sale.

---

[3] Paragraph 16 of the Receivership Order provides that 90% of the Receivership Property shall be
distributed to Verizon, and the remaining 10% shall be distributed to Southern New England Telephone Company,
which holds a judgment entered by the United States District Court for the District of Connecticut against certain of
the Judgment Debtors, including GNAPs and Ferrous Miner, in the amount of $5,593,542.86.  The Receiver expects
that as part of the claim process, the Massachusetts District Court will make Receivership Property available for
distribution on account of allowed claims  in addition to those held by Verizon and SNET in order of their priority.

16. On October 10, 2014, Mr. Gangi filed *Frank Gangi's Objection to Proposed Private Sale of 1003 Donnelly Avenue Property* [Sic] [Docket No. 1184] (the "**Sale Objection**"), a true and correct copy of which is attached hereto as **Exhibit E**. By his two-page Sale Objection, Mr. Gangi asserts that the $600,000 proposed sale price for the Atlanta Property is "far too low" based on a 2006 appraisal of the property.

**C.    Mr. Gangi Purports to File Bankruptcy Petitions on Behalf of Ferrous Miner and GNAPs**

17. On October 14, 2014, the day before a scheduled hearing in the Massachusetts District Court on a pending motion for an order directing the sale of Mr. Gangi's personal residence and a turnover and contempt motion directed at Mr. Gangi, and roughly one week before the scheduled Sale Hearing, Mr. Gangi filed chapter 11 bankruptcy petitions purportedly on behalf of Ferrous Miner and GNAPs, in derogation of the Receivership Order's directives that (i) the Receiver is to make all business decisions over the assets and operations of the Judgment Debtors, (ii) the Receivership Property includes all shares and/or membership interests in the Debtors and the other Judgment Debtors, and (iii) Mr. Gangi is not to interfere in any manner with the discharge of the Receiver's duties. The bankruptcy petitions were not accompanied by any applications, motions, or other requests for relief under the Bankruptcy Code, and none have been filed as of the date of this Motion. Neither Ferrous Miner nor GNAPs has sought a "first day hearing" before this Court, and Mr. Gangi has not submitted any affidavit or declaration explaining the events leading to bankruptcy, or his authority to act on behalf of the Debtors.

18. Mr. Gangi signed the Ferrous Miner bankruptcy petition as "Sole Director," and attaches an October 14, 2014 "Written Consent of Sole Shareholder of Ferrous Miner Holdings, Ltd." (the "**Ferrous Miner Shareholder Consent**") executed by himself, despite the fact that the Receivership Order expressly included as Receivership Property all shares and membership

interests in Ferrous Miner.  By the Ferrous Miner Shareholder Consent, Mr. Gangi purports to

have elected himself as the sole member of Ferrous Miner's board of directors, "authorized and

empowered to take any and all actions legally permissible on behalf of the Company," even

though the Receivership has exclusive control over shareholder interests that Mr. Gangi was

purporting to exercise.

19.    Mr. Gangi also attached to the Ferrous Miner bankruptcy petition an  October 14,

2014 "Written Consent of Sole Director of Ferrous Miner Holdings, Ltd." (the "**Ferrous Miner**

**Director Consent**") executed by himself, purporting to grant to him as sole director of Ferrous

Miner authority to execute on behalf of the company a chapter 11 bankruptcy petition and any

written consents for the filing of the petition.  The Ferrous Miner Director Consent also purports

to grant Mr. Gangi authority, in the company's name and on its behalf, to take or cause to be

taken any and all legally permissible action to carry out the chapter 11 filing, including retaining

bankruptcy counsel for Ferrous Miner.

