# EXHIBIT C

# MONITOR ORDER

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NOS. 02-12489-RWZ, 05-10079-RWZ

GLOBAL NAPS, INC.

v.

VERIZON NEW ENGLAND INC.

v.

GLOBAL NAPS NEW HAMPSHIRE, INC., GLOBAL NAPS NETWORKS, INC.,
GLOBAL NAPS REALTY, INC., FERROUS MINER HOLDINGS, LTD.
and FRANK GANGI

ORDER APPOINTING MONITOR

June 15, 2009

ZOBEL, D.J.

On May 27, 2009, the parties came before the court on Verizon New England Inc.'s Application for a Preliminary Injunction and Appointment of a Receiver, to Reach and Apply Shares, and for Findings of Civil and Criminal Contempt Sanctions. Verizon New England Inc. ("Verizon") seeks, inter alia, the appointment of a receiver over certain property and interests of Frank Gangi ("Gangi"); and the property and interests of Global NAPs, Inc. ("GNAPs"); Global NAPs New Hampshire, Inc. ("GNAPs New Hampshire"); Global NAPs Realty, Inc. ("GNAPs Realty"); Global NAPs Networks, Inc. ("GNAPs Networks"); and Ferrous Miner Holdings, Ltd. ("Ferrous Miner") (collectively with Gangi, the "Judgment Debtors").

On December 4, 2008, Verizon moved for a temporary restraining order and

preliminary injunction restraining the disposition of Judgment Debtors' assets. On December 5, 2008, the court informed counsel that it intended to issue the injunction and requested that the parties work out the terms of the restriction and any spending caps. The written temporary restraining order followed on December 9, 2008. On December 18, 2008, the court issued a preliminary injunction which enjoined Judgment Debtors and their affiliates "from alienating, transferring, encumbering or otherwise diminishing any interest any of them may have in any real or personal property"[1] but which permitted the Judgment Debtors to take "such actions as are reasonable and necessary to the ongoing and continued operation of the business in the ordinary course of business." (Docket # 508.) The order did not apply to "the reasonable and necessary personal and living expenses of Frank Gangi up to $10,000 per month." (Id. ¶ 2.) The court subsequently entered a judgment in the amount of $57,716,714 for Verizon and jointly and severally against Judgment Debtors (the "Judgment").

On March, 10, 2009, the court granted Verizon's ex parte application to reach and apply shares held by Judgment Debtors, ordered that those shares be placed in escrow pending the resolution of the appeal from the Judgment, and enjoined Judgment Debtors and their affiliates from transferring, alienating, or otherwise diminishing the value of their interests in the escrowed companies. (Docket # 563.)

---

[1] Such property included, but was not limited to, shares of RJ Equipment, Inc., CJ3, Inc., 1120 Hancock Street, Inc., Chesapeake Investment Services, Inc., 1003 Donnelly Avenue, Inc., BABP (VI), LLC, BABP, LLC, Convergent Networks, Inc., BroadVoice, Inc., Global NAPs, Inc., Global NAPs Realty, Inc., Global NAPs Networks, Inc., Global NAPs New Hampshire, Inc., and Ferrous Miner Holdings, Ltd. (Docket # 508 ¶¶ 1-2.)

2

It is undisputed that Judgment Debtors: (1) transferred funds in the amount of approximately $4,000,000 to a bank account at TD Banknorth held in the name of Global NAPs Financial Services, Inc. ("GNAPs Financial") between December 5, 2008, and March 31, 2009; and (2) transferred funds in the amount of approximately $1,000,000 to an account held by Chesapeake Investment Services, Inc. ("Chesapeake") between December 5, 2008, and March 31, 2009. These actions violated the orders of this court. Judgment Debtors concede that the purpose of these transfers was to prevent creditors from locating and executing upon the assets, but assert that the funds were all used to pay the companies' reasonable and necessary business expenses. The court concludes that under these circumstances and given the traverse of this case, appointment of a Monitor to oversee and monitor the flow of funds into and out of the Judgment Debtors and related entities is appropriate and necessary to preserve both the companies' assets and the ability of Verizon and the Southern New England Telephone Company ("SNET") to satisfy their respective judgments.[2]

Accordingly, the court orders as follows:

