# Exhibit D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GLOBAL NAPS, INC | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. 02-12489-RWZ |
| v | ) | |
| | ) | Civil Action No. 05-10079-RWZ |
| VERIZON NEW ENGLAND, INC. | ) | |
| Defendant | ) | |
| | ) | |

## RECEIVER'S MOTION FOR AN ORDER AUTHORIZING AND APPROVING PRIVATE SALE OF 1003 DONNELLY AVE., ATLANTA, GEORGIA FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES

Now comes Carl F. Jenkins, the duly appointed Receiver herein, by his counsel, and hereby moves this Honorable Court to enter an Order authorizing and approving the sale of real property located at 1003 Donnelly Avenue, Atlanta, Georgia (hereinafter the "Property") and interim relief for approval of the form of notice (the "Notice") filed simultaneously herewith as Exhibit "A".   In support of his Motion, the Receiver states as follows:

1.  On May 5, 2010, Carl F. Jenkins was appointed by this Court as Receiver of Global NAPS, Inc., and its subsidiaries, affiliates and related entities, including 1003 Donnelly Avenue, Inc. and Global NAPs Realty, Inc. (collectively the "Judgment Debtors") pursuant to an Order dated May 6, 2010, as amended on May 13, 2010 (the "Receivership Order").

2.  Pursuant to paragraph 1 of the Receivership Order, the Receiver took possession of the various personal property and real property of the Judgment Debtors (hereinafter the "Receivership Property").

3. The Receivership Property includes the Property and certain personal property therein, which personal property may be abandoned by the Receiver to the Buyer. A copy of the legal description of the Property is attached hereto as Exhibit "B".

4. On August 5, 2010, the Court (Zobel, D.J.) entered an order (Docket #630) allowing the Receiver's Motion for an Order Authorizing and Approving Public and Private Sale of Real Property of the Estate Located in Clark County, Nevada and at 1003 Donnelly Avenue, Atlanta, Georgia, Free and Clear of All Liens, Claims and Encumbrances.

5. Pursuant to such August 5, 2010 order, the Receiver has entered into a Purchase and Sale Agreement (the "P&S") for the Property dated August 1, 2014, and amended on September 2, 2014, and September 8, 2014 in the amount of Six Hundred Thousand and no/100 ($600,000.00) Dollars with EdgeConneX Atlanta Holdings, LLC, a Delaware Limited Liability Company with an address of 2201 Cooperative Way, Suite 200, Herndon, VA 20170. The P&S and Amendments are attached hereto as Exhibit "C".

6. The Receiver is unaware as to whether any liens may have attached to the property. On March 31, 2011, a Judgment was entered in favor of The Southern New England Telephone Company which stated in part "... the transfer of the Property (1003 Donnelly Ave.) from Global (NAPs) Realty to 1003 Donnelly Avenue (Inc.) Atlanta, Georgia is hereby set aside as a fraudulent conveyance, and the Order shall serve as a writ of execution against the Property in favor of the Plaintiff (SNETCO)." The Receiver believes that real estate taxes and water bills on the property have accrued in the amount of approximately $500,000.00, which will be paid in full at closing.

7.  The Receiver believes and therefore avers that it is in the best interest of the Receivership

    Estate to sell the Property and the certain abandoned personal property by private sale

    and states that the Property has equity, and is causing the Receivership Estate to incur

    ongoing expenses of operations.

8.  The Receiver will sell and assign the Property in an "as is, where is" condition, free from

    any warranties, whether implied or express to EdgeConneX Atlanta Holdings, LLC, or its

    nominee, pursuant to the P&S and the further order of this Court.

9.  The proceeds of the sale of the Property, subject to the approval of the Court, shall be

    distributed as follows:

    a.  Normal closing costs payable by the seller / Receiver, including broker's

        commissions;

    b.  Payment of all valid and allowed liens including, but not limited to, real estate taxes

        and municipal liens;

    c.  The remaining balance will be paid into the Receivership Account, which the

        Receiver maintains to hold the net proceeds of sale.

10. The Property shall be sold and assigned free and clear of all claims, liabilities, equities,

    exceptions, contracts, options, obligations, encumbrances, charges, rights of third parties

    (whether express or implied), restrictions, mortgages, security interests, and other liens or

    liabilities of any nature.

11. Any perfected, enforceable valid liens shall attach to the balance of the proceeds of the

    sale and assignment, after deducting for the payment of any closing costs as set forth in

    the P&S, and in accordance with the priorities established under applicable law.

12. The Receiver will notice the private sale with Court approval and solicit higher and/or better offers pursuant to the Notice of Intended Private Sale of Receivership Estate Property, Deadline for Submitting Objections and Higher Offers, and Hearing Date (the "Notice) attached hereto and filed simultaneously herewith as Exhibit "A".

13. As part of this Motion, and upon the Receiver's determination as to the best manner to proceed with the sale of the Property, the Receiver requests this Honorable Court's approval of the form of Notice (Exhibit "A"). Upon approval of the form by the Court, the Receiver shall serve the Notice on Creditors, parties in interest, parties who have filed appearances and requested service of all pleadings and notices, and parties regarded by the Receiver as potential purchasers.

14. The real estate broker acting for the Seller/Receiver is Richard Bowers & Co. of Atlanta, Georgia. Richard Bowers & Co. shall receive a commission of six (6%) percent of the purchase price upon closing of the sale and not otherwise. Richard Bowers & Co. will share the commission equally with the Buyer's broker, CBRE.

WHEREFORE, for any one or all of the foregoing, the Receiver respectfully requests that this Honorable Court enter an Order:

a. Approving the form of Notice (Exhibit "A");

b. Authorizing and approving the sale of the Property;

c. Directing that the Property be sold and assigned free and clear of all claims, liabilities, equities, exceptions, contracts, options, obligations, encumbrances, charges, rights of third parties (whether express or implied), restrictions, mortgages, security interests, and other liens, and that any perfected, enforceable valid liens shall attach to the balance of the proceeds of the sale and assignment, after deducting the payment for any closing

costs as set forth herein and any P&S, in accordance with the priorities established under

applicable law;

d.  Authorizing the Receiver to utilize the proceeds of the sale of the Property, to the extent

necessary, to pay closing costs associated with the sale as set forth in the P&S, including

the payment of the commission to Richard Bowers & Co./CBRE when the deed is

recorded and the proceeds of sale are paid to the  Receiver;

e.  Authorizing and empowering the Receiver to take such further actions as are necessary,

appropriate, and/or desirable, in the Receiver's reasonable business judgment to

consummate the transaction(s) provided for, or contemplated in the P&S; and

f.  Granting such other relief as the court deems just and proper.

