**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | : | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| FERROUS MINER HOLDINGS, LTD., | : | |
| | : | Bky. No. 14-12343 (BLS) |
| Alleged Debtor. | : | |
| | : | |
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| GLOBAL NAPS, INC., | : | Bky. No. 14-12344 (BLS) |
| | : | |
| Alleged Debtor. | : | **Hearing Date: TBD** |
| | : | **Objection Deadline: TBD** |

**VERIZON NEW ENGLAND INC.'S JOINDER IN RECEIVER'S
MOTION TO DISMISS CHAPTER 11 BANKRUPTCY CASES
PURSUANT TO 11 U.S.C. § 305(a) AND/OR § 1112**

Verizon New England Inc. ("Verizon"), the largest creditor in each of the above-captioned cases, joins in the *Motion of Carl F. Jenkins, as Court-Appointed Receiver, to Dismiss Chapter 11 Bankruptcy Cases pursuant to 11 U.S.C. § 305(a)* [Dkt. No. 6] ("Dismissal Motion") filed on October 17, 2014. In support of the Joinder, Verizon states:

### I. JURISDICTION

1. This Court has jurisdiction over the Dismissal Motion and this Joinder under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), and the Court may enter a final order consistent with Article III of the United States Constitution.

2. Venue of this proceeding and the Dismissal Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 305(a) and/or 1112(b) of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rule 1017, and Local Rule 1017-2.

## II. PRELIMINARY STATEMENT

4. As the Alleged Debtors' four-year-long federal receivership nears its conclusion, Frank Gangi, their former principal, files these unauthorized bankruptcy petitions in yet another attempt to avoid complying with the Massachusetts District Court's orders and to disrupt the Receiver's ability to wind down the receivership. Verizon's $57 million judgment against Gangi and the Alleged Debtors was the culmination of years of litigation in the Massachusetts District Court. That Judgment has been upheld by the First Circuit and the United States Supreme Court declined to grant a writ of certiorari. The Alleged Debtors, under Gangi's watch, were expressly found to have engaged in the spoliation of evidence by two different United States District Courts and those findings were upheld by the First and Second Circuits. Gangi's documented dishonesty, deliberate destruction of financial records, fraudulent transfer and concealment of assets, and disrespect of the judicial process has resulted in multiple violations of court orders, court sanctions, and an extended liquidation of the assets of the Alleged Debtors and their affiliates. Since the Alleged Debtors have virtually no remaining assets, no operations, and no possible reorganization purpose, these proceedings are a patent abuse of the bankruptcy process designed to avoid and evade the Massachusetts District Court's jurisdiction over these entities, certain affiliates, and Gangi. Bankruptcy Code Section 305 was enacted to prevent precisely this type of abuse. Accordingly, Verizon joins in the Dismissal Motion seeking dismissal under Section 305 or, in the alternative, under Section 1112 of the Bankruptcy Code. Verizon reserves its rights to seek contempt and/or monetary sanctions for the additional costs and expenses

related to these unauthorized filings and violations of district court orders before the Massachusetts District Court or this Honorable Court.

### III. BACKGROUND

5.  Frank Gangi and his companies, including Ferrous Miner Holdings, Ltd. ("Ferrous") and Global NAPs, Inc. ("Global NAP", collectively with Ferrous, the "Alleged Debtors"), have a long history of using abusive litigation tactics, disregarding court orders, destroying documents and financial shenanigans to the detriment of their creditors, including Verizon.

6.  To avoid duplication of the facts outlined in the Dismissal Motion, Verizon focuses its discussion on the Alleged Debtors' and Gangi's misconduct in the Massachusetts District Court action that led to the appointment of the Receiver. Notably, the Massachusetts District Court is not alone in finding that Gangi, Global NAPs and their affiliates have engaged in extraordinary acts of misconduct to avoid satisfying their creditors.[1]

7.  On December 30, 2002, Global NAPs filed a lawsuit against Verizon and other entities in the United States District Court for the District of Massachusetts (Case No. 02-12489). Verizon asserted various counterclaims and this case was later consolidated with a related action filed in 2005 (Case No. 05-10079) (collectively, "District Court Litigation"). Global NAPs' claims in the District Court Litigation were dismissed and the action proceeded on Verizon's counterclaims seeking tens of millions of dollars of unpaid intercarrier compensation and interest

