# EXHIBIT A



No JS-6
Closed

1

2
ENTERED
CLERK, U.S. DISTRICT COURT

SEP - 8 1995

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

3

4

5

6

7

FILED

SEP - 1 1995

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

8        UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT OF CALIFORNIA

10

11   CINEF/X, INC., a Delaware          )    CV 94-4443 SVW (JRx)
     Corporation,                       )
12                                      )
                    Plaintiff,          )    FINDINGS OF FACT AND
13                                      )    CONCLUSIONS OF LAW RE:
             v.                         )    SANCTIONS
14                                      )
     DIGITAL EQUIPMENT CORPORATION,     )    I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
15   a Massachusetts Corporation,       )    FIRST CLASS MAIL POSTAGE PREPAID, TO ALL COUNSEL
                                        )    (OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
16                  Defendant.          )    RECORD IN THIS ACTION ON THIS DATE.
                                        )    DATED:      SEP - 8 1995
17   _____)    DEPUTY CLERK

18   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

19        The Court has considered the motions of defendant and

20   counter-claimant Digital Equipment Corporation ("Digital") for

21   sanctions pursuant to Rule 11, Rule 37 and the Court's inherent

22   powers.  The Court has read the memoranda and declarations

23   submitted on behalf of Digital, CINEF/X, CINEF/X' principal Frank

24   T. Gangi and CINEF/X' counsel Samuel T. Rees.  The Court has also

25   heard sworn oral testimony over five days from Messrs. Rees and

26   Gangi and from Mr. Scott Levine (formerly denominated one of

27   CINEF/X' officers) on February 6, 1995, March 13 and 14, 1995 and

28   June 19 and 20, 1995.  The Court has also had the benefit of oral

SEP 0 8 1995

Mid copy Plys
and flulino Plys
JS-6

1  argument and supplemental memoranda from all parties and Messrs.

2  Rees and Gangi.  The Court being fully advised as to all matters

3  related to these motions makes the following Findings of Fact and

4  Conclusions of Law:

5      I.  Findings of Fact

6          A.  Background of the Litigation

7              1.  CINEF/X filed this lawsuit against Digital on July

8  7, 1994 alleging that Digital had breached three contracts for

9  the sale of 64 mb array memory boards to CINEF/X.

10             2.  On July 27, 1994 Digital answered the complaint

11 and filed a counterclaim against CINEF/X.  Digital filed a first

12 amended counterclaim on September 13, 1994.

13             3.  The basic facts which led to this litigation were

14 never in dispute:  CINEF/X applied for and was accepted into a

15 Digital discount program for independent software vendors

16 ("ISV's").  Digital grants ISV's substantial discounts on

17 purchases of computer hardware to encourage ISV's to write

18 software for use on Digital computers.

19             4.  The three contracts at issue in this case were

20 CINEF/X purchase orders for 64 megabyte computer boards.  For the

21 first two of the orders, dated March 26, 1994 and April 1, 1994,

22 CINEF/X ordered the equipment and sought to purchase a total of

23 69 computer boards at the substantial ISV discount.  Complaint

24 ¶¶ 9-14.

25             5.  CINEF/X placed a third purchase order on May 2,

26 1994 for 120 computer boards.  This time CINEF/X did not seek to

27 purchase the equipment at the ISV discount.  (Complaint, ¶¶ 16-

28 18.)

1        6.   In its answer and counterclaim Digital did not

2 dispute the existence of the three contracts.  Instead, Digital

3 claimed the contracts were void or voidable because the contracts

4 were the result of either Digital's mistake or CINEF/X' fraud.

5 Digital's counterclaim sought to recover damages caused by

6 CINEF/X' fraud.  Even before the litigation began, Digital

7 alerted CINEF/X' counsel that it would defend the action on this

8 basis.

9        7.   Throughout this litigation, CINEF/X maintained it

10 was a _bona fide_ software developer, with officers and employees,

11 doing business in Marina Del Rey.  (Levine Declaration; Mehoff

12 Declaration; Gangi Declaration.)

13        8.   On September 19, 1994, this Court held a status

14 conference in the case.

15        9.   On October 3, 1994, CINEF/X filed motions to

16 dismiss Digital's first amended counterclaim and for summary

17 judgment on its complaint.  In support of its motion for summary

18 judgment, CINEF/X filed two declarations which described CINEF/X

19 as a legitimate ISV:  the Declaration of Scott Levine and the

20 Declaration of John Mehoff.  Scott Levine's declaration described

21 him as CINEF/X' Assistant Secretary and provided substantial

22 detail about CINEF/X' efforts to develop software and hardware

23 for use in the motion picture special effects business.  John

24 Mehoff's declaration said he was CINEF/X' President and gave

25 additional information about CINEF/X and the course of its

26 dealings with Digital.

27        10.  Digital opposed both motions.  In opposition to

28 CINEF/X' summary judgment motion, Digital noted that discovery

1  concerning the legitimacy of CINEF/X had been sought from

2  CINEF/X.   (Digital's opposition to CINEF/X' motion for summary

3  judgment, October 17, 1994.)

4      11.   On October 17, 1994 Digital served notices of

5  depositions on CINEF/X' counsel for the depositions of John

6  Mehoff, John Carlos and Scott Levine.   Digital subsequently

7  served a notice of deposition of CINEF/X pursuant to Rule

8  30(b)(6) of the Federal Rules of Civil Procedure.

9      12.   On October 31, 1994, the Court heard argument on

10  CINEF/X' motions.

11      13.   On November 29, 1994 Digital took the deposition

12  of Juan Carlos Mejia.   Mr. Carlos Mejia was the tenant in the

13  apartment that was CINEF/X' address in Marina del Rey.

14      14.   Mr. Carlos Mejia testified that he agreed to

15  receive packages addressed to CINEF/X from Digital and to forward

16  them to Mr. Frank Gangi in Massachusetts.   Mr. Mejia testified he

17  agreed to perform this mail drop function at Mr. Gangi's request

18  and that he had never met or heard of Messrs. John Carlos, John

19  Mehoff or Scott Levine before.   Mr. Mejia did not know what the

20  equipment in the packages was for.   (Mejia Depo., p. 21-22.)

21      15.   The Court denied CINEF/X' summary judgment motion

22  on January 4, 1995.   At the same time the Court granted in part

23  its motion to dismiss Digital's first amended counterclaim.

24      16.   Digital filed a second amended counterclaim on

25  January 23, 1995.

26      17.   On January 10, 1995 Digital took the deposition of

27  Scott Levine.   On the night before the deposition, Mr. Levine was

28  identified by CINEF/X' counsel as CINEF/X' Rule 30(b)(6) witness

1  (i.e. its person most knowledgeable about the matters listed in

2  the CINEF/X deposition notice).  At his deposition Mr. Levine

3  testified that he had no personal knowledge of CINEF/X'

4  operations.  (Levine Depo., attached as Ex. H to Morrissey

5  Declaration filed in Support of Digital's Motion for Sanctions,

6  pp. 22-24.)

7      18.  CINEF/X never produced Mr. Mehoff or Mr. Carlos

8  for their depositions and informed Digital that neither of them

9  could be located.