20.    Mr. Gangi signed the GNAPs bankruptcy petition as its "Authorized

representative," and attaches an October 14, 2014 "Written Consent of Sole Shareholder of

Global NAPs, Inc." (the "**GNAPs Shareholder Consent**") executed by himself as authorized

representative of Ferrous Miner.  The GNAPs Shareholder Consent states that Ferrous Miner is

the sole shareholder of GNAPs, again despite the fact that Receivership Order expressly included

as Receivership Property all shares and membership interests in GNAPs.  The GNAPs

Shareholder Consent purports to authorize Mr. Gangi, as "authorized representative" to GNAPs,

to file a chapter 11 bankruptcy petition on behalf of the company.

21.    Notwithstanding the terms of the Receivership Order and the Massachusetts

District Court's February, 2012 order enjoining Mr. Gangi from interfering with a sale of the

Receivership Property, on October 15, 2014 purported bankruptcy counsel to Ferrous Miner and

GNAPs sent correspondence (the "**543(b) Letter**") to the Receiver demanding, pursuant to

section 543(b) of the Bankruptcy Code, that the Receiver "turn over to [Ferrous Miner and

GNAPs] all of the property of the Debtors, including their books and records, that are in [the

Receiver's] possession, custody or control, together with any accounting thereof, within 10 days

of the date of this letter.  The Debtors further demand that [the Receiver] immediately turn over

to them a list of all creditors of Global NAPs, Inc. and Ferrous Miner Holdings, Ltd., together

with the most recent mailing address for each creditor."  A true and correct copy of the 543(b)

Letter is attached hereto as **Exhibit F**.

## RELIEF REQUESTED

22.     By this Motion, the Receiver seeks entry of an Order pursuant to section 305(a) of

the Bankruptcy Code (a) dismissing the bankruptcy cases of Ferrous Miner and GNAPs because

(i) the filing of the bankruptcy petitions was in direct violation of the Receivership Order, (ii)

Mr. Gangi lacked corporate authority to file bankruptcy petitions on behalf of Ferrous Miner and

GNAPs, (iii) the bankruptcy petitions were filed in bad faith and without a proper purpose, (iv)

Mr. Gangi has engaged in prior improprieties with respect to the Judgment Debtors and their

assets, such that he is unfit to act on behalf of Ferrous Miner and GNAPs to protect the interests

of their creditors; and (v) the interests of creditors and the Debtors would be better served by

such dismissal or suspension; and (b) ordering that the Receiver is not directed or required to

comply with section 543 of the Bankruptcy Code.

## ARGUMENT

23.     Pursuant to section 305(a), the Court may, after notice and a hearing, dismiss a

bankruptcy case if the interests of creditors and the debtor would be better served by dismissal.

11 U.S.C. § 305(a). "Dismissal under section 305 is left to the discretion of the Bankruptcy Court, which in making this decision, considers a wide variety of factors including but not limited to: who filed the bankruptcy petition, the availability of another forum to handle the pending disputes, the necessity of federal proceedings to achieve a just and equitable solution, the expense of the federal proceedings in comparison to the proceedings in another forum, the purpose of the party seeking to remain in bankruptcy court, the economy and efficiency of having the bankruptcy court handle the matter and the possible prejudice to various parties." *Lackawaxen Telecom, Inc. v. S. Canaan Cellular Invs., LLC (In re S. Canaan Cellular Invs., LLC)*, 420 B.R. 625, 631 (E.D. Pa. 2009).

24.    Furthermore, section 1112(b) of the Bankruptcy Code also authorizes dismissal of a Chapter 11 case "for cause," including bad faith, and serves as a further basis for dismissal here.  11 U.S.C. § 1112(b); 7 *Collier on Bankruptcy* ¶ 1112.07[1].   A court may dismiss any case under section 1112(b) in order to prevent abuse of the Chapter 11 process or in response to misconduct that is incompatible with the functioning of the bankruptcy system.  7 *Collier on Bankruptcy* ¶ 1112.07[1].  The good faith standard focuses directly on the subjective intentions of the debtor and proper use of the bankruptcy system as a general system of equity.  *Id.; see also In re Ofty Corp.,* 44 B.R. 479, 482 (Bankr. D. Del. 1984) (in finding that a court-appointed receiver had standing to move to dismiss, under sections 305 and 1112(b), the chapter 11 case of the entity for which he served as receiver, noting that under Third Circuit law "where the circumstances indicate that persons have willfully misconducted a corporate enterprise, bankruptcy courts may refuse to permit them to use the bankruptcy system to create a situation more favorable to their interests than the receivership already established.") (*citing In re Distillers Factors Corp.,* 187 F.2d 685, 689 (3d Cir. 1951)).