1.    Carl F. Jenkins of CBIZ Tofias is hereby appointed as Monitor of all the property

---

[2] A judgment in favor of SNET and jointly and severally against GNAPs, GNAPs Networks, GNAPs New Hampshire, GNAPs Realty and Ferrous Miner in the amount of $5,893,542.86 was entered by the United States District Court for the District of Connecticut on July 9, 2008. SNET has registered the judgment in this court and is also attempting to satisfy it. SNET and Verizon have agreed to the appointment of a monitor and to their respective responsibilities for payment of the monitor, as well as to a division of such assets remaining at the conclusion of the appeal from the Judgment, if appropriate.

and interests of the Judgment Debtors which is subject to this court's prior orders (collectively, the "Property").

2. Judgment Debtors, GNAPs Financial, Chesapeake and corporate entities wholly-owned and controlled by Judgment Debtors[3] shall be collectively referred to as the "Global Companies."

3. The Monitor shall supervise the receipt and payment of any and all monies held, except as provided in paragraph 7, in any bank account in the name of any of the Global Companies (the "Funds"), but excepting the personal account(s) of Frank Gangi, to verify that any payments made from the Funds are used to operate the business and pay the ordinary and routine business expenses of the Global Companies. The Monitor shall further supervise all other real and personal property of the Global Companies, excepting the personal account(s) of Frank Gangi, to ensure that interests in such property are not alienated, transferred, encumbered or otherwise diminished except as in the ordinary course of business.

4. The Monitor shall allow for payment of the compensation and benefits of all employees of the Global Companies, insurance, rent, taxes, utilities, goods or services received, out-of-pocket employee expenses incurred for business

---

[3] These entities include, but are not limited to, 1003 Donnelly Avenue, Inc.; 1120 Hancock Street, Inc.; 9 Executive Park Drive, Inc.; 959 Group of NH, Inc.; BABP, LLC; BABP (VI), LLC; BroadVoice, Inc.; Cable Internet Access, Inc.; Carrera GT, Inc.; Chesapeake; CJ3, Inc.; Convergent Networks, Inc.; Global Finance; Malibu Mirage Music, Inc.; RJ Equipment, Inc.; Sahara & Arden, Inc.; and Shout Out, Inc., (collectively, the "Judgment Debtors' Subsidiaries").

4

purposes, attorneys' fees, filing fees, and office and other expenses routinely incurred in the course of conducting a business. As often as the Monitor deems necessary, but in all events no less often than monthly, the Global Companies shall provide the Monitor with invoices or other documentation that reflects the amounts owed, the entity or person paid, any applicable due date, and a description of the goods or services provided or other explanation for the basis of all payments. In the case of an invoice for attorneys fees, the Global Companies need not, absent a further order of this court, provide the Monitor with an itemized explanation of the services rendered but rather shall provide only a non-itemized invoice so as to preserve attorney-client confidences or work-product that may otherwise be contained in an itemized invoice. In the case of payroll, the Global Companies shall provide the Monitor with a list of all eligible employees and the compensation earned for the applicable pay period. To the extent that insufficient funds exist to pay all obligations identified by management in full, the Monitor shall require payment in full of all expenses for which partial payment is not permissible, such as payroll and medical insurance premiums (which shall be paid first), and shall permit management, in its business judgment, to make partial payments of other expenses in the order management deems best.

5. The Monitor may require the Global Companies, their employees, officers, Directors or owners, in the first instance, to provide further information, explanation or documentation, which may include a sworn declaration, in support

of any expense. Should the explanation provided by the Global Companies be deemed by the Monitor to be insufficient, the Monitor may request that the Global Companies obtain further documentation from the party requesting payment. If the Monitor disallows any expense, or allows any expense in an amount less than the amount asserted, the Monitor shall immediately give written notice to the Global Companies. Any disputes between the Monitor and company management concerning the payment of any expense may be submitted to this court.

6. The Monitor shall hold in escrow, in any arrangement he deems acceptable (i.e., an escrow account or accounts or otherwise), all shares and/or membership interests held by Judgment Debtors and their affiliates as identified in the court's prior escrow order. (Docket # 563.) The Monitor is empowered to investigate the location and current status of the shares and/or membership interests.

7. The Monitor shall on a monthly basis review the personal bank account(s) statements of Judgment Debtor Frank Gangi to ensure compliance with the spending cap of $10,000 per month imposed by the court's December 18, 2008, order, and shall notify the court of any violation of its order.