Respectfully submitted,
Carl F. Jenkins, Receiver
By his attorneys

/s/ Steven J. Marullo
Steven J. Marullo BBO # 323040
Dated: September 25, 2014                    Donald H. C. Libbey BBO # 638397
Donald H. C. Libbey, P. C.
P.O. Box 920612
Needham, MA 02492
(617) 723-1111
(781) 444-0944 (facsimile)
dhclibbey@lawboston.com
sjmlaw@verizon.net

CERTIFICATE OF SERVICE

I hereby certify that I served the within document(s) through the ECF system, and that copies will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants as of the date herein.

/s/ Steven J. Marullo
Steven J. Marullo

Dated: September 25, 2014

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

GLOBAL NAPS, INC.            )
    Plaintiff            )
                   )            Civil Action No. 02-12489-RWZ
v.            )
                   )            Civil Action No. 05-10079-RWZ
VERIZON NEW ENGLAND, INC, )
    Defendant            )
                   )

### NOTICE OF INTENDED PRIVATE SALE OF RECEIVERSHIP PROPERTY, DEADLINE FOR SUBMITTING OBJECTIONS AND HIGHER OFFERS AND HEARING DATE REGARDING 1003 DONNELLY AVENUE, ATLANTA, GEORGIA

To Creditors and Parties in Interest:

Notice is hereby given, pursuant to 28 U. S. C., Chapter 49, Section 754, and pursuant to this Court's Order dated August 5, 2010, allowing the Receiver's "Motion for an Order Authorizing and Approving Public or Private Sale of Real Property of the Estate Free and Clear of All Liens, Claims and Encumbrances" located in Clark County, Nevada, and 1003 Donnelly Avenue, Atlanta, Georgia (Docket #630) that the Receiver herein, Carl F. Jenkins, intends to sell at private sale his right, title and interest in certain property of the Receivership Estate located at 1003 Donnelly Avenue, Atlanta, Georgia to wit:  the real property and certain other personal property,  therein and located thereon (collectively the "Property"), as identified in the Purchase and Sale Agreement, attached to the Receiver's Motion For An Order To Sell the subject real estate as Exhibit C.

The Receiver has entered into a Purchase and Sale Agreement for the sale of the Property for the sum of $600,000.00 with EdgeConneX Atlanta Holdings, LLC (the "Buyer").  There is no relationship between the Buyer and the Receiver, Global NAPS, Inc., 1003 Donnelly Avenue, Inc., and/or Global NAPs Realty Inc. or affiliates and subsidiaries, other than as buyer and seller. EdgeConneX Atlanta Holdings, LLC is the sole bidder on the subject Property.

The sale shall take place within thirty (30) days after the entry of an Order granting the Receiver's Motion For Order Approving the Private Sale of Receivership Property (the "Motion"), filed contemporaneously with the Notice, unless the parties extend the sale date by mutual written agreement.  The terms of the proposed sale are more particularly described in said Motion and the Purchase and Sale Agreement attached thereto (hereinafter the "P&S").  The Motion and the P&S are available at www.globalnapsclaimsprocess.com or upon request from the undersigned.

The Property will be sold free and clear of all liens, claims and encumbrances.  Any perfected, enforceable valid liens shall attach to the proceeds of the sale according to priorities established under applicable law.

Any objections to the sale and /or higher offers shall be filed in writing with the Clerk, United States District Court at John Joseph Moakley United States Courthouse, 1 Courthouse Way, Boston, MA 02210 on or before 4:00 PM Eastern Standard Time on October 13, 2014 (the "Objection Deadline").  A copy of any objection and/or higher offer shall be served upon Carl F. Jenkins, Receiver c/o Duff and Phelps, 225 Frankin Street, Boston, MA  02110, and by email to the undersigned at sjmlaw@verizon.net and dhclibbey@lawboston.com prior to the Objection Deadline.  Any objection to the sale must state with particularly the grounds for the objection and why the intended sale should not be authorized.

Through this Notice, higher offers for the Property are herby solicited.  Any higher offer must be accompanied by a cash deposit in the amount of $30,000.00 in the form of a certified or bank check made payable to "Carl F. Jenkins, Receiver of 1003 Donnelly Avenue, Inc." and received by no later than the Objection Deadline.   Higher offers must be on the same terms and conditions provided in the P&S, other than the purchase price, the deposit amount, and there shall be no Due Diligence Reimbursement.  Any higher offer must be for a minimum of $50,000.00 more than the current sale price of $600,000.00.

A hearing on the Motion, objections, and/or higher offers shall be scheduled by the Court for _____, 2014 at _____ PM.  Any party who has filed an objection or higher offer shall be present at any hearing scheduled by the Court on the Motion, failing which the objection will be overruled or the higher offer stricken.  If no objection to the Motion or higher offer is timely filed, the Court, in its discretion, may cancel the scheduled hearing and approve the sale without hearing.

At the hearing on the Motion the Court may 1) consider any requests to strike an objection and/or higher offer, 2) determine further terms and conditions of the sale, 3) determine the requirements for further competitive bidding, and/or 4) require one or more rounds of sealed or open bids from the original Buyer and any other qualifying purchaser.

The deposit will be forfeited to the Receivership Estate if the successful purchaser fails to complete the sale by the date ordered by the Court, unless an extension has been granted in writing. If the buyer approved by the Court does not complete the sale, the Court, without further hearing, may approve the sale of the Property to the next highest bidder.

Any questions concerning the intended sale shall be addressed and/or directed to the undersigned and not the Court or the Receiver.

Respectfully submitted,
Carl F. Jenkins, Receiver
By his attorneys,

/s/ Steven J. Marullo
Steven J. Marullo BBO # 323040
Donald H. C. Libbey BBO # 638397
Donald H. C. Libbey, P.C.
P. O. Box 920612
210 Highland Avenue, Suite 2
Needham, MA 02492
(781) 444-0044
 (781) 444-0944 (facsimile)
dhclibbey@lawboston.com
sjmlaw@verizon.net

Date: September 25, 2014

# LEGAL DESCRIPTION

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 119 OF THE 14th LAND DISTRICT, CITY OF ATLANTA, FULTON COUNTY, GEORGIA, CONTAINING 1.472 ACRES OF LAND, MORE OR LESS, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

TO FIND THE TRUE POINT OF BEGINNING COMMENCE AT THE INTERSECTION OF THE NORTHWESTERLY RIGHT OF WAY LINE OF LEE STREET WITH THE NORTHEASTERLY RIGHT OF WAY LINE OF DONNELLY AVENUE (50' RIGHT OF WAY WIDTH); THENCE CONTINUE NORTHWESTERLY ALONG SAID RIGHT OF WAY LINE OF DONNELLY AVENUE 950 FEET TO A MAG NAIL FOUND, SAID MAG NAIL BEING THE POINT OF BEGINNING.

FROM THE POINT OF BEGINNING AS THUS ESTABLISHED CONTINUING ALONG SAID RIGHT OF WAY LINE OF DONNELLY AVENUE NORTH 53 DEGREES 44 MINUTES 18 SECONDS WEST A DISTANCE OF 309.94 FEET TO A 3/4 INCH REBAR WITH CAP FOUND; THENCE LEAVING SAID RIGHT OF WAY LINE OF DONNELLY AVENUE AND ALONG THE PROPERTY LINE COMMON TO CSX TRANSPORTATION, INC., THE FOLLOWING COURSES AND DISTANCES: NORTH 36 DEGREES 17 MINUTES 40 SECONDS EAST A DISTANCE OF 245.35 FEET TO A 3/4 INCH REBAR FOUND; SOUTH 44 DEGREES 14 MINUTES 12 SECONDS EAST A DISTANCE OF 49.96 FEET TO A MAG NAIL FOUND; SOUTH 38 DEGREES 27 MINUTES 04 SECONDS EAST A DISTANCE OF 70.11 FEET TO A 3/4 INCH REBAR FOUND, SOUTH 34 DEGREES 59 MINUTES 43 SECONDS EAST A DISTANCE OF 59.99 FEET TO A POINT; SOUTH 37 DEGREES 47 MINUTES 43 SECONDS EAST A DISTANCE OF 63.99 FEET TO A POINT; SOUTH 46 DEGREES 15 MINUTES 43 SECONDS EAST A DISTANCE OF 75.43 FEET TO A POINT, SAID POINT BEING SOUTH 36 DEGREES 20 MINUTES 23 SECONDS WEST A DISTANCE OF 28.11 FEET FROM A 3/8 INCH STEEL ROD FOUND; THENCE ALONG THE PROPERTY LINE COMMON TO CALHOUN DESIGN & METALWORKS, INC., SOUTH 36 DEGREES 20 MINUTES 23 SECONDS WEST A DISTANCE OF 171.95 FEET TO A MAG NAIL FOUND ON SAID RIGHT OF WAY LINE OF DONNELLY AVENUE BEING THE POINT OF BEGINNING.

## AGREEMENT FOR PURCHASE AND SALE OF REAL ESTATE

THIS AGREEMENT FOR PURCHASE AND SALE OF REAL ESTATE (this "Agreement"), entered into as of the _____ day of _____, 2014 (the "**Date of this Agreement**"), by and between **Carl F. Jenkins**, Receiver of 1003 Donnelly Ave., Inc. ("**Seller**") and **EdgeConneX Atlanta Holdings, LLC** ("**Purchaser**").

### W I T N E S S E T H:

1.  PURCHASE AND SALE: Purchaser agrees to buy and Seller agrees to sell that certain tract of land with buildings thereon, as more particularly described in **Exhibit A** attached hereto and by this reference made a part hereof, together with all improvements and fixtures ("**Improvements**"), plants, trees and shrubbery, if any, located thereon, as well as all easements, if any, appurtenant thereto, and all other rights and benefits running with the land (collectively, the "**Property**").

2.  PURCHASE PRICE AND METHOD OF PAYMENT: The purchase price of the Property (the "**Purchase Price**") shall be **SIX HUNDRED THOUSAND AND NO/100 DOLLARS ($600,000.00).** On the Closing Date (as defined herein), Purchaser shall deliver the Purchase Price to First American Title Insurance Company, 2490 Paseo Verde Parkway, Suite 100, Henderson, NV 89052, Attn: Michele Siebold, Telephone: (702) 731-4131 ("**Title Company**") by bank wire transfer, against which the Earnest Money (as hereinafter defined) and any net credit or prorations due Purchaser under this Agreement shall be a credit.

3.  EARNEST MONEY AND ADDITIONAL DEPOSIT: Upon execution of this Agreement by all parties and as specified below, Purchaser shall deposit Twenty Five Thousand and 00/100 Dollars ($25,000.00) as earnest money (the "**Initial Deposit**") with the Title Company. Within five (5) business days following the end of the Inspection Period in the Contract specified in paragraph 6 below, Purchaser shall deposit with Title Company an additional Twenty Five Thousand Dollars ($25,000.00 (the "**Additional Deposit**" and with the Initial Deposit, the "**Earnest Money**"). Said Earnest Money shall be applied to the Purchase Price at Closing or shall be returned to Purchaser in the event of a Seller Default or the failure of any condition precedent to Purchaser's obligations under the Agreement not satisfied or waived by Purchaser as otherwise expressly permitted pursuant to this Agreement. In the event Closing fails to occur due to a Purchaser Default, Seller shall retain the Earnest Money as liquidated damages as its sole and exclusive remedy, in lieu of any other rights or remedies which Seller may have at law or in equity.

4.  CONVEYANCE OF PROPERTY: At the Closing (as hereinafter defined), Seller shall execute and deliver to Purchaser a limited warranty deed (the "**Limited Warranty Deed**"), conveying marketable fee simple title to the Property, free and clear of all mortgages, security deeds, other security instruments, liens, encumbrances and restrictions (including condemnation proceedings) of any kind

and nature other than the "Permitted Encumbrances" as defined in Section 7, as well as all other documents to which Purchaser is entitled pursuant to the terms of this Agreement.

5.    REPRESENTATIONS OF SELLER: Seller represents to Purchaser as follows:

(a)    Seller has the right, power and authority to enter into this Agreement and sell the Property in accordance with the terms hereof. The performance of this Agreement and the transactions contemplated hereunder by Seller have been duly authorized by all necessary action on the part of Seller, and this Agreement is binding on and enforceable against Seller in accordance with its terms.  The sale by Seller of the Property as contemplated herein will not conflict with, nor will it constitute a breach or default on the part of Seller under, any contract, document, instrument, certificate, agreement or order to which Seller is subject or by which Seller or any of Seller's properties are bound. No consent or approval of any other person or entity is required in order for this Agreement to be legal, valid and binding upon Seller

(b)    Seller presently has good and marketable fee simple title to the Property.

(c)    To the best of Seller's knowledge, the Property complies with all laws, ordinances, rules, regulations, and requirements of each governmental authority or agency having jurisdiction over the Property which are applicable to the Property or to any part thereof or which are applicable to the use or manner of use, occupancy, possession or operation of the Property.  To the best of Seller's knowledge, neither the Property nor any portion thereof violates any zoning, building, fire, health, pollution, subdivision, environmental protection or waste disposal ordinance, code, law or regulation applicable thereto; and Seller shall give prompt notice to Purchaser of any notice of such violation which shall be received by Seller prior to Closing.

(d)    To the best of Seller's knowledge, there are no (i) hazardous or toxic wastes, substances or materials contained in, on or under the Property, or (ii) contaminants, oil, pesticides, radioactive or other materials present in, on or under the Property, the removal of which is required, or the maintenance of which is prohibited by and/or penalized pursuant to any local, state or federal agency, authority or governmental unit.

(e)    Seller has not received notice of any suits, judgments, or violations relating to the Property or any zoning, building, fire, health, pollution, environmental protection, or waste disposal ordinance, code, law or regulation which has not been heretofore corrected.  There is no suit or

2

judgment presently pending or threatened which would create a lien upon the Property or have a material adverse impact on the value of the Property or Seller's ability to sell the Property; and Seller shall give prompt notice to Purchaser of any such suit or judgment filed, entered or threatened prior to Closing.

(f)       Seller has no knowledge of any pending or contemplated rezoning of the Property.

(g)       To the best of Seller's knowledge, there are no assessments, condemnation or eminent domain actions or proceedings pending or threatened against the Property or any portion thereof.

(h)       There is no option to purchase, right of first refusal to purchase or agreement for the sale and purchase of the Property or any portion thereof to any person or entity, except for this Agreement.

(i)       Seller is not involved in any bankruptcy, reorganization or insolvency proceeding. The sale is subject to and conditioned upon final approval and authority to sell by the United States District Court for the District of Massachusetts (Docket No. 02-12489-RWZ) (the "**Receivership Court**"), which approval and authority may require notice to creditors and other interested parties.

(j)       To the best of Seller's knowledge, the Property is not situated within a 100-year flood plain.

(k)       The Property is currently served by, or at Closing will have access to all utilities, including public sewer and electric service.

(l)       Except for the contracts listed on Exhibit "B", there are no contracts or other oral or written agreements affecting the use, ownership, transfer, compliance, operation or management of the Property or which would be binding upon Purchaser or the Property after Closing. Exhibit "B" is a true and complete list of all contracts to which Seller or any affiliate, manager or agent of Seller is a part relating to the Property or the operation of the Property. The contracts delivered or made available to Purchaser are true, correct and complete in all material respects.

6.    INSPECTION:

(a)       Purchaser shall have thirty (30) days from the Date of this Agreement (such period, the "**Inspection Period**") to study the Property, including issues related to title, zoning, survey, environment, health, use, financial feasibility, etc. Seller will assist Purchaser in its study of the

3

Property by granting reasonable access to the Property and by promptly providing copies of all documents, including title documents, leases, inspections, environmental studies, operating agreements, tax bills, insurance policies, inventories, licenses, vendor agreements, notices, management contracts (collectively, the "**Seller's Deliverables**"), in the possession or control of the Seller that Purchaser may reasonable request.

At any time on or prior to 6:00 PM ET on the last day of the Inspection Period the Purchaser may elect, in its sole discretion, to terminate this Agreement. In such an event, Purchaser shall provide a written termination notice to Seller, in which case the Earnest Money will be automatically returned to the Purchaser. In this event, copies of any and all studies and reports created by or for Purchaser as part of its due diligence investigation will be provided at no cost to the Seller within ten (10) days of Purchaser's termination notice.

(b)      Court Approval. If Purchaser does not receive a copy of a certified court order issued by the Receivership Court ("**Court Order**") approving or otherwise authorizing the sale of the Property to Purchaser as contemplated hereunder, within sixty (60) days from the Date of this Agreement, Purchaser may terminate this Agreement and receive a full refund of the Earnest Money.

7.      TITLE, SURVEY AND INSPECTION MATERIALS:

(a)      On or before five (5) business days following the Date of this Agreement (the "**Delivery Date**"), Seller shall deliver to Purchaser a copy of any plat or survey of the Property prepared by a Georgia licensed surveyor or engineer that Seller has in Seller's possession, which survey Purchaser may have updated at Purchaser's sole cost and expense, or which Purchaser may use in the preparation of a new survey (as may be updated or re-commissioned, the "**Survey**").

(b)      On or before the Delivery Date, Seller shall provide to Purchaser true, complete and correct copies of all the Seller's Deliverables, which Seller has in his possession or control.

(c)      Purchaser shall have until ten (10) days prior to the expiration of the Inspection Period ("**Interim Date**") to provide written notice to Seller of any matters shown by a commitment for title insurance obtained by Purchaser (the "**Title Commitment**") or Survey which are not satisfactory to Purchaser, which notice ("**Title Notice**") must specify the reason such matter(s) are not satisfactory and the curative steps necessary to remove the basis for Purchaser's disapproval. Seller shall then have until five (5) days prior to the expiration of the Inspection Period to make such arrangements or to take such steps as Seller and Purchaser shall mutually

4

agree to satisfy Purchaser's objections; provided, however, that Seller shall have no obligation whatsoever to: (i) expend or agree to expend any funds, (ii) undertake or agree to undertake any obligations, or (ii) otherwise to cure or agree to cure any title or survey objections set forth in the Title Notice.  Seller shall not be deemed to have any obligation to cure any objection to title set forth in the Title Notice, unless Seller expressly undertakes such an obligation by a written notice to, or written agreement with, Purchaser given or entered into on or prior to the expiration of the Inspection Period, which notice or agreement recites that it is in response to a Title Notice.  If Seller elects to cure less than all of Purchaser's objections in the Title Notice, then Purchaser shall have until the expiration of the Inspection Period to either: (i) terminate this Agreement in accordance with the provisions of Section 6, or (ii) close on the purchase and sale contemplated by this Agreement, in which case all uncured objections in the Title Notice shall be deemed to be Permitted Encumbrances (as hereinafter defined).  All matters shown on the Title Commitment and Survey with respect to which Purchaser fails to give a Title Notice on or before Interim Date shall be deemed to be approved by Purchaser as "Permitted Encumbrances."  Notwithstanding the foregoing, Seller agrees to satisfy and cause to be released of record at Closing, the following ("**Must-Cure Objections**"): (a) any mortgage, deed of trust or other security interest granted by Seller to secure a loan or other monetary obligation, and (b) any mechanic's, materialmen's, tax, judgment or other lien attached to the Property and entered against Seller.

(e)     If Purchaser elects to terminate any existing contracts or agreements relating to the Property in connection with its due diligence during the Inspection Period, then Purchaser shall provide a written notice listing any such contracts or agreements (the "**Rejected Contracts**") on or before the Interim Date to Seller.  Seller shall then have until the Closing Date to terminate the Rejected Contracts, and Seller shall be solely responsible for paying any penalties or fees associated with the termination of any Rejected Contracts.

8.     SELLER COVENANTS:  Seller covenants to Purchaser as follows:

(a)     During the pendency of this Agreement, until the earlier of the Closing Date or termination of this Agreement and except for (a) any utility easements which Seller may grant with the consent of Purchaser, which consent Purchaser shall not unreasonably withhold, condition, or delay; or (b) any easements or other conveyances or encumbrances required or permitted to be made by Seller pursuant to this Agreement, providing such easements do not materially burden the Property in a manner that will adversely impact Purchaser's intended use and enjoyment, Seller shall not transfer, convey, lease, mortgage or otherwise encumber the Property, any interest therein or any part thereof without the prior written consent of

5

Purchaser. Seller will disclose to Purchaser any easements granted under this Section 8.

(b)    Seller will not solicit, nor will it entertain or respond to any offers for the purchase or lease of the Property during the pendency of this Agreement, whether binding or non-binding.

(c)    Seller will advise Purchaser promptly of the existence of and any material developments regarding any ongoing or pending litigation, arbitration proceeding or administrative hearing (including condemnation) related to the Property involving Seller or any affiliate or other entity managing or operating the Property on behalf of Seller, before any governmental authority or arbitrator.  Seller will deliver to Purchaser promptly after receipt thereof copies of any notices of violations or other notices regarding the Property received by Seller or any affiliate or other entity managing or operating the Property, including, but not limited to any notices, correspondence, violations, survey results or written communications from any governmental authority.

(d)    Seller shall not initiate or consent to any material zoning reclassification of the Property or any material change to any approved site plan, special use permit, planned unit development approval or other land use entitlement affecting the Property.  Seller shall cooperate with Purchaser in any zoning applications of Purchaser and to cause any utility service to the Property to be transferred to Purchaser or Purchaser's other permitted assignee(s) or designee(s) upon the applicable Closing.

(e)    Seller shall give prompt notice to Purchaser of (i) the occurrence, or failure to occur, of any event that causes or would be likely to cause any of its representations contained in this Agreement to be untrue or inaccurate in any material respect at any time from the Date of this Agreement to the Closing Date, and (ii) any breach of any covenant or condition in any material respect by Seller contained in this Agreement.  Promptly after receipt, delivery, discovery, or filing, as the case may be, Seller shall deliver to Purchaser true and correct and materially complete copies of (a) any document, information, material, notice or comparable report or item that constitutes a Seller delivery under Section 7(b) but either did not exist, was not discovered or was not in Seller's possession or control as of the Date of this Agreement and (b) any written notices of default given or received by Seller with respect to any permit or contract relating to the Property.

9. CONDEMNATION:  In the event that any action or proceeding is filed (or notice of such action or proceeding given) under which all of the Property or a portion thereof, which portion in Purchaser's reasonable judgment would have a material adverse effect on Purchaser's use of the Property, may be taken under the right of eminent

6

domain, then Purchaser has the right, on or before the Closing Date, to either (a) terminate this Agreement, in which case all rights and obligations of the parties hereunder shall immediately terminate and Title Company shall return the Earnest Money to Purchaser, except for $100.00 of the Earnest Money, which shall serve as independent consideration for this Agreement and shall be delivered by Title Company to Seller, and this Agreement shall become null and void, or (b) proceed to Closing as provided herein, except that Seller shall at Closing assign to Purchaser all of Seller's interest in any proceeds received, or which may be received, by reason of such taking, and Purchaser shall take title to the Property, subject to such condemnation proceedings.

10.    <u>CASUALTY</u>:  Between the Date of this Agreement and Closing, the risks and obligations of ownership and loss of the Property and the correlative rights against insurance carriers and third parties shall belong to Seller.  In the event of the damage or destruction of the Property prior to Closing equal to or less than Three Hundred Thousand Dollars ($300,000), as such amount is determined by Purchaser, in its sole but reasonable discretion, Purchaser shall have the right, at Purchaser's option, to terminate this Agreement by giving written notice thereof to Seller prior to Closing, in which event the Earnest Money shall be automatically refunded to Purchaser immediately upon request, all rights and obligations of Seller and Purchaser under this Agreement shall expire, and this Agreement shall become null and void.  If Purchaser does not provide such notice terminating this Agreement, then the Closing shall take place as provided herein without reduction of the Purchase Price, and Seller shall assign all insurance proceeds to Purchaser at Closing (plus a credit against the Purchase Price in the amount of any deductible payable by Seller in connection therewith).  In the event of the damage or destruction of the Property prior to the Closing in excess of Three Hundred Thousand Dollars ($300,000), as such amount is determined by Purchaser in its sole, but reasonable discretion, this Agreement shall automatically terminate upon Seller's receipt of Purchaser's written estimate of such amount, and the Earnest Money shall be automatically returned to Purchaser.

11.    <u>DEFAULTS</u>:  In the event Seller fails to close this transaction on or by the date set forth herein, comply with or perform any of the conditions to be complied with or any of the covenants, agreements or obligations to be performed by Seller under the terms and conditions of this Agreement, or in the event any other condition to be satisfied hereunder remains unsatisfied as of the Closing Date, or if any representation of Seller hereunder is untrue either as of the date given or as of the Closing Date, and such failure continues for ten (10) days after Seller's receipt of written notice thereof from Purchaser (each a "**Seller Default**"), then, Purchaser in its sole and absolute discretion shall be entitled to either (a) terminate this Agreement, whereupon Title Company shall return the Earnest Money to Purchaser, except for $100.00 of the Earnest Money, which shall serve as independent consideration for this Agreement and shall be delivered by Title Company to Seller, and this Agreement shall become null and void, Seller shall reimburse Purchaser for all costs incurred (including reasonable attorney's fees)

7

in anticipation of the Closing, including, without limitation, surveying, obtaining title work on and otherwise inspecting the Property, and all further rights, obligations and liabilities created hereunder shall be deemed terminated and of no further force and effect, or (b) seek specific performance of Seller's obligations hereunder and pursue any and all other rights and remedies provided by law or equity, or both.

In the event Purchaser defaults or fails to close the transaction on or by the Closing date set forth herein, comply with or perform any of the covenants, agreements or other obligations to be performed by Purchaser under the terms of this Agreement, and such failure continues for ten (10) days after Purchaser's receipt of written notice thereof from Seller (each, a "**Purchaser Default**"), Seller shall be entitled, as its sole and exclusive remedy, to terminate this Agreement and receive and retain the Earnest Money held by Title Company as full liquidated damages, it being acknowledged that it is impossible to more precisely estimate the specific damages to be suffered by Seller, and the parties hereto expressly acknowledge and intend that this provision shall be a provision for the retention of the Earnest Money as liquidated damages and not as a penalty pursuant to the provisions of O.C.G.A. Section 13-6-7, whereupon all rights, liabilities and obligations created under the terms and provisions of this Agreement shall be deemed null and void and of no further force or effect. Seller's receipt of the Earnest Money as liquidated damages shall be Seller's sole and exclusive remedy for a Purchaser Default or failure to close and Seller expressly waives any and all other remedies, at law or in equity, to which it may otherwise be entitled.

12. <u>TIME IS OF THE ESSENCE</u>:  Time is of the essence of this Agreement.

13. <u>REAL ESTATE COMMISSION</u>:  The parties agree that Richard Bowers & Company ("**Broker**") is representing the Seller and that CBRE, Inc. ("**Co-Broker**") is representing the Purchaser, in this anticipated real estate transaction. At Closing, Seller shall pay a commission to Broker in the amount in an amount equal to 3% of the gross purchase price and to Co-Broker in an amount equal to 3% of the gross purchase price.

14. <u>NOTICES</u>: All notices or other communications required or provided to be sent by either party shall be in writing and shall be sent by (i) United States Postal Service, postage prepaid, by certified mail, return receipt requested, (ii) by any nationally known overnight delivery service, (iii) by courier hand delivery, provided a receipt is obtained therefore or (iv) via e-mail, provided the original of such notice is also simultaneously sent for overnight delivery by a national known overnight delivery.  All notices shall be deemed to have been given (a) three (3) days after deposit for notices sent via the United States Postal Service, (b) upon delivery if sent by overnight delivery service or courier or (c) upon receipt, if sent by e-mail (provided the original is sent by overnight delivery as set forth above). All notices shall be addressed to the party at the address below:

8

PURCHASER:  EdgeConneX Atlanta Holdings, LLC
         c/o EdgeConneX, Inc.
         2201 Cooperative Way
         Suite 200
         Herndon, VA  20171

         Attention:  Andrew Brodeur
         Phone:  (301) 928-8868
         E-mail:  andrew@edgeconnex.com

and to:     c/o EdgeConneX, Inc.
         2201 Cooperative Way
         Suite 200
         Herndon, VA 20171
         Attn: General Counsel
         Email: balperstein@edgeconnex.com

SELLER:    Carl F. Jenkins, Receiver
         c/o Duff & Phelps
         225 Franklin Street
         Boston, MA  02110
         Phone: 617-378-9484
         E-mail: carl.jenkins@duffandphelps.com

WITH A COPY TO: Steven J. Marullo, Esq.
         435 Newbury St., Suite 217
         Danvers, MA  01923
         Phone: 617-723-1111
         E-mail: sjmlaw@verizon.net

15. <u>CLOSING DATE</u>:  The Closing of the sale and purchase of the Property (the "Closing") shall take place within nine (9) days following the entry of the Court Order.  If the time period within which any right, option or election provided under this Agreement must be exercised, or any act required hereunder must be performed, or the Closing must occur, occurs or expires on a Saturday, Sunday or legal holiday, then such time period shall be automatically extended to the close of business on the next regular business day.  Possession of the Property shall be granted to Purchaser on the Closing Date.  Notwithstanding anything herein to the contrary, Purchaser may extend the Closing Date an additional three (3) days from the original Closing Date upon delivery of written notice to Seller on or before the expiration of the original Closing Date.

16. <u>CLOSING DOCUMENTS</u>:

9

1209-2; Donnelly Avenue Purchase Agreement
#74047v5; 7/30/14

(a) A closing statement prepared by Purchaser or Title Company setting forth, among other things, all payments to and from escrow in connection with the purchase and sale of the Property (the "**Closing Statement**") shall be agreed upon by Seller and Purchaser not later than two (2) Business Days prior to the Closing Date. The Closing Statement, once agreed upon, shall be signed by Purchaser and Seller and delivered to the Title Company.

(b) On the Closing Date, Seller will deposit with Title Company such original items and instruments (executed and notarized, witnessed and acknowledged, if appropriate) as may be necessary in order to comply with this Agreement, including without limitation, the following:

    (i)     The Limited Warranty Deed;

    (ii)    Two (2) duplicate originals of a bill of sale, executed by Seller, assigning, conveying and transferring to Purchaser any personal property to be conveyed at the Property ("**Bill of Sale**");

    (iii)   Two (2) duplicate originals of an Assignment and Assumption of Contracts and Intangible Property, executed by Seller, assigning and conveying to Purchaser, at no cost or expense to Seller, and without representation or warranty (other than as expressly set forth herein), all of Seller's right, title and interest in all contracts, warranties, permits and any other intangible property associated with the Property intangible property ("**Assignment of Intangibles**");

    (iv)   A non-foreign affidavit to be prepared by Title Company and signed by Seller ("**Non-Foreign Affidavit**"), in mutually acceptable form, any state tax withholding affidavits as applicable, including any Georgia sales tax withholding affidavits, and an IRS Form 1099;

    (v)    All transfer tax and other tax returns, if any, which Seller is required by law to execute and acknowledge and to deliver, either individually or together with Purchaser, to any governmental authority as a result of the sale;

    (vi)   [intentionally omitted];

    (vii)  [intentionally omitted];

    (viii) All keys to the Property which are in the possession or control of Seller (which will be available at the Facility);

    (ix)   An executed Closing Statement;

  (x) All affidavits and other documents consistent with the express provisions of this Agreement and reasonably required by the Title Company (including a gap indemnity agreement and title affidavit sufficient for the Title Company to remove the standard exceptions (i.e., parties in possession) customarily removed by an owner's title affidavit), each in form and substance reasonably acceptable to Seller;

  (xi) A certificate remaking the representations set forth herein as of the Closing Date; and

  (xii) Such other instruments or documents as may be reasonably necessary to effect or carry out the covenants and obligations to be performed by Seller pursuant to this Agreement.

(c) On the Closing Date, Purchaser will deposit with Title Company the balance of the Purchase Price as indicated on the Closing Statement and all documents (executed and acknowledged, if appropriate) necessary to comply with the terms of this Agreement, including without limitation:

  (i) To the extent that applicable law requires that the Limited Warranty Deed, transfer tax or other tax forms, or recording forms be executed by the grantee, such instruments shall be executed and acknowledged by Purchaser;

  (ii) Two (2) fully executed duplicate originals of the Assignment of Intangibles executed by Purchaser;

  (iii) An executed Closing Statement;

  (iv) Two (2) fully executed duplicate originals of the Bill of Sale executed by Purchaser; and

  (v) Such other funds, instruments or documents as may be reasonably necessary to effect or carry out the covenants and obligations to be performed by Purchaser pursuant to this Agreement.

(d) Title Company will cause the Limited Warranty Deed to be recorded in the official records, and all other conveyance documents deposited with Title Company released from escrow and delivered when Title Company (i) is prepared to issue an owner's policy of title insurance in the condition agreed to by Purchaser pursuant to Section 7(c) of the title policy to this Agreement (the "Title Policy"), and (ii) holds for the account of Seller and Purchaser all items and funds to be delivered to Seller and Purchaser through the escrow, after payment of costs, expenses, disbursements and prorations chargeable to Seller or Purchaser pursuant to the provisions of this Agreement.

17.  <u>CLOSING COSTS</u>:  Purchaser shall pay any applicable State of Georgia property transfer taxes, legal fees and expenses of its own counsel and the cost of obtaining and rendering any title clearance documents.  Purchaser shall also be responsible for paying the premiums for an owner's title insurance policy, escrow fees and document recording fees for the above-referenced limited warranty deed.  Real estate taxes for the calendar year in which the Closing occurs shall be prorated as of the Closing Date.  In addition, utilities, including all sanitary taxes and charges applicable to the Property, shall be prorated as of the Closing Date.

18.  [INTENTIONALLY OMITTED]

19.  <u>GOVERNING LAW</u>:  This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia with jurisdiction to adjudicate all matters related to this Agreement remaining with the Receivership Court.  The parties hereby irrevocably waive their respective rights to a jury trial of any claim or cause of action based on or arising out of this Agreement.

20.  <u>ENTIRE AGREEMENT</u>:  This Agreement constitutes the sole and entire agreement between the parties hereto with respect to the subject matter hereof, supersedes all prior discussions, oral and written, about the subject matter hereof, and no modification of this Agreement shall be binding unless in writing and signed by all parties to this Agreement.  No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto.

21.  <u>SURVIVAL</u>:  All agreements, representations and warranties made herein shall not be impaired by any investigation or other act of Purchaser, shall survive the Closing and shall not be merged into the documents delivered at Closing for a period of twelve (12) months.

22.  <u>SUCCESSORS AND ASSIGNS; ASSIGNMENT</u>:  This Agreement shall apply to, inure to the benefit of and be binding upon and enforceable against the parties hereto and their respective legal representatives, successors and permitted assigns, to the same extent as if specified at length throughout this Agreement.  The rights and interests of the Parties hereto may be assigned by the assigning party at that party's sole discretion.

23.  <u>HEADINGS</u>:  The headings used throughout this Agreement are inserted for convenience only and shall not be used to interpret this Agreement or any term or provision hereof.

24.  <u>COUNTERPARTS</u>:  This Agreement may be executed in several counterparts, each of which shall be deemed an original, and all of which counterparts taken together shall constitute one and the same instrument.  The execution of this Agreement and all notices given hereunder and all amendments hereto, may be effected by facsimile or PDF signatures transmitted by email, all of which shall be

12

treated as originals; provided, however, that the party receiving a document with a facsimile or PDF signature transmitted by email may, by notice to the other, require the prompt delivery of an original signature to evidence and confirm the delivery of the facsimile or PDF signature transmitted by email. Purchaser and Seller each intend to be bound by their respective facsimile or PDF signatures transmitted by email, and is aware that the other party will rely thereon, and each party waives any defenses to the enforcement of the Agreement, and documents delivered by facsimile or PDF signatures transmitted by email.

25.    AS-IS, WHERE-IS:  Purchaser acknowledges that Purchaser agrees to accept title to the Property on an "as-is-where-is and with all faults" basis, subject only to the representations, warranties and other provisions set forth in this Agreement.

26.    **TIME FOR ACCEPTANCE:**    Notwithstanding anything herein to the **contrary, in the event this Agreement has not been executed by or on behalf of Purchaser and Seller on or before this___ day of _____, 2014 this Agreement shall be and become null and void and of no further force or effect.**

27.    CONDITIONS PRECEDENT TO CLOSING.

(a)    The obligation of Seller to close the transaction contemplated hereunder shall be subject to the satisfaction or notice of their waiver (delivered to Purchaser and Title Company), in whole or in part, by Seller of each of the following conditions precedent:

i.    Except by reason of a default by Seller, Title Company is in a position to and will deliver to Seller the instruments and funds accruing to Seller pursuant to the provisions of this Agreement

ii.    The Receivership Court has entered the Court Order approving the sale; and

iii.    There is no existing uncured material breach of any of the covenants, representations, warranties or obligations of Purchaser set forth in this Agreement that has not been waived by Seller.

The foregoing conditions contained in this Section 27(a) are intended solely for the benefit of Seller.  Seller shall at all times have the right to waive any condition precedent, provided that such waiver is in writing and delivered to Purchaser and Title Company.

(b)    The obligations of Purchaser to close the transaction contemplated hereunder shall be subject to the satisfaction or notice of its waiver (delivered to Seller and Title Company), in whole or in part, by Purchaser of each of the following conditions precedent, and, except for such other termination rights of

13

Purchaser as are expressly set forth herein, Purchaser shall have no right to terminate this Agreement or delay the Closing for any other reason:

    i.    Except by reason of a default by Purchaser, Title Company is in a position to and will deliver to Purchaser the instruments and funds, if any, accruing to Purchaser pursuant to the provisions of this Agreement;

    ii.    There is no existing uncured material breach of any of the covenants, representations, warranties or obligations of Seller set forth in this Agreement that has not been waived by Purchaser, and all of Seller's representations and warranties contained in or made pursuant to this Agreement shall be true and correct in all material respects as if made again on the Closing Date;

    iii.    The Receivership Court has entered the Court Order approving the sale; and

    iv.    Title Company shall be irrevocably committed to issue the Title Policy insuring that Purchaser will have good and marketable title subject only to the Permitted Encumbrances.

The foregoing conditions contained in this Section 27(b) are intended solely for the benefit of Purchaser. Purchaser shall at all times have the right to waive any condition precedent, provided that such waiver is in writing and delivered to Seller and Title Company.

(c)    Purchaser and Seller hereby agree to deliver their notices to Title Company, on or before the Closing Date, of the satisfaction or waiver of all conditions to Closing hereunder, and, if Purchaser and Seller specifically notify and instruct Title Company, in writing, to proceed to Closing hereunder, all such conditions to Closing hereunder that are not otherwise satisfied shall be deemed to have been waived by Purchaser and Seller. Title Company shall not proceed to Closing hereunder unless Purchaser and Seller specifically notify and instruct Title Company to do so. Seller and Purchaser will not take any action that is inconsistent with its obligations under this Agreement in any material respect or that could reasonably be expected to hinder or delay the consummation of the transactions contemplated by this Agreement. Seller and Purchaser shall use commercially reasonable efforts to satisfy the closing conditions set forth herein. If any of the conditions to Closing set forth in this Agreement are not satisfied or waived by the applicable party by the Closing Date (other than as a result of a failure of Purchaser to have used commercially reasonable efforts to satisfy its obligations under this Agreement), then Purchaser shall, after the expiration of the notice and cure period set forth in Section 11, have the right at its option to declare this Agreement terminated and null and void, in which case the Earnest Money shall be immediately returned to Purchaser and each of the parties shall be

14

relieved from further liability to the other, except as otherwise expressly provided
herein.

[SIGNATURE PAGE FOLLOWS]

15

**In Witness Whereof**, the parties hereto have executed this Agreement as of the day and date first above written.

PURCHASER:
**EdgeConneX Atlanta Holdings, LLC**

By: _____

Its Managing Member

Edmund Wilson 7/31/14

**SELLER:**

By: _____
    **Carl F. Jenkins, Receiver
    1003 Donnelly Ave., Inc.**

16

# EXHIBIT A

## LEGAL DESCRIPTION

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN
LAND LOT 119 OF THE 14TH DISTRICT OF FULTON COUNTY,
GEORGIA AND BEING MORE FULLY DESCRIBED AS FOLLOWS:

TO REACH THE POINT OF BEGINNING, START AT THE INTER-
SECTION OF THE NORTHEAST RIGHT-OF-WAY OF DONNELLY
STREET (50'R/W) AND THE NORTHWEST RIGHT-OF-WAY OF
LEE STREET; THENCE RUNNING NORTHWESTERLY ALONG THE
SAID NORTHEAST RIGHT-OF-WAY OF DONNELLY STREET A
DISTANCE OF 950.00 FEET TO A REBAR AND THE POINT
OF BEGINNING (SAID REBAR ALSO BEING THE SOUTHWEST
CORNER OF PROPERTY NOW OR FORMERLY OWNED BY
S.C. JOHNSON AND SON, INC.). THENCE FROM THE
POINT OF BEGINNING RUNNING N55°48'00"W ALONG THE
SAID NORTHEAST RIGHT-OF-WAY OF DONNELLY AVENUE
A DISTANCE OF 310.00 FEET TO A POINT; THENCE
LEAVING THE SAID RIGHT-OF-WAY OF DONNELLY AVENUE
AND RUNNING N34°12'00"E A DISTANCE OF 245.27 FEET
TO A POINT LOCATED ON THE SOUTHWEST RIGHT-OF-WAY
OF ATLANTA, KNOXVILLE AND NORTHERN RAILWAY COMPANY;
THENCE RUNNING SOUTHERLY ALONG THE SAID SOUTHWEST
RIGHT-OF-WAY OF ATLANTA, KNOXVILLE AND NORTHERN
RAILWAY COMPANY THE FOLLOWING COURSES AND DISTANCES:
THENCE RUNNING S48°25'00"E A DISTANCE OF 50.00
FEET TO A POINT; THENCE RUNNING S40°33'00"E A
DISTANCE OF 70.00 FEET TO A POINT; THENCE RUNNING
S37°02'00"E A DISTANCE OF 60.00 FEET TO A POINT;
THENCE RUNNING S39°50'00"E A DISTANCE OF 64.00
FEET TO A POINT; THENCE RUNNING S45°18'00"E A
DISTANCE OF 75.44 FEET TO A POINT; THENCE LEAVING
THE SAID SOUTHWEST RIGHT-OF-WAY OF ATLANTA, KNOX-
VILLE AND NORTHERN RAILWAY COMPANY AND RUNNING
S34°12'00"W A DISTANCE OF 171.95 FEET TO A REBAR
LOCATED ON THE SAID NORTHEAST RIGHT-OF-WAY OF
DONNELLY AVENUE AND THE POINT OF BEGINNING.

SAID TRACT OR PARCEL CONTAINING 1.472 ACRES OR
64,124 SQUARE FEET.

17

**EXHIBIT B**

SERVICE CONTRACTS

None

18

In Witness Whereof, the parties hereto have executed this Agreement as of the day and date first above written.

PURCHASER:
EdgeConneX Atlanta Holdings, LLC

By:_____
     Its Managing Member

SELLER:

By:_____
     Carl F. Jenkins, Receiver
     1003 Donnelly Ave., Inc.

16