---

[1] *See, e.g., Southern New England Tel. Co. v. Global NAPs, Inc.*, 251 F.R.D. 82, 93, 95 (D. Conn. 2008) (entering default judgment against Global NAPs and Ferrous, among others, based on spoliation of financial documents and other discovery abuses); *CINEF/X, Inc. v. Digital Equipment Corp.*, No. 94-4443 (SVW) (C.D. Cal. 1995), Findings of Fact and Conclusion of Law Re: Sanctions, Sept. 8, 1995, attached hereto as Exhibit A (finding Gangi created imaginary associates in an attempt to avoid liability and repeatedly lied to the court, and the court referred the matter to U.S. Attorney for further investigation).

owed to Verizon by Global NAPs. MA 2002 at Dkt. Nos. 101, 102; MA 2005 at Dkt. No. 4.[2] Verizon's investigation of Global NAPs in the District Court Litigation revealed that Gangi and Global NAPs were hiding, transferring and/or dissipating assets. Accordingly, the Massachusetts District Court authorized Verizon to attach Global NAPs' assets. MA 2002 at Dkt. Nos. 149, 179. Verizon also successfully sought preliminary injunctions aimed at preventing the dissipation of certain assets, including two pieces of real property and two aircraft owned, directly or indirectly, by Ferrous and Gangi, pending the resolution of the case. MA 2002 at Dkt. Nos. 299 (filed under seal), 301, 352.

8. Gangi's abusive litigation tactics in the District Court Litigation includes the filing of no fewer than twenty-six motions to stay discovery, to stay the case and for protective orders.[3] During discovery in the District Court Litigation, Gangi and his companies did not produce any financial records (other than bank statements) and admitted using a commercial-grade electronic document shredding program known as "Window Washer" to destroy evidence. Dec. 3, 2008 2d Session Hr'g Tr. at 3-8, attached hereto as Exhibit D. The Massachusetts District Court entered a default judgment on liability in favor of Verizon against Gangi, Global NAPs, and Ferrous, along with certain affiliates (collectively, the "Judgment Debtors") as a sanction for this willful destruction of evidence. *Id.* The Massachusetts District Court found testimony by Gangi and his bookkeeper regarding the purported disappearance of important financial records not to be credible and defaulted each of the Judgment Debtors. *Id.* On January 29, 2009, the Massachusetts District Court entered judgment against the Judgment Debtors in the

---

[2] All docket entries referenced in this Joinder appear on the docket for either Case No. 02-12489 ("MA 2002"), attached hereto as Exhibit B or Case No. 05-10079 ("MA 2005"), attached hereto as Exhibit C, as indicated.

[3] Indeed, the Massachusetts District Court issued an order to show cause as to why sanctions should not issue against Gangi, Global NAPs, Ferrous and the other counterclaim defendants based on their repeated, meritless motions for protective orders. MA 2002 at Dkt. No. 393.

4

amount of more than $57 million (the "<u>Verizon Judgment</u>").[4]  MA 2002 at Dkt. No. 539.  The Judgment Debtors appealed the Verizon Judgment to the First Circuit.

9. On Verizon's motion, the Massachusetts District Court entered a temporary restraining order on December 9, 2008 that enjoined the Judgment Debtors and their affiliates from "alienating, transferring, encumbering or otherwise diminishing any interest they may have in any real and personal property . . . pending further order of this court."  MA 2002 at Dkt. No. 498.  A preliminary injunction followed on December 18, 2008.  MA 2002 at Dkt. No. 508.  The Massachusetts District Court found that "[b]ased on earlier rulings of this court, including the finding that the Defaulting Defendants destroyed financial and other records, and the materials recently submitted by Verizon, it is established that absent entry of injunctive relief, GNAPs and the Defaulting Defendants will alienate or otherwise impair assets, causing irreparable harm to Verizon."  *Id.*

10. Predictably, the Judgment Debtors violated both the temporary restraining order and the preliminary injunction, transferring millions of dollars of receivables to affiliated entities.  Verizon moved the Massachusetts District Court for sanctions and to appoint a receiver over the companies.  MA 2002 at Dkt. No. 574 (filed under seal).  Indeed, the Judgment Debtors acknowledged that they deliberately transferred millions of dollars in receivables to non-debtor affiliates in order to avoid execution on those monies by judgment creditors.  *Id*.  The Judgment Debtors' deliberate misconduct and attempts to hide assets led the Massachusetts District Court

---

[4] After substantial negotiations with the various claimants, the Receiver recommended approval of approximately $38 million in administrative claims, $35 million of which were asserted by Verizon and its affiliates, which is in addition to Verizon's more than $57 million judgment.  Verizon later reached an agreement with the Receiver to reduce the amount of the outstanding judgment to approximately $36 million.  MA 2002 at Dkt. No. 991, 1019.  The Receiver's motion to approve the claims is currently pending before the Massachusetts District Court.

to appoint Carl F. Jenkins as Monitor over all of the Judgment Debtors' property and interests which was subject to the court's prior orders. *See* Dismissal Motion, Exhibit C.

11. On April 30, 2010, the First Circuit affirmed the Verizon Judgment and the District Court's findings that Gangi and the corporate Judgment Debtors' bookkeeper (i) lied in their testimony concerning the records the companies kept, (ii) gave "inherently incredible" descriptions of the companies' accounting practices that "made no sense," (iii) "had withheld and destroyed financial records" and (iv) "lied to the court about when they 'lost' their financial records." Dismissal Motion, Exhibit G, p.42. Verizon renewed its motion asking the Massachusetts District Court to appoint a receiver over the corporate Judgment Debtors and/or Gangi. MA 2002 at Dkt. No. 615.

12. On May 6, 2010, the District Court entered an Order (as amended on May 13, 2010, the "Receivership Order"), appointing Mr. Jenkins as receiver ("Receiver") over all property and interests of the Judgment Debtors. *See* Dismissal Motion, Exhibit B. For more than four-and-a-half years, the Receiver has managed the Judgment Debtors, marshaling and selling assets pursuant to the directives and subject to the approval of the Massachusetts District Court.

13. In another appeal to the First Circuit concerning sales conducted by the Receiver (the seventh and eighth appeals filed by Gangi in the decade-long litigation), the Court found that "Gangi repeatedly has employed nefarious tactics to avoid meeting his responsibilities to others" after the receiver was appointed. Dismissal Motion, Exhibit H, pp.3, 9. The Receiver's "efforts [have been] hampered by Gangi, who, among other stratagems seemingly designed to conceal or protect his assets, apparently had transferred ownership of his $400,000 Porsche to a ten-year-old child." *Id*. at p.4.

14. As further evidence of his interference with the Receiver's mandate, the First Circuit cited to yet another injunction issued by the Massachusetts District Court against Gangi:

> All Persons, including the Judgment Debtors and the Judgment Debtors' Agents, and Frank Gangi and any person operating under Frank Gangi's direction or control, and any employee or agent of the Receivership Estates, are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Receiver to transfer the Purchased Assets to the Purchaser or with the operation of the Purchaser's business or its enjoyment of the Purchased Assets or from directly or indirectly interfering with, taking action to reduce the value of, or otherwise damage the value of the Purchased Assets . . .

*Id.* at p.6.

15. Upon information and belief, the Receiver has liquidated substantially all of Judgment Debtors' assets in accordance with the terms of the Receivership Order and subsequent orders of the Massachusetts District Court.

16. The bankruptcy petitions and resulting automatic stay are Gangi's latest attempt to prevent Verizon from executing against his personal assets, which have been diverted or concealed. Specifically, Verizon sought to execute against two substantial pieces of property purchased and paid for by Gangi – his $14 million personal residence in Brookline, Massachusetts; and a $1.5 million townhouse, also located in Brookline. MA 2002 at Dkt. Nos. 690 (filed under seal) & 1124. Because each of these properties is nominally titled in a Massachusetts nominee trust (a form of ownership that allows the identity of the beneficial owner of the property to be kept out of the public record), Verizon filed two separate motions seeking turnover of the real property (in the case of Gangi's personal residence) and of the proceeds collected from any sale of property in violation of the Massachusetts District Court's injunctions (in the case of the Brookline townhouse) (collectively, the "Turnover Motions"). On September 4, 2014, the District Court scheduled argument on the Turnover Motions for October

15, 2014 ("Turnover Hearing"). MA 2002 at Dkt. No. 1172. On the eve of the hearing, each Alleged Debtor, purportedly acting on Gangi's authority, filed an unauthorized voluntarily petition commencing these cases.

17. At the Turnover Hearing, Gangi's counsel argued that the automatic stay prevents adjudication of the Turnover Motions. The Massachusetts District Court ultimately rejected Gangi's argument and proceeded on the Turnover Motions against his personal assets. In light of the automatic stay, however, the Massachusetts District Court adjourned other motions directed towards potential assets of Global NAPs.[5] In particular, the Massachusetts District Court declined to hear argument on motions concerning the Receiver's efforts to secure Internet Protocol Version 4 addresses that the Receiver believes were transferred to Global NAPs by one of its affiliates, which are opposed by a longtime associate of Frank Gangi. MA 2002 Dkt. Nos. 1122, 1135.

18. On October 17, 2014, the Receiver filed the Dismissal Motion.

## IV.  THE CASES SHOULD BE DISMISSED UNDER BANKRUPTCY CODE § 305 OR, IN THE ALTERNATIVE, § 1112 AND THE RECEIVER SHOULD BE EXCUSED FROM COMPLYING WITH § 543(B)

19. These bankruptcy cases were filed in bad faith solely for the purpose of avoiding and evading the federal district court's jurisdiction over the inappropriate actions of the Alleged Debtors. There is simply no bankruptcy purpose and no reorganization possible for the Alleged Debtors as all operations ceased years ago and the Receiver has been managing and liquidating the assets of the Alleged Debtors since 2010. Accordingly, for the reasons described in the Dismissal Motion and this Joinder, the Court should dismiss these bankruptcy cases under

---

[5] The transcript for the Turnover Hearing has been ordered but is not yet available.

Bankruptcy Code § 305.  Alternatively, "cause" exists to dismiss these cases under Bankruptcy Code § 1112.[6]

### A. Unauthorized Filings are a Patent Abuse of the Bankruptcy Process

20.     Gangi's filing of the bankruptcy petitions is a thinly veiled attempt to avoid past and future orders of the Massachusetts District Court that has jurisdiction over the liquidation of the Alleged Debtors.  Accordingly, these filings are blatant forum shopping and abuse of the bankruptcy system.

21.     Based on much less egregious facts, *In re Ofty Corp.*, 44 B.R. 479 (Bankr. D. Del. 1984), provides pertinent precedent for this case.  There, the debtor filed for bankruptcy after a long-standing receivership was pending.  Prior to the bankruptcy, a federal district court determined that the majority shareholders of the debtor engaged in self-dealing and corporate waste.  *Id.* at 481.  Based on the majority shareholders' bad acts, the district court pierced the corporate veil and appointed a receiver to liquidate the assets of the corporation.  *Id.*  Subsequently, a bankruptcy petition was filed.  In dismissing the bankruptcy case, the *Ofty* court noted that the bankruptcy petition "stayed [the receiver's] ability to carry out his duties as Receiver and puts back in control of [the Debtor] the same individuals who the District Court Judge determined were mismanaging the corporation."  *Id.* at 481-82.  Further, the court cited to the Third Circuit holding in *In re Distillers Factors Corp.* that "where the circumstances indicate that persons have willfully misconducted a corporate enterprise, bankruptcy courts may refuse to permit them to use the bankruptcy system to create a situation more favorable to their interests

---

[6] To the extent the Court does not dismiss these cases, Verizon reserves its right to seek a venue transfer to the District of Massachusetts, and to return the reference to the District Judge that has overseen these proceedings for over four years based on, *inter alia*, judicial economy, uniformity in administration of the Alleged Debtors' estates and promoting economical use of the parties' resources.

than the receivership already established." *Ofty*, 44 B.R. at 482 (citing *In re Distillers Factors Corp.*, 187 F.2d 685, 689 (3d Cir.), *cert denied*, 342 U.S. 824 (1951).

22. Like the majority shareholders in *Ofty*, Gangi initiated these chapter 11 proceedings for the sole purpose of circumventing the effect of the District Court's orders and frustrating the Receiver's mandate. *See id.* Indeed, the Receivership Order provides that Gangi has no authority to make decisions in respect of the equity interests in the Alleged Debtors. Gangi's motive is clear: to wrest control of these companies away from the Receiver by invoking the bankruptcy process.

23. Section 305 was enacted precisely to address this situation: the federal receivership has been pending for over four years, the Receiver has liquidated substantially all of the Alleged Debtors' assets, and the Massachusetts District Court has intimate and significant knowledge and experience with the Alleged Debtors. *See In re Onyx Records, Inc.*, 42 B.R. 156, 157 (Bankr. S.D.N.Y. 1984) (dismissal under § 305 granted where receivership had existed for seven years, and court had heard significant testimony and accumulated substantial documentation); *In re O'Neil Village Pers. Care Corp.*, 88 B.R. 76, 80 (Bankr. W.D. Pa 1988) (dismissal under § 305 granted where: (1) state court-appointed receiver supervised operation and management of debtor; (2) Bankruptcy Court would not return management of debtor to principals in light of their incompetence and breach of fiduciary duty; and (3) if Bankruptcy Court retained jurisdiction, trustee would have to be appointed, since receiver was not member of trustee panel, resulting in duplicative effort).

24. Over the past decade overseeing the litigation between Verizon and the Judgment Debtors, the Massachusetts District Court and the First Circuit have suppressed Gangi's agenda and not tolerated his dishonesty and disrespect of federal court orders. As described by the First

Circuit, the Massachusetts District Court has presided over serious discovery violations by Global NAPs, "including instances in which the district court found that Gangi lied and withheld or destroyed evidence," and that the "various Gangi-controlled entities were alter egos of GNAPs" and thus liable for Verizon's judgment. Dismissal Motion, Exhibit H, p.3-4.

25. Filing the instant petitions is a continuation of Gangi's nefarious tactics to gain a litigation advantage over the Receiver and Verizon in what he hopes to be a more favorable forum as both the Massachusetts District Court and the First Circuit have repeatedly rejected Gangi's complaints. Bankruptcy Code § 305 exists to prevent this type of malfeasance and abuse of the bankruptcy system.

    **B. These Cases Have No Bankruptcy Purpose and Were Filed in Bad Faith as a Litigation Tactic**

26. While there is ample reasons to dismiss the petitions under Bankruptcy Code § 305(a), "cause" also exists to dismiss these cases based on bad faith under Bankruptcy Code § 1112(b). "Good faith" is considered to be an implicit requirement in the filing and maintenance of a bankruptcy petition under Chapter 11, and a lack of good faith (or the presence of bad faith) is consistently recognized as a cause for dismissal. *See, e.g., In re SGL Carbon Corp.*, 200 F.3d 154, 160-62 (3d Cir. 1999).

27. "'Good faith' implies an honest intent and genuine desire on the part of the petitioner to use the statutory process to effect a plan of reorganization, and not merely as a device to serve some sinister or unworthy purpose." *In re Metro. Realty Corp.*, 433 F.2d 676, 678 (5th Cir. 1970) (citing *In re Southern Land Title Corp.*, 301 F.Supp. 379, 428 (E.D. La. 1968)). "As a general rule where . . . the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith." *In re HBA East, Inc.*, 87 B.R. 248,

11

259-60 (Bankr. E.D.N.Y. 1988) (quoted by *SGL Carbon*, 200 F.3d at 165; *see also Clinton Centrifuge*, 72 B.R. at 905 ("When a debtor is motivated by plausible, legitimate reorganization (or liquidation) purposes and not solely or predominantly by the mere desire to prevent foreclosure or hinder creditors, bad faith is not present in a chapter 11 case.")).

28. Once bad faith is alleged, the debtor bears the burden of proving good faith. *In re PPI Enters. (U.S.), Inc.*, 324 F.3d 197, 210-11 (3d Cir. 2003).

29. When determining if a case was filed in good faith, a court should focus on: "(1) whether the petition serves a valid bankruptcy purpose, e.g., by preserving a going concern or maximizing the value of the debtor's estate, and (2) whether the petition is filed merely to obtain a tactical litigation advantage." *In re Integrated Telecom Express, Inc.,* 384 F.3d 108, 119-20 (3d Cir. 2004); *In re 15375 Mem'l Corp.*, 400 B.R. 420, 427 (D. Del. 2009) *aff'd* 589 F.3d 605 (3d Cir. 2009).[7]

---

[7] Courts have identified a number of additional factors that indicate a debtor has filed a bankruptcy petition in bad faith, including, but not limited to:

(1) the debtor has few or no unsecured creditors;
(2) there has been a previous bankruptcy petition by the debtor or a related entity;
(3) the prepetition conduct of the debtor has been improper;
(4) the petition effectively allows the debtor to evade court orders;
(5) there are few debts to non-moving creditors;
(6) the petition was filed on the eve of foreclosure;
(7) the foreclosed property is the sole or major asset of the debtor;
(8) the debtor has no ongoing business or employees;
(9) there is no possibility of reorganization;
(10) the debtor's income is not sufficient to operate;
(11) there was no pressure from non-moving creditors;
(12) reorganization essentially involves the resolution of a two-party dispute;
(13) a corporate debtor was formed and received title to its major assets immediately before the petition; and
(14) the debtor filed solely to create the automatic stay.

30. Here, the facts demonstrate that the Alleged Debtors filed these cases in bad faith to achieve a tactical litigation advantage against the Receiver, Verizon and their other creditors by invoking the automatic stay to prevent enforcement of the District Court's, and the First Circuit's, various orders and the Receiver's liquidation of the remaining assets. Specifically, the filings occurred on the eve of the Turnover Hearing and Gangi attempted to use the filings to stay the Turnover Motions and Turnover Hearing.

31. Moreover, there is no valid bankruptcy purpose for these cases as the Alleged Debtors have not operated for many years – indeed, their operations were sold in a court-supervised auction in 2011. Substantially all of their assets have been liquidated by Receiver since his appointment in 2010 and neither entity has any employees. There is no confirmable plan possible considering Verizon holds over 90% of the pre- and post-receivership claims against the Alleged Debtors.

### C. No Assets Should Be Turned Over To Gangi's Control

32. As described in the Dismissal Motion, the Alleged Debtors sent a § 543 letter to the Receiver. Bankruptcy Code § 543(d) excuses compliance with the turnover requirements of § 543(b) if "the interests of creditors would be better served by permitting a custodian to continue in possession, custody, or control of such property." 11 U.S.C. § 543(d).

33. Significantly, were the Receiver to comply with the 543(b) letter, Gangi would once again control the Alleged Debtors, notwithstanding various federal courts' determinations of his documented dishonesty and fraudulent conduct. Gangi's fraud and unsanctioned transfer of assets to avoid creditors in violation of court orders is the reason that the Massachusetts

---

*In re SB Props., Inc.*, 185 B.R. 198, 205 (E.D. Pa. 1995). *See also In re Primestone Inv. Partners, L.P.*, 272 B.R. 554, 557 (Bankr. D.Del. 2002). A court's analysis of these factors determines whether a debtor is using the bankruptcy process to achieve objectives outside the scope of the bankruptcy laws. *In re SGL Carbon Corp.*, 200 F.3d 154, 160 (3d Cir. 1999). Here, factors 3, 4, 6 (Turnover Hearing), 8, 9, 11 and 14 are undoubtedly present.

District Court appointed the Monitor and then the Receiver in the first place. *See In re Attack Props., LLC*, 478 B.R. 337, 345 (N.D. Ill. 2012) (bankruptcy court did not abuse its discretion in finding that compliance with § 543 turnover requirement should be excused where bankruptcy court did not clearly err in concluding that debtor's sole owner would not have managed property for benefit of creditors).

34. Accordingly, the Receiver should be excused under § 543(d) from complying with the Debtors' letter requesting turnover of property under §543(b).

## V. CONCLUSION

35. For these reasons stated in the Dismissal Motion and this Joinder, these bankruptcy cases should be dismissed under Bankruptcy Code § 305. Alternatively, ample "cause" exists to dismiss these cases under Bankruptcy Code § 1112(b). Additionally, the Court should excuse the Receiver from complying with § 543(b).

WHEREFORE, Verizon respectfully requests that the Court grant the Dismissal Motion, enter an order dismissing these cases and granting such other relief as the Court deems just and equitable.

Respectfully submitted,

Dated:  October 20, 2014			**BLANK ROME LLP**

By: */s/ Regina Stango Kelbon*
Regina Stango Kelbon
1200 Market Street, Suite 800
Wilmington, DE 19801-4226
Tel: (302) 425-6400
Fax: (302) 425-6464
Email: Kelbon@blankrome.com

Gregory F. Vizza
One Logan Square
130 N. 18th Street
Philadelphia, PA  19103
Tel: (215) 569-5500
Fax:  (215) 569-5555
Email: Vizza@blankrome.com

and

**GIBSON, DUNN & CRUTCHER LLP**
Jason Myatt
200 Park Ave
New York, NY 10166-0193
Tel: (212) 351-4085
Fax: (212) 351-6258
Email:  JMyatt@gibsondunn.com

*Co-Counsel to Verizon New England Inc.*