10     19.  On January 23, 1995, Digital filed a motion for

11  sanctions under Rules 37 and 11 of the Federal Rules of Civil

12  Procedure.

13     20.  Digital also moved for summary judgment against

14  CINEF/X on CINEF/X' complaint and for summary adjudication on

15  Digital's second amended counterclaim.  The Court granted

16  Digital's motion by its Order dated July 6, 1995.

17     B.  CINEF/X' False Claims To Legitimacy

18     21.  During the course of this litigation, the

19  following information was established about CINEF/X:

20     22.  CINEF/X was not a bona fide software developer,

21  with officers and employees doing business in Marina Del Rey,

22  California.

23     23.  CINEF/X has never filed in California as a

24  corporation doing business in California.  (CINEF/X' RFA's, No.

25  20, Morrissey Decl., Exh. D.)

26     24.  CINEF/X falsely claimed to have a (213) area code

27  business telephone number and falsely represented that the

28  telephone number was arranged by John Mehoff and not Mr. Gangi.

5

1   (Gangi Depo., p. 221.) The telephone number was a voice mailbox

2   leased by Norwood Technologies.  It was established by Robert

3   Gaetani, a 10-year employee of Mr. Gangi's, at Gangi's direction

4   in March, 1993. (Gaetani Depo., pp. 89-93 and Ex. 7; Supplemental

5   Fischer Decl., filed in support of Digital' Amended Motion for

6   Summary Judgment, Ex. A.)  Norwood Technologies is located at the

7   same address as Gangi's other company, Workstation Wizards.

8         25.   CINEF/X never had any software or hardware,

9   financial statements or any other corporate books, and never

10  achieved any revenues.  (CINEF/X RFA's, Nos. 1-6; Morrissey

11  Decl., Ex. D.)  CINEF/X cannot identify the location or

12  disposition of the computer products it purchased from Digital

13  supposedly for its own use in developing a computer system.  (See

14  e.g., Gangi Depo. pp. 63-64, 250-51.)

15        26.   CINEF/X' purported facility and principal place of

16  business was a 700-square-foot residential apartment.  Juan

17  Carlos Mejia and Gangi admitted that the apartment was Mejia's

18  home and that CINEF/X engaged in no activities there.  (See Mejia

19  Depo. pp. 41-43; Gangi Depo. p. 39, 67-69, Court Transcript, Mar.

20  13, 1995, pp. 40-41; Court Transcript, Mar. 14, 1995, pp. 57-58.)

21  The other location where CINEF/X' alleged President, John Mehoff,

22  was working on the software and where he received equipment has

23  never been identified.

24        27.   CINEF/X fabricated a February 1, 1993 News Release

25  announcing final software specifications for its Dream Weaver

26  solution series.  Mehoff Decl., Ex. W.  During discovery CINEF/X

27  was never able to produce any product or specifications for any

28  software or hardware products.  Although the News Release

6

1  purported to give CINEF/X' telephone number, discovery revealed
2  that CINEF/X did not have a telephone number until March 9, 1993.
3  (See Ex. A to Supp. Fischer Decl. Filed in Support of Digital's
4  Amended Summary Judgment Motion.)   The News Release was offered
5  as evidence to support CINEF/X' summary judgment motion.

6        28.   During the litigation, CINEF/X maintained that it
7  had customers.  (Letter of Samuel Rees dated June 24, 1994
8  demanding that Digital stop harassing CINEF/X' customer.)   But
9  discovery revealed that CINEF/X never had any customers or
10  customer lists.  (CINEF/X' RFA's, Nos. 1-6, Morrissey Decl.,
11  Ex. D.)

12        29.   CINEF/X identified John Mehoff as its president.
13  Notwithstanding the declaration, there is no credible evidence
14  that Mr. Mehoff exists.  No one admits having ever met him or
15  having seen any computer hardware or software he made.  No one
16  knows his address or telephone number. Mr. Gangi testified to
17  this Court that he had corresponded with Mr. Mehoff only through
18  an "800" voice mail telephone number; but Mr. Gangi could not
19  recall the number (although he had called it more than 100
20  times).  (Court Transcript, March 13, 1995 at pp. 5-6, 44-46.)
21  During the litigation CINEF/X provided an address for Mr. Mehoff
22  in Montreal.  Digital sent an investigator to find him, but no
23  one there knew Mr. Mehoff.  (Declaration of Yves Lefevbre.)
24  Gangi also testified that Digital products were sent to the
25  CINEF/X address in Marina Del Rey, shipped back across the
26  country to Mr. Gangi, who then called Mehoff, who sent someone
27  named "Dave" to pick them up.  (Id. at pp. 22-23, 40-44 and Court
28  Transcript dated March 14, 1995 at pp. 36-37.)  Gangi is the only

1   person who has allegedly communicated with Mr. Mehoff.  No one

2   has located Mr. Mehoff or any trace of him for over seven months,

3   although he allegedly was available to sign his declaration which

4   was secured entirely through Mr. Gangi.

5         30.  During most of this litigation, CINEF/X maintained

6   that Scott Levine was its Assistant Secretary and designated

7   Levine pursuant to 30(b)(6) as the person most knowledgeable

8   about CINEF/X and its dealings with Digital.  (Levine

9   Declaration.)  Notwithstanding his declaration filed in support

10  of CINEF/X' summary judgment motion, which purported to explain

11  CINEF/X' purpose, operations, employees and relationship with

12  Digital, Mr. Levine actually has no personal knowledge of

13  CINEF/X' operations, employees or relationship with Digital.  He

14  never performed any duties for CINEF/X related to its business

15  and never acted as an officer for CINEF/X.  (Levine Depo.

16  attached as Ex. H to Morrissey Declaration filed in Support of

17  Digital's Motion for Sanctions, pp. 22-24;  Court Transcript,

18  February 6, 1995 attached as Ex. F to Morrissey Declaration filed

19  in Support of Digital's Motion for Summary Judgment.)

20        31.  During the litigation, CINEF/X maintained that it

21  had an employee, John Carlos, who was the Systems Manager who

22  allegedly placed all of CINEF/X' orders.  (Levine Declaration.)

23  But there is no credible evidence that Mr. Carlos exists.  No one

24  has met John Carlos (See Levine Depo. p. 37; Gangi Depo. P. 226.)

25  No one has ever had a telephone number, address or any other

26  identifying information for him.  (CINEF/X' Responses to

27  Digital's Third Set of Interrogatories, No. 18.)  No one has been

28  able to locate him since the litigation began over one year ago.

C.    Frank Gangi's Role In CINEF/X

32.    Frank Gangi decided to form CINEF/X.    (Gangi Declaration filed in Opposition to Digital's Motion for Summary Judgment, ¶ 1.)

33.    Mr. Gangi, through his company Workstation Wizards, advanced the capital for CINEF/X.    (Id.; Court Transcript, June 20, 1995, p. 9.)

34.    Mr. Gangi controlled CINEF/X' finances, was the only individual authorized to make purchases on behalf of CINEF/X, signed all of the checks for CINEF/X' purchases, and approved all of CINEF/X' purchases from Digital.    (Id.)

35.    Mr. Gangi hired the attorneys on behalf of CINEF/X, and directed the filing of and the prosecution of the lawsuit against Digital.    (Rees Decl., Feb. 24, 1995; Court Transcript, June 20, 1995, p. 10.)

36.    Mr. Gangi supplied CINEF/X' attorneys with all documentation and factual information to support CINEF/X' case. (Rees Decl., Feb. 24, 1995.)

37.    Mr. Gangi set up CINEF/X' California address. (Mejia Deposition.)

38.    Mr. Gangi directed the securing of CINEF/X' telephone number.    (Gaetani Depo., pp. 89-93.)

39.    Mr. Gangi reviewed all discovery responses declarations submitted on behalf of CINEF/X in support of its summary judgment motion and directed that the declarations of Scott Levine and John Mehoff be filed.    (Rees Decl., Feb. 24, 1995; Court Transcript, June 20, 1995, pp. 18-19.)

\\\

40.   Mr. Gangi told Mr. Rees that Mr. Levine was knowledgeable about CINEF/X even though (1) he did not know and never met Levine, (2) he was never told anything about Levine's background and (3) he knew Levine had no knowledge about CINEF/X. (Court Transcript, March 14, 1995, pp. 6-10, 24-27; June 20, 1995, p. 15.)

41.   Mr. Gangi helped draft the Levine declaration and directed it to be filed even though (1) he did not know and never met Levine, (2) he was never told anything about Levine's background in computers and (3) knew Levine had no knowledge about CINEF/X.  (Court Transcript, March 14, 1995 pp. 6-10, 24-27; June 20, 1995, p. 15.)

42.   Mr. Gangi directed that discovery responses be signed by Mr. Levine because he wanted to conceal his own participation in CINEF/X from Digital.  (Court Transcript, June 20, 1995, p. 12.)

43.   Mr. Gangi later falsely verified an interrogatory response on behalf of CINEF/X which stated that he believed CINEF/X' telephone number was maintained by John Mehoff and testified in his deposition that he had no role in maintaining the telephone number.  In fact, an employee of Workstation Wizards, Gangi's own company, maintained the telephone number. (CINEF/X' Responses to Digital's Third Set of Interrogatories, No. 20; Gangi Depo., pp. 221-22; Gaetani Depo., pp. 89-93; Fischer Decl., Ex. A; Court Transcript, June 19, 1995, p. 37.)

44.   Mr. Gangi falsely verified an interrogatory response on behalf of CINEF/X which stated that John Mehoff's address was 550 Landreville Rue.  Mr. Gangi testified in court

10

1  that he had no reason to believe that to be true and in fact it

2  was not true.   (CINEF/X' responses to Digital's Third Set of

3  Interrogatories, No. 16; Court Transcript dated March 13, 1995,

4  pp. 44; Lefevbre Declaration.)

5  　　　　45.  Mr. Gangi falsely stated in his deposition and in

6  Court that he used to have Mehoff's telephone number but that his

7  computer crashed, he supposedly had no back up, and he refused

8  Digital's help to try to retrieve the data.  This testimony, on

9  its face, is unbelievable.[1]  (Court Transcript dated March 14,

10  1995, pp. 13-19 attached as Ex. B to Morrissey Declaration filed

11  in Support of Digital's Amended Motion for Summary Judgment;

12  Gangi Depo., pp. 223-24.)

13  　　　　46.  Mr. Gangi falsely stated at his deposition that he

14  did not know of any Digital computer equipment ordered by CINEF/X

15  that was delivered to CFR/Susco, that was resold to anyone or

16  that was for anything other than CINEF/X' own use.  Mr. Gangi

17  personally arranged for the sale of this equipment to CFR/Susco

18  through the CINEF/X artifice.   (Gangi Depo., pp. 62, 260-61;

19  Sinibaldi Decl.; Stock Decl.)

20  　　　　47.  Mr. Gangi decided to continue the deception

21  regarding the bona fides of CINEF/X by directing CINEF/X' counsel

22  to produce in discovery and submit to the Court a false and

23  fabricated CINEF/X' "News Release" dated February 1, 1993 which

24  _____

25  　　　[1]Gangi's claim that has no proof of Mehoff's existence
other than what was contained in his computer that crashed
26  shortly before his deposition is highly suspect.  Gangi is
sophisticated in the business and use of computers; the Court
27  finds it incredible that he would only keep vital information
like business numbers on a computer without any type of back-
28  up.

11

1  provided CINEF/X' telephone number.  CINEF/X did not have a

2  telephone number until March 9, 1993.  (See Ex. A to Supplemental

3  Fischer Declaration filed in support of Digital's Amended Motion

4  for Summary Judgment).

5      48.  Mr. Gangi provided misleading testimony about his

6  relationship with Norwood Technologies and Norwood's relationship

7  to this case. During his deposition, Mr. Gangi testified that he

8  simply rented office space to Norwood.  That was not true.  He

9  Rather, he was involved in and directed Norwood's business:  He

10 directed Robert Gaetani to take orders, write letters to Digital,

11 send payments to Digital, and to terminate Norwood's ISV

12 relationship with Digital.  (Gaetani Depo., pp. 29, 63, 93.)

13 Soon after Norwood's ISV agreement was canceled, Mr. Gangi began

14 using CINEF/X as his front to purchase Digital equipment to

15 resell to third parties.  Gangi later admitted that he worked for

16 Norwood.  (Court Transcript, June 20, 1995, p. 38.)

17     49.  Mr. Gangi falsely testified that CINEF/X did not

18 learn of the ISV program until April 1993.  CINEF/X was not the

19 only Gangi company which purchased Digital equipment at discounts

20 obtained by fraud.  Mr. Gangi directed the activities of Norwood

21 Technologies in 1992-1993.  Norwood purchased more than $500,000

22 worth of equipment from Digital, at a discount of over $203,000,

23 (Lavoie Decl. ¶ 5 and Ex. A), under the ISV program.  Like

24 CINEF/X, there is no evidence that Norwood ever developed

25 software (Gaetani Depo., p. 33).  When Digital started

26 investigating Norwood, Gangi directed Gaetani to cancel Norwood's

27 ISV Agreement in August 1993.  (Id., p. 29, 93 and Ex. 4.)

28 \\\

1    50.   Mr. Gangi falsely testified that no equipment
2    purchased by CINEF/X was resold or purchased for any reason other
3    than CINEF/X' own use.   (Gangi Depo., p. 62, 112-113, 260-261.)
4    CINEF/X purchased products from Digital and resold and delivered
5    them to CFR/Susco in Massachusetts.   Executives of CFR/Susco
6    testified they received from and paid CINEF/X for computer
7    equipment they had ordered from Gangi's company, Workstation
8    Wizards.   Mr. Gangi explained to CFR/Susco that the equipment
9    would come from CINEF/X and CFR/Susco should therefore pay
10   CINEF/X.   CFR/Susco arranged for the payment to be made to
11   CINEF/X, either by wire transfer to a bank in California or by
12   check made payable to CINEF/X.   (Sinibaldi Decl.; Stock Depo.
13   pp. 13-30.)   Gangi admits that he told CFR/Susco to send money to
14   CINEF/X.   (Court Transcript, June 20, 1995, p. 35.)

15        51.   Mr. Gangi falsely testified that he was not aware
16   of the delivery of any equipment ordered by CINEF/X to any place
17   other than CINEF/X' Marina Del Rey address.   (Gangi Depo., p.
18   62.)   Product ordered by CINEF/X was delivered to CFR/Susco.   It
19   was addressed to "CINEF/X" or "CINEF/X EAST."   (Sinibaldi Decl.)

20        52.   Mr. Gangi falsely testified that he was not
21   familiar with CINEF/X East.   (Gangi Depo., pp. 259-60.)
22   Sometimes, equipment arrived at CFR/Susco addressed to CINEF/X or
23   CINEF/X East which had already been paid for by CFR to
24   Workstation Wizards.   Other times, equipment would arrive which
25   was not ordered by CFR/Susco, and CFR's executives would call
26   Gangi who would arrange to have the equipment picked up.   (See
27   Sinibaldi Decl.; Stock Depo., pp. 13-30.)   Later in Court, Gangi
28   \\\

13

admitted knowledge of CINEF/X East.  (Court Transcript, June 20, 1995, p. 25-26, 28.)

53.  After Mr. Levine admitted he knew nothing about CINEF/X and was requested by the Court to come to California, Mr. Gangi suggested to Mr. Levine that he make up an excuse so that he would not have to appear and offered to pay Mr. Levine's attorneys' fees.  (Court Transcript, June 19, 1995, p. 35.)

54.  Mr. Gangi signed a declaration which was submitted in opposition to Digital's motion for summary judgment which stated that he had personal knowledge about CINEF/X and its transactions with Digital even though he had previously testified that his only source of information about CINEF/X was John Mehoff.  (See Gangi Declaration filed in opposition to Digital's Amended Motion for Summary Judgment; Gangi Depo., pp. 29, 81.)

55.  Mr. Gangi testified to a net worth of $500,000. (Court Transcript, March 13, 1995, p. 26.)

D.  The Role Of CINEF/X' Counsel

56.  Mr. Rees is "of counsel" at the law firm of Daar & Newman.

57.  Mr. Rees was contacted by Frank Gangi on June 8, 1994 to represent CINEF/X.  Mr. Gangi transmitted to Mr. Rees copies of documents purportedly received by CINEF/X.  (Rees Decl., Feb. 24, 1995, ¶¶ 1,2.)

58.  Mr. Rees relied primarily on Mr. Gangi in the litigation and failed to do a sufficient, independent investigation to assure himself of the bona fides of CINEF/X despite being warned by Digital at the outset of and throughout the litigation that CINEF/X did not appear to be a bona fide

company.  (See generally, Rees Decls. filed February 24, 1995 and May 1, 1995.)

59.    In response to Digital's warning to Rees that CINEF/X' purported purpose and operations were a fraud, Mr. Rees did little more than obtain a "Good Standing Certificate" from the Delaware Secretary of State attesting to CINEF/X' mere corporate existence.  (Rees Decl., February 24, 1995, ¶ 23.)

60.    Aside from allegedly relying on the representations of Gangi, Mr. Rees never independently confirmed the location of the equipment purchased by CINEF/X or that CINEF/X actually created a prototype even though he was advised by Digital's counsel that Digital doubted the existence of the prototype as described by CINEF/X and believed CINEF/X was reselling the equipment purchased.  (Rees Decl., February 24, 1995, Ex. A.)

61.    Throughout the litigation, CINEF/X and its counsel consistently concealed the lack of foundation of CINEF/X' claims.

62.    Mr. Rees had ample opportunity to investigate the claims put forth by CINEF/X and the knowledge of CINEF/X' alleged witnesses.

a.    Rule 6 Conference

63.    On September 15, 1994, counsel for Digital and CINEF/X met for a Rule 6 conference.  During the conference Mr. Rees revealed John Mehoff, Scott Levine, and John Carlos as CINEF/X' witnesses.  He failed to reveal Frank Gangi and Juan Carlos Mejia who resided at CINEF/X' purported place of business and who forwarded packages from Digital to Mr. Gangi.  Rees

\\\

1  intentionally concealed Mr. Gangi's existence at Mr. Gangi's

2  request.[2]

3              b.   Discovery Responses

4       64.   In response to discovery requests by Digital, Mr.

5  Rees drafted and served discovery responses purportedly verified

6  by Scott Levine.  The responses were false and were not based on

7  information that Mr. Rees received from or discussed with Scott

8  Levine.  (Rees Decl., Feb. 24, 1995, ¶¶ 13-15.)

9       65.   Mr. Rees drafted the answers to the

10 interrogatories from information and documents provided to him by

11 Mr. Gangi.  (Court Transcript, June 19, 1995, p. 63.)

12      66.   Mr. Rees did not carefully review the responses

13 with Mr. Levine to insure that they were accurate and that Mr.

14 Levine was able to obtain the necessary information to verify

15 them.[3]  (Rees Declarations.)

16      67.   Mr. Rees never had a detailed conversation with

17 Mr. Levine about the information contained in the discovery

18 responses.  (Court Transcript, June 19, 1995, p. 41; Rees

19 _____

20      [2]Rees argues that he advised Digital's counsel that he was
   not disclosing the name of "CINEF/X' financial backer" -- i.e.,
   Mr. Gangi -- because of alleged harassment by Digital
21 previously directed at Gangi and his associates.  However, the
   Court notes that Gangi was far more than a financial backer --
22 he was the only CINEF/X witness and/or representative Mr. Rees
   had ever met or spoken to before or after the Rule 6 conference
23 with knowledge of CINEF/X' activities.  Gangi was also the
   person directing the litigation.

24
      [3]Mr. Rees argues that Mr. Mehoff was "apparently available
25 during this time period" to assist Levine in verifying the
   information in the declaration.  However, the Court believes it
26 was unreasonable for Rees to assume Levine could or would talk
   to Mr. Mehoff since Rees did not know how to reach Mehoff and
27 had never communicated with him.  Mr. Rees also had no way of
   knowing that Mehoff could provide sufficient information to
28 verify the responses since they had never communicated.

Declarations.)

c. <u>Summary Judgment Motion and Supporting</u>
<u>Declarations</u>

68.    During July, August and September Mr. Rees and
other members of his firm worked with Mr. Gangi to begin
preparation of a motion for summary judgment. (Rees Decl., Feb.
24, 1995, ¶ 9.)

69.    On September 19, 1994, the parties appeared for
their first status conference with the Court. At that conference
CINEF/X requested that it be allowed to file a summary judgment
motion as soon as possible. In response, Digital explained that
it was concerned that it had not had the opportunity to take the
necessary discovery. The Court suggested that Digital include
this issue in its opposition papers if appropriate.

70.    Mr. Rees drafted and filed the Levine declaration
in support of CINEF/X summary judgment motion. The declaration
was false and was based, in part, on information not obtained or
discussed with Levine. (Rees Decl., May 1, 1995, generally.)

71.    Mr. Rees did not carefully review the declaration
with Mr. Levine to insure that it was accurate and that Mr.
Levine had knowledge of or verified all the facts contained in
it.[4] (Rees Decl., May 1, 1995.)

---

[4]Mr. Rees states that he asked Levine to carefully review
the documents provided and to communicate with others he deemed
necessary to be able to sign the declaration. Conversely, Mr.
Levine states that he was only told to review and understand
the documents and to make sure the documents supported the
declaration. He thought that the reference in his declaration
to "verifying the information with others," meant that he had
verified it with CINEF/X' attorneys. (Court Transcript, June
19, 1995, pp. 16, 24.) The Court notes that Rees had no
knowledge of individuals with whom Levine could communicate

72.   Mr. Rees did not ask Mr. Levine whether he had anything to do with CINEF/X.  (Court Transcript, June 19, 1995, p. 17.)

73.   Mr. Rees did not ask Mr. Levine whether he ever worked for CINEF/X.  (Id.)

74.   Mr. Rees did not ask Mr. Levine if he knew a Mr. Mehoff.  (Id., p. 25-26.)

75.   Mr. Rees did not ask Mr. Levine whether he had any knowledge of the use of the software for the process that CINEF/X was engaged.  (Id.)

76.   Mr. Rees did not ask Mr. Levine whether he had any knowledge of computer hardware sufficient to sign a declaration regarding CINEF/X' purported building of a computer system. (Rees Decl., May 1, 1995)

77.   Mr. Levine told Mr. Rees that he did not have first-hand knowledge of the facts in the declaration.  (Court Transcript, June 19, 1995, pp. 22-23, 76.)

78.   Mr. Levine never told Mr. Rees that he was an officer of CINEF/X with access to or knowledge of the company's activities.[5]  (Id., p. 53.)

---

besides Mr. Mehoff, a person  who could not be found.  He therefore had no reason to believe Levine would be able to verify the information with others.  Levine also testified that he told Mr. Rees that Levine had no personal knowledge of the facts stated in the declaration, and that Levine had not yet been involved in the company at the time he was asked to review the declaration.   (Court Transcript, June 19, 1995, p. 64.)

[5]Mr. Rees states that Mr. Levine told him that he was the assistant vice-president and only that Levine was not involved with placing the orders, implying that he had other involvement.   (Rees Decl., May 1, 1995, ¶ 4.)   But Mr. Levine states that he told Rees that he was not involved at all with CINEF/X.  (Court Transcript, June 19, 1995, pp. 74, 81, 94.)

79. Mr. Rees knew Mr. Levine did not know about the Electronic Store mentioned in the declaration and suggested Mr. Levine become familiar with it. (Court Transcript, June 19, 1995, pp. 38, 78.)

80. Mr. Rees never provided Mr. Levine with names of people, other than Mr. Mehoff, with whom Levine could communicate about the discovery responses or the declaration. (Rees Decl. May 1, 1995, ¶ 3.) Mr. Rees did not identify for Mr. Levine individuals with whom Mr. Levine should verify the information in his declaration. (Court Transcript, June 19, 1995, p. 97.)

81. Even according to Mr. Rees, Levine contributed nothing more to his declaration than supplying Mr. Rees with two different titles for himself at CINEF/X, confirm he did not place CINEF/X' orders, discuss RAM memory, and confirm that special effects were in demand. (Rees Decl. May 1, 1995, ¶¶ 4, 6-8 and 11; Cf. Court Transcript, June 19, 1995, pp. 84, 95.) The rest of the facts stated in the Levine Declaration either came from Mr. Gangi or from Mr. Rees himself. (See Rees Decl., May 1, 1995, generally.)

82. Mr. Levine does not know anything about motion picture special effects. (Court Transcript, June 19, 1995, p. 2.)

83. Before this lawsuit, Mr. Levine had never been told he was an officer of CINEF/X. (Id., p. 14.)

---

However, Mr. Rees has admitted he knew Levine had no involvement with CINEF/X at the time he asked Levine to execute the declaration. (Id., p. 64.) Therefore, the Court finds it unreasonable for Mr. Rees to have possibly thought Mr. Levine had any knowledge or involvement even if Mr. Levine implied that he did.

84.  Since Mr. Rees had drafted the declaration with Mr. Gangi and knew that Gangi was seeking to shield himself from discovery, Mr. Rees was on notice that Mr. Levine's personal knowledge of the facts in the declaration might be lacking.

85.  Even according to Mr. Rees, Mr. Rees' own "verification" of the information in the Levine declaration only consisted of:

• Mr. Levine's two day delay in returning the signed declaration to him.  (Rees Decl. May 1, 1995, ¶¶ 3,4.)

• Mr. Levine's alleged "comments" about Mr. Mehoff.  (¶ 3.)

• Mr. Rees' own knowledge or his experience with Digital's Electronic Store.  (¶¶ 7,16,17,30.)

• Mr. Levine's prior verification of CINEF/X' discovery responses which were subsequently withdrawn.  (¶¶ 6, 22, 24, 25, 28, 29, 31.)

• Mr. Levine's signature.  (¶ 14.)

• Mr. Mehoff's declaration that was secured through Mr. Gangi.  (¶¶ 31, 33.)

• Nothing at all. (¶¶ 12, 13, 15, 17-21, 23, 27, 33, 34.)

86.  Mr. Gangi's deposition and court testimony do not support the facts stated in the Levine declaration since Mr. Gangi stated that everything he knew about CINEF/X was told to him by Mr. Mehoff.  (Gangi testimony; cf., Rees Decl., February 24, 1995, ¶ 31.)

87.  Mr. Rees drafted and filed the Mehoff declaration in support of CINEF/X' motion for summary judgment without ever

1  communicating directly with Mr. Mehoff.  (Rees Decl., filed

2  February 24, 1995, ¶¶ 20, 24, 37.)  Rees had no address, no

3  telephone number, and no other identifying information or first

4  hand knowledge of Mr. Mehoff.  Rees created the Mehoff

5  declaration solely with the assistance of Frank Gangi and never

6  reviewed the declaration with Mr. Mehoff to insure it was

7  accurate and that Mr. Mehoff had knowledge of the facts contained

8  in it.  According to Mr. Rees, Mr. Gangi coordinated sending the

9  declaration to Mr. Mehoff and securing his signature.  According

10  to Mr. Rees, Gangi reviewed the declaration with Mr. Mehoff.

11  (Rees Decl., February 24, 1995, ¶ 20.)

12      88.  The decision to use Mr. Levine and Mr. Mehoff as

13  declarants was part of an intentional plan by Mr. Rees and Mr.

14  Gangi to conceal Mr. Gangi's involvement with CINEF/X and the

15  lawsuit.  (Rees Decl., Feb. 24, 1995, ¶ 18; Court Transcript,

16  June 20, 1995, pp. 12-13.)

17      89.  Rees withdrew the Levine and Mehoff declarations

18  when made aware of Levine's deposition testimony.

19          d.  Interference With Discovery

20      90.  Mr. Rees objected to interrogatories and document

21  requests on the fictitious grounds of privacy and proprietary

22  information.  He engaged Digital's counsel in lengthy

23  negotiations and court hearings regarding a protective order.  In

24  fact, CINEF/X had no proprietary information to protect.  Even

25  though CINEF/X' counsel sought a court order to protect the

26  disclosure of Mr. Gangi's deposition and designated the entire

27  deposition as confidential, Gangi had no knowledge of proprietary

28  \\\

1  information and there was no testimony that required protection.[6]

2  (See Gangi deposition, generally.)

3          91.   In October, Digital served notices of depositions

4  on CINEF/X for the following employees:  John Mehoff (President);

5  John Carlos (software programmer), and Scott Levine (Assistant

6  Secretary).  Morrissey Decl., ¶ 2, Exh. A.  In mid-November,

7  shortly before the dates set for the depositions, CINEF/X'

8  counsel advised that none of the witnesses would appear on the

9  noticed dates.  Morrissey Decl., ¶ 4, Exh. C.

10          92.   Digital's counsel then contacted CINEF/X' counsel

11  several times in an effort to re-schedule these depositions.

12  CINEF/X' counsel reported that his client was unable to locate

13  Mr. Carlos or Mr. Mehoff.  He stated that Mr. Mehoff was

14  traveling and difficult to reach.  Morrissey Decl., ¶ 5, Exh. F.

15  Ultimately, CINEF/X agreed to produce Scott Levine for a

16  deposition in Massachusetts.  Id.

17          93.   Digital also noticed a deposition of a CINEF/X

18  representative(s) for January 10, 1995 in Los Angeles pursuant to

19  Rule 30(b)(6).  The night before that deposition, Mr. Rees

20  informed Digital's counsel that no one would appear for that

21  deposition.  Morrissey Decl., ¶ 7, Exh. G.  Instead, Rees

22  designated Mr. Levine as CINEF/X' 30(b)(6) witness, allegedly

23  _____

24          [6]Mr. Rees notes that the objections to the discovery were
    sustained by Magistrate Judge Reichmann.  However, Judge
25  Reichmann sustained the objections based on the ground that
    CINEF/X's motion to dismiss Digital's complaint was pending,
26  and that the issue would be revisited if the complaint were not
    dismissed.  (November 11, 1994 Civil Minutes.)  Regardless, the
27  important fact here is that Rees does not contest that he
    proffered objections to the disclosure of non-existent
28  evidence.

1   because he was CINEF/X' Assistant Secretary and the person

2   responsible for "the video special effects portion" of CINEF/X

3   software product.   Id.

4          94.   Digital took Mr. Levine's deposition.   Mr. Levine

5   testified that he knew virtually nothing about CINEF/X; anything

6   he "knew" about CINEF/X' operations was based solely on

7   conversations with and documents received from CINEF/X'

8   attorneys.

9          95.   As part of its discovery efforts, Digital

10  discovered that CINEF/X' address, 13935 Tahiti Way, No. 250,

11  Marina Del Rey, was a residential apartment leased by Juan Carlos

12  Mejia.   Digital served a deposition subpoena on Mr. Mejia and

13  took his deposition on November 29, 1993. (Exh. E to Morrissey

14  Decl.)   At his deposition Mr. Mejia testified that he never

15  worked for CINEF/X (Mejia Depo., p. 19), he did not know and had

16  never met a John Carlos (p. 20) or a John Mehoff (p. 53).   At the

17  request of Mr. Frank Gangi, he agreed to receive CINEF/X mail and

18  to forward it to Mr. Gangi (Id., p. 22).   Mr. Mejia further

19  testified that he received various packages addressed to John

20  Carlos and CINEF/X from Digital and that he forwarded these

21  packages, unopened, by Federal Express back across the country to

22  Workstation Wizards, a company located in Massachusetts.

23  (Id., p. 31).   This is the first time Frank Gangi was identified

24  in the litigation.

                    e.   Concealment of Gangi

26         96.   From the outset of the litigation Mr. Rees sought

27  to conceal Mr. Gangi's involvement with CINEF/X and the

28  prosecution of the lawsuit at Mr. Gangi's request.

                                23

1    97.  Mr. Rees failed to reveal Mr. Gangi as a witness

2    at the Rule 6 conference even though Gangi was the only CINEF/X

3    person with whom Mr. Rees communicated.

4    98.  Mr. Rees concealed Frank Gangi from Digital even

5    though Mr. Gangi provided all of CINEF/X' documents to Rees, was

6    reviewing all pleadings, was purportedly communicating with other

7    witnesses, and was assisting in drafting and reviewing the

8    declarations and discovery responses on behalf of CINEF/X to

9    assure factual accuracy.  (Rees Decl., February 24, 1995, ¶¶ 10,

10   18.)

11   99.  Mr. Rees failed to designate Mr. Gangi as a

12   30(b)(6) witness even though Mr. Gangi had supplied him with all

13   of the documents and information for CINEF/X and Mr. Gangi

14   purported to know more about CINEF/X than any other individual.

15   II.  Conclusions Of Law

16   A.  Rule 11

17   Rule 11 makes every signature on a pleading or a motion a

18   "certification of merits" of the document signed and authorizes

19   sanctions for violation of the certification.  Fed. R. Civ. P.

20   11.  As revised, Rule 11(b) specifically provides that:

21   [b]y presenting to the court (whether by signing,

22   filing, submitting, or later advocating) a pleading,

23   written motion, or other paper, an attorney . . . is

24   certifying that to the best of that person's knowledge,

25   information, and belief, formed after an inquiry

26   reasonable under the circumstances . . . the

27   allegations and other factual contentions have

28   \\\

24

1          evidentiary support . . . and the denials of factual

2          contentions are warranted on the evidence . . . .

3 An inquiry into a party's conduct under Rule 11 is guided by an

4 objective standard of reasonableness under the circumstances

5 rather than an assessment of the party's subjective intent.

6 Hudson v. Moore Business Forms, Inc., 836 F.2d 1156, 1159 (9th

7 Cir. 1987). What constitutes a reasonable inquiry may depend on

8 such factors as: how much time for investigation was available,

9 whether the attorney had to rely on a client for information as

10 to the facts underlying the pleading, etc. See Business Guides,

11 Inc. v. Chromatic Communications Enters., Inc., 498 U.S. 533,

12 550, 111 S. Ct. 922 (1991); Hamer v. Career College Ass'n, 979

13 F.2d 758, 759 (9th Cir. 1992).

14      The rule is designed to deter dilatory or abusive pretrial

15 tactics and creates an affirmative duty of investigation both as

16 to law and to fact. Golden Eagle Distributing Corp. v. Burroughs

17 Corp., 801 F.2d 1531, 1542 (9th Cir. 1986). It is irrelevant

18 whether the pleading was filed in bad faith. The certification

19 is violated, despite counsel's intentions, if the pleading filed

20 is frivolous, legally unreasonable or without factual foundation.

21 Yagman v. Republic Insurance, 987 F.2d 622, 628 (9th Cir. 1993).

22 Likewise, "[a] district court may impose sanctions when a motion

23 [for summary judgment] is not well grounded in fact." Mossman v.

24 Roadway Express, Inc., 789 F.2d 804, 806 (9th Cir. 1986)

25 (imposing sanctions for failure to submit an affidavit in support

26 of motion for summary judgment). Sanctions can also be imposed

27 for submitting an affidavit containing false information.

28 Business Guides, Inc. v. Chromatic Communications Enters., Inc.,

1    892 F.2d 802, 812-13 (9th Cir. 1989) (affirming sanctions imposed

2    for false information contained in affidavit submitted in support

3    of temporary restraining order), aff'd, 498 U.S. 533 (1991).

4         A motion for Rule 11 sanctions may be made by a party or by

5    the Court.  Mr. Rees argues that DEC has failed to comply with

6    the "safe harbor" provision contained in the 1993 amendments to

7    Rule 11 which require that Rule 11 motions be filed three weeks

8    before filing and not be filed if the offending contention is

9    abandoned in the interim.  Rees notes that CINEF/X withdrew the

10   Levine and Mehoff declarations and discovery responses verified

11   by Levine as soon as Rees discovered that Levine testified he

12   knew none of the information contained in his declaration.

13   Digital's Rule 11 motion, which was filed on January 23, 1995,

14   was not pre-served.

15        The Court finds that the safe harbor provision is not

16   relevant to the Court's inquiry here, since the damage had been

17   done by the time Digital learned of violations of Rule 11.

18   CINEF/X' summary judgment motion had been filed, Digital had

19   incurred substantial fees in opposing the motion and the Court

20   had already ruled.  In any event, the Court notes that CINEF/X

21   was provided more than 21 days' notice and opportunity to

22   withdraw its summary judgment motion, which it did not do, before

23   the sanctions hearing.  The Court is satisfied that the substance

24   and spirit of the safe harbor provision of Rule 11 have been

25   satisfied.

26        Regardless, Rule 11 also provides that on its own

27   initiative, the Court may enter an order describing the specific

28   conduct that appears to violate Rule 11 and directing the

attorney to show cause why he or she has not violated the rule.

Fed. R. Civ. P. 11(c)(1)(B).  The Court, on February 8, 1995,

ordered CINEF/X' counsel to show why sanctions should not be

imposed, thus meeting the requirements of Rule 11(c)(1)(B).

Thus, the Court may properly consider the merits of the issues

initially raised by Digital's sanctions motion regardless of the

safe harbor provision.

The Court concludes that Mr. Rees violated Rule 11 by

objecting to discovery and opposing a motion to compel by Digital

on the basis that information Digital sought was proprietary when

Rees had no reasonable basis for doing so and there was never any

proprietary information to protect.  Mr. Rees also violated Rule

11 by signing, filing and advocating CINEF/X' summary judgment

motion which relied almost entirely on the Levine and Mehoff

declarations for which sufficiently reasonable inquiry was not

made.

The Court also finds that Mr. Rees violated Rule 11 by

filing and advocating the Mehoff and Levine declarations for

which sufficiently reasonable inquiry was not made and which did

not have evidentiary support.  These declarations were submitted

for the purpose of showing CINEF/X was a legitimate company with

a real product and real employees, to explain CINEF/X' dealings

with Digital, and to authenticate 22 exhibits.  Under the

circumstances, the warnings by Digital's counsel, Gangi's request

to be concealed, the importance of the declarations as the

primary evidence in support of CINEF/X' summary judgment motion,

etc., Mr. Rees had a duty to further investigate before filing

the declarations.  Mr. Rees also violated Rule 11 by signing and

1   serving discovery responses allegedly verified by Mr. Levine for

2   which no sufficiently reasonable inquiry was made and which had

3   no support.

4       The Court's findings of fact discussed above amply

5   demonstrate that Mr. Rees failed to undertake an objectively

6   reasonable course of action under the circumstances in

7   researching and investigating the bona fides of his client and

8   the factual bases for the various motions submitted to the Court.

9   Sanctions are therefore appropriate.

10      As prescribed by Rule 11, the sanction imposed for a

11  violation is limited to "what is sufficient to deter repetition

12  of such conduct or comparable conduct by others similarly

13  situated." Thus, the primary purpose is to deter rather than to

14  compensate. With this in mind, as well as considering the

15  severity of the Rule 11 violations at issue, the Court finds that

16  a sanction of $1,000, payable to the Clerk, United States

17  District Court, is appropriate to deter Mr. Rees and other

18  litigants from engaging in the conduct outlined above.

19          B.   Inherent Powers

20      The Court also has the inherent power to impose sanctions

21  for bad faith conduct and/or willful disobedience of a court

22  order. Chambers v. NASCO, 501 U.S. 32, __, 111 S. Ct. 2123, 2132

23  (1991); Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-66, 100

24  S. Ct. 2455 (1980). The Court's powers are governed by the

25  control vested in courts to manage their affairs. Chambers, 111

26  S. Ct. at 2132. The Court's inherent power to sanction is

27  broader than its power to sanction pursuant to specific rules or

28  statutes because it is not limited to particular actions by

28

parties or their attorneys:  e.g., presenting court papers [Rule

11], misconduct by attorneys [28 U.S.C. § 1927].  Lockary v.

Kayfetz, 974 F.2d 1166, 1170 (9th Cir. 1992), cert. denied, __

U.S. __, 113 S. Ct. 2397 (1993).  The Court also has the inherent

power to impose sanctions on its own motion.  Chambers, 111 S.

Ct. at 2132; In re Itel Sec. Litigation, 791 F.2d 672, 675 (9th

Cir. 1986) (sanctions may be awarded sua sponte under the court's

inherent power) (citations omitted), cert. denied, 479 U.S. 1033

(1987); Thompson v. Housing Authority of Los Angeles, 782 F.2d

829, 831 (9th Cir. 1986), cert. denied, 479 U.S. 829 (1986)

(district court had discretion to dismiss Title VII action for

failure to comply with pretrial orders and rules of court

pertaining to pretrial conference.)

The Court has the inherent power to sanction parties for

doing acts in bad faith, vexatiously, wantonly or for oppressive

reasons.  Chambers, 111 S. Ct. at 2133; Alyeska Pipeline Service

Co. v. Wilderness Soc'y, 421 U.S. 240, 258-9 (1975).  Bad faith

may be found, not only in the actions that led to the lawsuit,

but also in the conduct of the litigation.  Roadway, 447 U.S. at

766.  The test for such conduct is an objective one.  Ford v.

Temple Hospital, 790 F.2d 342, 349-350 (3rd Cir. 1986) (where

attorney filed Title VII action on behalf of employee, but failed

to bring action within 90 days after issuance of right to sue

notice, some indication of intentional advancement of baseless

contention that was made for ulterior purpose, e.g., harassment

or delay, would be indicative of bad faith, for purpose of award

of attorneys' fees against the attorney); see also Roadway, 447,

U.S. at 766.  Perpetrating a fraud on the Court is considered bad

29

1  faith conduct.  Chambers, 111 S. Ct. at 2138-2139 (upholding

2  district court's order shifting attorneys' fees and related

3  expenses as sanction pursuant to the court's inherent powers for

4  tactics such as depriving court of jurisdiction by acts of fraud

5  done outside of court and filing of false and frivolous

6  pleadings); see also Combs v. Rockwell Int'l Corp., 927 F.2d 486,

7  488 (9th Cir. 1991).

8      The fact that the actions taken or the case itself may have

9  merit is not a defense to sanctions under the Court's inherent

10  powers.  In re Itel, 791 F.2d at 674.  A Court may impose

11  sanctions pursuant to its inherent power even though the conduct

12  could also be sanctioned under other statutes or rules.  Lockary,

13  974 F.2d at 1170 (quoting Chambers, 111 S. Ct. at 2135-36).

14      Sanctions under the court's inherent power may be imposed

15  against the person who controls the litigation and is responsible

16  for the abusive conduct, whether or not that person is a party to

17  the action.  Lockary, 974 F.2d at 1169 (sanctions pursuant to the

18  court's inherent powers appropriate where district court

19  recognized that neither F.R.C.P. Rule 11 nor 28 U.S.C. § 1927

20  gave it the power to sanction the corporation).

21      Part of the Court's inherent power includes the right to

22  award attorneys' fees for bad faith conduct.  Chambers, 111 S.

23  Ct. at 2138-39 (sanctions awarded consisting of the entire

24  attorneys' fees of plaintiff and litigation costs incurred,

25  almost $1 million); see also General Signal Corp. v. Donallco,

26  Inc., 787 F.2d 1376, 1380 (9th Cir. 1986); Kerr v. Screen Extras

27  Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), cert. denied, 425

28  U.S. 951 (1976); Toombs v. Leone, 777 F.2d 465, 472, (9th Cir.

1  1985).  The Court may impose such sanctions as are necessary to

2  compensate the innocent party, to vindicate the affront to the

3  Court, and to ensure that such abuses are not repeated.

4  Chambers, 111 S. Ct. at 2139.

5       An award under the Court's inherent power is not limited to

6  "excess" costs or fees (as under 28 U.S.C. § 1927).  The fee

7  award must relate to the bad faith conduct involved, but is

8  committed to the trial court's sound discretion.  General Signal

9  Corp., 787 F. 2d at 1380.  The criteria for imposing attorneys'

10  fees pursuant to the Court's inherent power is the same as the

11  criteria under Rule 11:  timing, reasonableness, mitigation, and

12  the fault of the opposing party.  See Chambers, 111 S. Ct. at

13  2138-39.

14       The foregoing facts show that in all respects Mr. Gangi

15  controlled CINEF/X and the litigation.  No other individual has

16  come forward either as an officer or employee of or investor in

17  CINEF/X.  Mr. Gangi directed all of the purchases and provided

18  all of the capital for CINEF/X.  There is no evidence that

19  CINEF/X has engaged in any activities independent of Mr. Gangi.

20  In addition, Mr. Gangi was the individual who controlled the

21  litigation on CINEF/X' behalf and who was responsible for the

22  abusive conduct.  For this reason he is subject to sanctions.

23       Based on the facts stated above, the Court concludes that

24  both Gangi and CINEF/X acted in bad faith, vexatiously, wantonly

25  and for oppressive reasons.  Gangi and CINEF/X perpetuated a

26  fraud on the Court by misleading the Court about the bona fides

27  of CINEF/X.  Gangi and CINEF/X obstructed justice by

28  manufacturing witnesses and evidence in order to endeavor to

1    establish claims against Digital and defend against Digital's

2    affirmative claims.   Finally, Mr. Gangi has perjured himself to

3    conceal his scheme.

4    From the outset of the litigation, Digital attempted to stop

5    the offending conduct outlined above.   Digital sought to conduct

6    discovery, and gathered evidence in a timely manner from CINEF/X

7    and third parties.   To the extent this litigation was prolonged

8    and Digital's costs were increased, it was due to Gangi, CINEF/X

9    and CINEF/X' counsel's objections and delays.   Digital did not in

10   any way contribute to the offending conduct.

11   Pursuant to the Court's inherent powers, CINEF/X and Gangi

12   are jointly and severally ordered to pay Digital's attorneys'

13   fees in this action incurred as a result of CINEF/X and Gangi's

14   ongoing scheme to defraud Digital and this Court, repeated

15   perjury and obstruction of justice.   Based on the billing

16   statements submitted by Digital's counsel, the Court concludes

17   that the reasonable amount of said fees should be $212,000, the

18   total attorneys' fees incurred by Digital in this action.   Such

19   sanctions are reasonable in light of the pervasiveness of the

20   offending conduct that infected the entire litigation.

21   The Court notes that Mr. Rees has filed an objection to the

22   declaration and attached exhibits from Ms. Debra Fisher,

23   Digital's counsel, detailing the legal fees and costs incurred in

24   this case.   Mr. Rooney, CINEF/X' and Mr. Gangi's counsel, has

25   informed the Court that he joins in Rees' objections and will not

26   be filing separate objections.

27   One objection is that the majority of the fees detailed in

28   the declaration are for tasks and matters that are unrelated to

1   the conduct of Mr. Rees that the Court has found to violate Fed.

2   R. Civ. P. 11.  However, the Court notes that it has not

3   considered the attorneys' fees incurred by Digital in arriving at

4   the sanction it has imposed on Rees.  Furthermore, since Mr.

5   Gangi and CINEF/X have been sanctioned for their conduct through

6   the entire course of this litigation under the Court's inherent

7   powers and not Rule 11, this objection is irrelevant as far as

8   Gangi and CINEF/X are concerned.

9       The sanctioned parties also complain that Ms. Fisher's

10   declaration was untimely filed.  In fact, the declaration was

11   filed at the Court's request, and the Court is unaware of any

12   deadline that barred the filing of the declaration.  The parties

13   also complain that the "untimely" submission of the declaration

14   and its exhibits have deprived them of the opportunity to "cross-

15   examine the declarant" about fees and has thereby denied them a

16   "fair hearing" on the issue of attorneys' fees.  The parties fail

17   to cite to any authority, nor is the Court aware of any, that

18   supports their argument that they are somehow entitled to cross-

19   examine Ms. Fisher on this issue.  The Court has fully considered

20   the written objections raised by Mr. Rees to Ms. Fisher's

21   declaration.  The Court has also provided Mr. Rooney a full

22   opportunity to submit his own objections; this opportunity was

23   declined.  Regardless of whether the declarant has been cross-

24   examined, full process has been afforded to all parties.

25       Finally, the sanctioned parties argue that the declaration

26   and its exhibits constitute hearsay and lack foundation and

27   authentication.  The Court disagrees.  Precedent clearly

28   establishes that an award of attorneys' fees may be based on the

1   affidavits of counsel, so long as they are "sufficiently detailed

2   to enable the court to consider all the factors necessary in

3   setting the fees." Williams v. Alioto, 625 F.2d 845, 849 (9th

4   Cir. 1980), cert. denied, 450 U.S. 1012 (1981); see also Shakey's

5   Inc. v. Covalt, 704 F.2d 426, 435 (9th Cir. 1983) ("ample

6   evidence to support the attorney's fee award"); Manhart v. City

7   of Los Angeles, 652 F.2d 904, 908 (9th Cir. 1981) ("sufficiently

8   detailed to provide a basis for the award"), vacated on other

9   grounds, 461 U.S. 951 (1983).

10   Here, the attorneys' fees are supported by an affidavit and

11   exhibits that include contemporaneous billing statements

12   maintained by Digital's counsel.  The declaration and exhibits

13   disclose the hours billed, the nature of the professional

14   services rendered, and the customary hourly rate of each attorney

15   working on the case.  This more than adequately establishes an

16   evidentiary foundation for the amount of attorneys' fees.  See

17   Henry v. Gill Industries, Inc., 983 F.2d 943, 946 (9th Cir. 1993)

18   (court finding proper evidentiary basis for awarding attorneys'

19   fees where documents submitted by party seeking fees "disclosed

20   the nature of the services rendered in connection with [the

21   dispute at issue], the amount of attorney time so consumed, and

22   the rates at which this time was billed to the client.").

23   In short, given the pervasive nature of CINEF/X' and Mr.

24   Gangi's conduct, the Court finds that they are liable for

25   Digital's attorneys' fees as adequately detailed in Ms. Fisher's

26   declaration.

27   \\\

28   \\\

1    This matter is referred to the U.S. Attorney's Office for

2    its consideration of criminal proceedings against Mr. Gangi.

3        IT IS SO ORDERED.

4

5    DATED: _8/3/95_

6

7                                STEPHEN V. WILSON
                                 UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28