A.   **Mr. Gangi Lacks Authority to File a Bankruptcy Petition for GNAPs and Ferrous Miner**

25.   The authority to file a bankruptcy petition on behalf of a corporation is determined by state law.  *See, e.g., Price v. Gurney,* 324 U.S. 100, 106-07 (1945); *In re Phillips,* 966 F.2d 926, 935 (5th Cir. 1992); *In re El Torreo Licores,* 2013 U.S. Dist. LEXIS 179953, at *15 (C.D. Cal. Dec. 20, 2013).  If the court finds that those who purport to act on behalf of the corporation are not authorized under state law to institute the bankruptcy proceedings, it must dismiss the petition.  *Price,* 324 U.S. at 106; *In re D&W Ltd.*, LLC, 467 B.R. 427, 432 (Bankr. E.D. Mich. 2012) (collecting cases and dismissing bankruptcy case under section 305(a) where the alleged president of the debtor entity did not have authority to file).

26.   The Receivership Order expressly grants the Receiver "the usual powers and duties according to the laws of the Commonwealth" and authorizes him "to make all business decisions over the assets and operations of Judgment Debtors."  Receivership Order, at ¶ 1.  Moreover, the Receivership Order enjoined the Judgment Debtors *and Mr. Gangi* from disposing of or transferring Receivership Property or interfering in any manner with the discharge of the Receiver's duties.  Receivership Order, at ¶ 14.  The Order also requires the Judgment Debtors *and Mr. Gangi* to, *inter alia*, turn over to the Receiver all books and records related to the Receivership Property."  Receivership Order, at ¶ 15.  In essence, the Receivership Order granted the Receiver full control over and authority to act on behalf of the Judgment Debtors, including Ferrous Miner and GNAPs, to the exclusion of Mr. Gangi.  As such, Mr. Gangi lacked authority to file bankruptcy petitions on behalf of those entities and his doing so was a direct violation of the Receivership Order .  *In re Allen-Foster-Willett Co.,* 227 Mass. 551, 557 (1917) (where under a receivership order the company's directors were not only commanded turn over to the receivers all corporate property and effects, but also were enjoined from interfering with, transferring or

encumbering property of the corporation, the receivership decree "ended all further corporate management [and] the receivers alone were empowered to settle and close the company's affairs, to sell and convey its property, and to distribute the proceeds as order by the court."

27.    Beyond the fact that control of Ferrous Miner and GNAPs was granted exclusively to the Receiver, all shares and membership interests in those entities are in the control of the Receiver.  Mr. Gangi is fully aware of this, as he has been deeply involved as a defendant in the District Court Litigation in the Massachusetts District Court.  Given this, it is simply inconceivable that Mr. Gangi believed he had authority as a purported shareholder of Ferrous Miner to appoint himself as sole member of its board and grant himself authority to file a chapter 11 bankruptcy petition on its behalf.  Likewise, Mr. Gangi could not have legitimately believed he could appoint himself the "authorized representative" of Ferrous Miner, as purported sole shareholder of GNAPs, empowered to file a chapter 11 bankruptcy petition on behalf of GNAPs as its authorized representative.  Rather, these illegitimate corporate acts were Mr. Gangi's attempt to do an end-around the Receiver's authority to act on behalf of Ferrous Miner and GNAPs by virtue of the Receivership Order.

28.    Dismissal of a bankruptcy petition is appropriate where the alleged debtor is in receivership and the person filing the bankruptcy petition lacks authority to file on behalf of the entity.  *Chitex Communication, Inc. v. Kramer,* 168 B.R. 587 (S.D. Tex. 1994) (dismissal was warranted where divorce decree divested a husband of his ownership interest in closely held corporation and appointed corporate receiver, such that husband lacked authority to file subsequent bankruptcy petition on behalf of the corporation, and stating that "it is axiomatic that a decree that vests 100% ownership and all rights of management of a closely held corporation in a receiver constitutes a de facto removal of [husband] from any position of authority."); *El*

*Torero Licores,* 2013 U.S. Dist. LEXIS 179953 at *18-19 (finding that bankruptcy court did not

err in dismissing bankruptcy petition filed by debtor's principals where debtor entity was in

receivership and the receiver had exclusive authority to file the bankruptcy petition); *see also*

*Citizens & N. Bank v. Pembrook Pines Mass Media, N.A.,* 2012 U.S. Dist. LEXIS 134894

(W.D.N.Y. Sept. 20, 2012*)* (suspending the bankruptcy proceedings pursuant to section 305(a)

where only the debtor entity's receiver had authority to file bankruptcy on behalf of the entity

and the case was filed without the receiver's consent).

29.     Mr. Gangi did not have authority under state law to act on behalf of or to file

bankruptcy petitions for   Ferrous Miner or GNAPs, either as a director or an authorized

representative.   That authority rests exclusively with the Receiver by virtue of the Massachusetts

District Court's Receivership Order.   The Court should therefore dismiss the bankruptcy

petitions under section 305(a) because their filings were unauthorized, and Mr. Gangi willfully

misconducted the corporate enterprise in filing them.

## B.     The Bankruptcy Petitions Represent Bad Faith Filings

30.     When the circumstances surrounding a debtor's Chapter 11 filing indicate a lack

of good faith**,** its petition may be dismissed. *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th*

*Ave. P'ship),* 113 F.3d 1304, 1309 (2d Cir. 1997).   "Good faith implies an honest intent and

genuine desire on the part of the petitioner to use the statutory process to effect a plan of

reorganization and not merely as a device to serve some sinister or unworthy purpose." *Chitex,*

168 B.R. at 590.   In issues of bad faith a bankruptcy court is advised to use its equitable powers

to reach an appropriate result in individual cases. *Norton Co.,* 113 F.3d at 1311, n.5.

31.     Dismissal of a bankruptcy case under section 305(a) of the Bankruptcy Code is

appropriate where the there is no legitimate reorganization purpose and the petition was filed in

bad faith to inappropriately invoke the automatic stay to frustrate a legitimate sale or disposition of property. *See, e.g., In re VII Holdings Co.*, 362 B.R. 663 (Bankr. D. Del. 2007) (detailing procedural history pursuant to which this Court granted a motion to dismiss an involuntary bankruptcy petition under section 305 because the petition was filed in bad faith for no other purpose other than to frustrate other creditors' actions related to the foreclosure of debtor's real property); *First Conn. Consulting Group, Inc. v. Mocco* (*In re First Conn. Consulting Group, Inc.*), 340 B.R. 210, 216 (D. Vt. 2006) (affirming bankruptcy court's dismissal of the bankruptcy cases of five entities under section 305 on the grounds that the persons who filed the cases did not own the debtor entities, such that the filing was unauthorized, and the petitions were filed in bad faith in an attempt to exercise control over property for the benefit of the filing persons' creditors and to defeat an imminent ruling in a state court lawsuit that would have vindicated a competing claim to ownership of the entities).

32.     Bad faith also exists where the person purporting to file the bankruptcy petition knows that they lack authority to file and does so simply to controvert legitimate court orders. *Chitex,* 168 B.R. at 590-91 (finding that the person purporting to file bankruptcy on behalf of the debtor entity exhibited bad faith in doing so because he knew or should have known that a prior divorce decree stripped him of all legal authority regarding the entity, and the filing was a misuse of the judicial process in an attempt to controvert the state court's ruling).

33.     Mr. Gangi filed these bankruptcy cases without authority one day before hearings scheduled in the Massachusetts District Court to consider a motion for an order directing the sale of Mr. Gangi's personal residence and a turnover and contempt motion directed at Mr. Gangi and the approval of a sale to which Mr. Gangi has filed a cursory Sale Objection alleging that the sale price is not high enough.  It is apparent that Mr. Gangi filed these cases in an attempt to invoke

the automatic stay under section 362 of the Bankruptcy Code to prevent those hearings from going forward.  The bad faith nature of the filing is made all the clearer by the fact that other than the naked bankruptcy petitions, Mr. Gangi has filed no motions or applications seeking any relief or authority from this Court, nor has he sought a hearing with this Court to advise it as to the reasons for filing and the plan going forward.  Mr. Gangi has not even filed the customary declaration or affidavit giving this Court and parties in interest an understanding of the reasons for filing the cases.

34.    This is because the bankruptcy filings serve no legitimate purpose, and were initiated only to halt proceedings in the Massachusetts District Court, to frustrate the Receiver's attempts to wind up the liquidation of the Judgment Debtors for the benefit of creditors and in derogation of the Massachusetts District Court's jurisdiction.  This Court should not countenance such brazen abuse of the bankruptcy process and the protections it affords, and should dismiss these bankruptcy cases under section 305(a) as having been filed in bad faith.

### C.    <u>Mr. Gangi Cannot Protect the Interests of the Debtors or Their Creditors</u>

35.    Finally, apart from his lack of authority and the bad faith nature of the bankruptcy filing, these bankruptcy cases should be dismissed because Mr. Gangi has proven he cannot be trusted to act in the best interests of the purported debtors or their creditors.

36.    Mr. Gangi's conduct in the District Court Litigation is all the evidence this Court needs for a finding that he is not an appropriate person to be charged with administering the debtors' alleged bankruptcy estate.  Mr. Gangi has shown a willingness and propensity to engage in sanctionable destruction of records rather than produce them in compliance with legal obligations.  Verizon's claims in the District Court Litigation asserted damages for access charges that GNAPs failed to pay Verizon for service between 2003 and 2006, and the other

Judgment Debtors and Mr. Gangi were brought in under veil-piercing and alter ego liability claims.  The Massachusett District Court awarded $57 million in damages against GNAPs and also  entered default judgment on Verizon's veil piercing claim against the GNAPs, Gangi, and three GNAPs affiliates as a discovery sanction for willful discovery misconduct by the Judgment Debtors and, in particular, Mr. Gangi.  In finding such an extraordinary measure appropriate, the Massachusetts District Court made a number of factual findings that, on appeal, the First Circuit Court of Appeals determined were well supported by the record because the "evidence these defendants committed misconduct and spoliation was compelling.":

- Mr. Gangi lied to the Massachusetts District Court about the records the Judgment Debtors kept and claimed ignorance about how the companies processed their finances, even though he owned the companies and paid their taxes.  Incredibly, Mr. Gangi represented to the court that he did not know where he had bank accounts, and that if he wanted to know whether he had an account at a bank, he would call that bank.  The First Circuit reasoned that the Massachusetts District Court "could easily find" this testimony inherently incredible and nonsensical.

- The Judgment Debtors withheld and destroyed financial records germane to the litigation.

- The Judgment Debtors lied to the Massachusetts District Court about their "loss" of financial records.

*See Global NAPs, Inc. v. Verizon New England, Inc.,* Case Nos. 09-1308 and 09-1309 (1st Cir. Apr. 29, 2010), at p. 41-45, attached hereto as **Exhibit G**.

37.     In a subsequent opinion the First Circuit, addressing an appeal Mr. Gangi filed to challenge an injunction the Massachusetts District Court issued in connection with a sale of Receivership Property, concluded that Mr. Gangi's track record renders him untrustworthy with respect to corporate assets:

> The current situation amply warranted issuance of the injunction. The district court of course had no way of knowing precisely how Gangi might interfere with the Receiver's ability to transfer Broadvoice and Convergent to QS or how Gangi might damage the value of Broadvoice, Convergent, or their assets. The court nonetheless had every reason to fear that he might inflict injuries that were difficult to detect, let alone measure. *Over the past decade, Gangi repeatedly has employed nefarious tactics to avoid meeting his responsibilities to others. He has shown an apparent propensity to use technology to cover his tracks. The district court quite rightly feared more of the same.*

*See Global NAPs, Inc. v. Verizon New England, Inc.,* Case Nos. 12-1102 and 12-1327 (1st Cir. Jan. 18, 2013), at p. 8-9 (internal citations omitted) (emphasis added), attached hereto as **Exhibit H**.[4]

38.     As the Receiver, the Massachusetts District Court and the First Circuit have learned, Mr. Gangi quite simply cannot be trusted to act in the best interests of anyone but himself. He is unfit to be an estate representative of Ferrous Miner or GNAPs, and cannot be entrusted with administration these cases for the benefit of the Debtors and their creditors. His purported filing of the bankruptcy petitions was an attempt to skirt the authority of the Massachusetts District Court, and such self-serving tactics will only continue in this Court. These cases should therefore be dismissed pursuant to section 305(a).

---

[4] The First Circuit also noted that after the Receiver began the process of liquidating the Receivership Property, "his efforts were hampered by [Mr.] Gangi, who, among other stratagems seemingly designed to conceal or protect his assets, apparently had transferred ownership of his $400,000 Porsche to a ten year old child." *See* **Exhibit H**, at p. 4.

D.    **The Receiver Should Not Be Required to Comply with Section 543 of the Bankruptcy Code**

39.    As noted above, and notwithstanding the express terms of the Receivership Order, purported bankruptcy counsel to the debtors sent the 543(b) Letter to the Receiver on October 15, 2014, demanding the turnover of the entities' books and records.  The Receiver should not be required to comply with the demands set forth in the letter, which violate the Receivership Order, because the bankruptcy filings, and the retention of purported bankruptcy counsel in connection with those filings, violated the Receivership Order and were unauthorized.  Moreover, Mr. Gangi has shown through his conduct in the District Court Litigation that he cannot be entrusted with corporate books and records.  Because Mr. Gangi does not have authority to act for Ferrous Miner or Global NAPs, the counsel he has purportedly retained is not authorized to seek those entities' records on his behalf, and because the turnover records would not be in the best interests of the creditors of Ferrous Miner and GNAPs, the Receiver should not be compelled to produce such records to purported bankruptcy counsel, and should be excused from the requirements of section 543.  *See* 11 U.S.C. § 543(d)(1); *In re 245 Assocs.*, 188 B.R. 743, 748 (Bankr. S.D.N.Y. 1995) ("After notice and hearing, the court may continue the receivership, and relieve the receiver from the duty to comply with the turnover and accounting requirements of section 543(b), if this better serves the interests of the creditors (and the solvent debtor's equity security holders).").

## CONCLUSION

WHEREFORE, for the reasons stated herein, the Receiver respectfully requests that the Court enter an Order pursuant to section 305(a) of the Bankruptcy Code dismissing the above-captioned bankruptcy cases, excusing the Receiver from compliance with section 543 of the

Bankruptcy Code, and granting the Receiver such other and further relief as may be just and proper.

Dated: October 16, 2007          PEPPER HAMILTON LLP
       Wilmington, Delaware

                                    /s/ Michael J. Custer
                                    David M. Fournier (DE No. 2812)
                                    Michael J. Custer (DE No. 4843)
                                    Hercules Plaza, Suite 5100
                                    1313 N. Market Street
                                    P.O. Box 1709
                                    Wilmington, Delaware 19801-1709
                                    (302) 777-6500

                                    *Proposed Counsel for the Receiver*