8. The Monitor is authorized to take any actions to identify, safeguard and preserve the assets of Judgment Debtors and to implement, satisfy and enforce this Order. In particular, the Monitor shall have the right to make all such investigation and compel all such disclosure from employees, officers, Directors and owners of the Judgment Debtors as the Monitor deems necessary to

6

    perform his duties, including but not limited to examining all books and records of any type or nature relating to or evidencing the revenue and expenses of Judgment Debtors.

9. The Monitor is authorized to take any actions to ensure that any collection efforts by Verizon and SNET are in compliance with this court's prior orders and do not unduly interfere with the Global Companies' ability to maintain sufficient funds to pay reasonable business expenses incurred in the ordinary course of business.

10. Within a reasonable period of time after the end of each month, the Monitor shall provide a report summarizing the financial activities of the Global Companies during the previous calendar month, including all receipts and disbursements for such month, to the Global Companies and to counsel for Verizon and SNET. The Monitor shall promptly notify the court of any violation of prior orders of the court. The court may, in its discretion, impose civil and/or criminal contempt sanctions in the event that prior orders are found to be violated.

11. The Monitor shall be entitled to compensation for services rendered at the hourly rate of $ 600 per hour, and to be reimbursed for his reasonable expenses in connection with the Monitor's work. The Monitor may employ agents, employees, clerks and accountants incidental to his services; however, he may employ counsel only with permission of the court. The Monitor shall be entitled to reasonable compensation for services rendered by such personnel at the regularly hourly rates established by the Monitor. At such intervals as the

    Monitor deems appropriate, the Monitor may submit the Monitor's expenses to the parties for payment, such expenses to be borne, as follows: 50 percent by Judgment Debtors; 45 percent by Verizon; and 5 percent by SNET, and if necessary to secure payment from Judgment Debtors, may apply to the court for permission to receive payment of expenses from the Funds. In the event any party enters bankruptcy the fees shall be borne by the remaining parties.

12. The appointment of the Monitor is for the purpose of insuring compliance with this court's orders and for no other purpose and shall not serve as evidence of the ability or inability of the Judgment Debtors to pay business expenses as they become due. The appointment of the Monitor shall not be deemed to be the equivalent of appointment of a receiver or bankruptcy trustee.

13. Any and all persons claiming any interest in any of the Property shall be and hereby are enjoined from commencing any action in any court or elsewhere against the Monitor in connection with or otherwise based upon the discharge of the duties of the Monitor herein, except with the express permission of this court obtained after filing a motion on notice to the Monitor, all parties to this action, and SNET. Such restraint is not intended to bar any current action asserted against the Judgment Debtors or their affiliates in this or any other court.

14. The Monitor shall have no personal liability for his acts or omissions as Monitor other than gross negligence or willful misconduct. The Monitor shall, from the Funds, be indemnified and held harmless against any loss or liability of any nature whatsoever, and against the expense of defending against same, except

as to any act or omission determined by this court to be gross negligence or willful misconduct.

15. The Monitor, Judgment Debtors, Verizon and SNET may at any time apply to this court for further instructions and orders related to this Order and for additional powers necessary to enable the Monitor to perform his duties on noticed motion.

16. The Monitor shall file with this court under oath and under seal and serve upon the Judgment Debtors and counsel for Verizon and SNET a final account at such time as the court may order the termination of this Appointment. Upon the court's approval of the Monitor's final account and all applications for compensation, the Monitor shall make the final distribution and dispose of his records pursuant to the final account or as this court may otherwise direct, whereupon the Monitor may seek and shall receive from this court a final judgment discharging the Monitor. Should this court's Judgment be upheld, along with the judgment of the United States District Court for the District of Connecticut in <u>The Southern New England Tel. Co. v. Global NAPs, Inc., et al.</u>, No. 04-2075, the Property shall be distributed as follows: 90 percent to Verizon and 10 percent to SNET.

17. This court shall have exclusive jurisdiction over the Funds and Property, and the conduct of the Monitor established by this Order.

18. The court hereby VACATES the temporary restraining order imposed on May 22, 2009 (Docket # 577).

|  |  |
|---|---|
| June 15, 2009<br>DATE | /s/Rya W. Zobel<br>RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |