IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| FERROUS MINER HOLDINGS, LTD., | ) Case No. 14-12343 (BLS) |
| Debtor. | ) |
| In re: | ) Chapter 11 |
| GLOBAL NAPS, INC., | ) Case. No. 14-12344 (BLS) |
| Debtor. | ) Hearing Date: October 21, 2014 at 11:30 a.m. (ET) |

**STATEMENT OF THE UNIVERSAL SERVICE ADMINISTRATIVE COMPANY REGARDING (I) MOTION OF CARL F. JENKINS, AS COURT-APPOINTED RECEIVER, TO DISMISS CHAPTER 11 BANKRUPTCY CASES PURSUANT TO 11 U.S.C. § 305(a) AND (II) DEBTORS' OBJECTION TO THE MOTION TO SHORTEN TIME FOR NOTICE AND RESPONSE TO MOTION OF CARL F. JENKINS, AS COURT-APPOINTED RECEIVER, TO DISMISS CHAPTER 11 BANKRUPTCY CASES PURSUANT TO 11 U.S.C. § 305(a)**

The Universal Service Administrative Company ("USAC"), a party-in-interest in the above-referenced cases of Ferrous Miner Holdings, LTD ("Ferrous Miner") and Global NAPs, Inc. ("Global NAPs"; together with Ferrous Miner, the "Debtors), hereby submits this Statement of the Universal Service Administrative Company Regarding (I) the Motion of Carl F. Jenkins, as Court-Appointment Receiver, to Dismiss Chapter 11 Bankruptcy Cases Pursuant to 11 U.S.C. § 305(a) (the "Motion to Dismiss") and (II) the Debtors' Objection to the Motion to Shorten Time for Notice and Response to the Motion to Dismiss (the "Response"). First, in light of the remarkably short timeline requested by the Receiver (as defined below), USAC would support a brief continuance of this hearing in order to allow the parties to provide this Court with the factual

background required to assess the issues before the Court.[1] Second, as set forth in more detail herein, while USAC has no objection to the continuation of the Debtors' Chapter 11 cases, USAC requests that this Court appoint a Chapter 11 trustee to (a) take possession of and preserve all estate assets and (b) assess and determine the best course of action for creditors including whether dismissal of these proceedings is ultimately in the best interest of creditors. Finally, as discussed below, because the Receiver became obligated to USAC during the Receivership (as defined below) through his operation of the Debtors' business, USAC reserves all of its rights to be paid from the assets of the Receivership pursuant to, among other things, 11 U.S.C. § 543(c)(1).

In support hereof, USAC respectfully states as follows:[2]

## I.     BACKGROUND

1.     USAC is a not-for-profit Delaware corporation that administers the federal Universal Service Fund (the "USF") under the oversight of the Federal Communications Commission. See 47 C.F.R. § 54.701(a). The USF is funded through mandatory contributions from all U.S. telecommunications carriers based on, inter alia, a percentage of their interstate and international end-user telecommunications revenues. 47 C.F.R. § 54.709(a). USAC and the USF are described in detail in various pleadings filed in the Massachusetts receivership case (D. Mass, Case No. 02-12489) (the "Receivership").

2.     More than four and a half years ago, Carl F. Jenkins (the "Receiver") was appointed as receiver of Global NAPs and its affiliates, subsidiaries, and other related entities.

---

[1] USAC supports a continuance only on the condition that (a) the Receivership assets will remain with the Receiver, subject to the automatic stay, during such continuance, and neither the Debtors nor Mr. Gangi will have access thereto and (b) the continuance be very short (i.e., approximately 2 weeks) to avoid further delay and the unnecessary accrual of expenses.

[2] USAC has not reviewed any of the corporate authority issues raised by the parties and make no representations related thereto.

3.  After the inception of the Receivership, the Receiver operated the Debtors' telecommunications business and, subsequently, conducted a going-concern sale of the Debtors' telecommunications business.

4.  Prior to the sale, while operating the Debtors' telecommunications business during the Receivership, the Receiver withheld or delayed payment to certain creditors (including to USAC) for claims incurred by the Receiver during the Receivership. As a result, USAC holds substantial claims which arose during the Receiver's operation of the Receivership estate.

5.  USAC holds post-Receivership claims totaling at least $701,166.49 based on the Receiver's operation of the various entities in the Receivership, from his appointment on May 6, 2010 through May 2, 2012, when operations ceased.[3] As set forth in the Receiver's Amended Recommendations on Claims [MA Receivership Dkt. No. 1003] (the "Amended Recommendation"), the Receiver made an initial "administrative recommendation" that USAC's post-Receivership claim be allowed in the amount of $576,890.50. In connection with a subsequent hearing, USAC provided further support for its post-Receivership claim of $701,166.49. Upon information and belief, the Receiver no longer disputes that USAC's post-Receivership claim should be allowed in the amount of $701,166.49.

6.  It is clear from the Amended Recommendation that the Receivership estate is administratively insolvent.

---

[3] USAC's claims are discussed in detail in USAC's Memorandum in Support of its (I) Objection and Response to Receiver's, Carl F. Jenkins, Recommendation on Claims and (II) Request for Full Allowance of Post-Receivership Claim, which was filed in the Massachusetts receivership case on July 8, 2013 [MA Receivership Dkt. No. 1014] (the "USAC Claim Memorandum"). The Massachusetts District Court has heard oral arguments regarding claims issues but the Receiver's Amended Recommendation and USAC's objection thereto, which is supported by the USAC Claim Memorandum, remain pending.

## II. LACK OF FINANCIAL INFORMATION AVAILABLE TO ASSESS STATUS OF RECEIVERSHIP AND BEST INTERESTS OF CREDITORS

7. On numerous occasions throughout the receivership, USAC has requested that the Receiver and his professionals provide certain information to USAC regarding the solvency of the Receivership and the expenses incurred by the Receiver. For example, USAC has requested accountings of assets liquidated and expenses paid in connection with both the business operations and various other asset sales conducted by the Receiver. USAC has also requested information regarding fees incurred by the Receiver and his professionals[4] and the extent to which the Receiver has paid the fees and expenses of the Receiver and his professionals from the assets of the Receivership.

8. The information repeatedly requested by USAC is necessary because it appears that involuntary creditors of the Receivership, such as USAC, have unwittingly funded the Receiver's actions during the Receivership at the behest of and for the intended benefit of the creditors who sought the Receivership (i.e., Verizon and SNET). In addition, this is the type of information which a fiduciary (such as a receiver or trustee) would typically provide willingly and thoroughly to the creditors to which he owes a duty.

9. For example, as described the USAC Accounting Memorandum, it appears that the Receiver has paid substantial legal/consulting fees (i.e., nearly $8 million from May 2010 through April 2012) from assets of the Receivership, while failing to pay USAC and other creditors with claims which arose during the same period.

---

[4] One such request, in the form of a Memorandum in Support of a Motion to Compel (the "USAC Accounting Memorandum") is attached as Exhibit A to the Debtors' Response. The USAC Accounting Memorandum provides, among other things, a detailed summary of USAC's efforts to obtain information throughout the Receivership. Although the Massachusetts District Court denied the underlying Motion to Compel, the court noted in its order that "the receiver will file a final accounting after completion of the claims process," thus indicating that the issues would be considered at a later date.

10.    Further, the Receivership Order includes a provision which provides that the Receiver is entitled to submit his expenses to Verizon and SNET for payment. See Receivership Order ¶ 13. It appears, however, that the Receiver may have declined to submit his expenses to Verizon and SNET and, instead, has charged the Receivership for those expenses.

11.    In addition, the Receiver recently indicated to USAC (via counsel) that approximately $2 million remains in the Receivership estate, notwithstanding the approximately $10 - $11 million that a review of the docket indicates the Receiver has collected from the sale of assets during the Receivership.[5]

12.    Further, USAC has no information regarding any accrued but unpaid Receivership expenses.

### III.    STATEMENT

13.    As evident from the summary above, based on the lack of meaningful financial information provided by the Receiver to date, USAC has insufficient information to evaluate whether dismissal or continuation of the bankruptcy cases is in the best "interests of creditors" as contemplated by 11 U.S.C. § 305(a). Section 305(a) provides, that "[t]he court, after notice and a hearing, may dismiss a case under this title or may suspend all proceedings in a case under this title, at any time if the interests of creditors and the debtor would be better served by such dismissal or suspension…"

14.    USAC supports an independent review of the Receivership status, including financial information, by either this Court or a Chapter 11 trustee, in order to determine the course of action which is in the best interest of creditors.

---

[5] Since the Receiver has failed to file a pleading or otherwise disclose receipts and disbursements, USAC estimated the Receiver's aggregate receipts from asset sales disclosed on the docket.

15. Further, for many years, the Receiver has indicated that the Receivership is nearing a conclusion. This has proven untrue. Among other things, the ability of interested parties (Mr. Gangi, among others) to utilize appeals and other trial tactics have caused significant delay in what should have been an efficient liquidation process. At this point, the Receiver still has a few remaining assets sales to complete before he can conclude the Receivership. The Receiver asserts that the most expeditious process to complete the remaining sales is through the Receivership. In light of the slow progress of the Receivership and the history of delay (whether or not the fault of the Receiver), it is unfortunately very unlikely that the asset sales will conclude promptly and provide a resolution for creditors.

16. To the contrary, the sale of certain IP addresses appears to be in the beginning stages, with the Receiver merely seeking authority at this point to move forward with a sale. In addition, protracted litigation regarding the sale of Mr. Gangi's personal residence appears to be ongoing. Mr. Gangi will almost certainly appeal any orders regarding the sale of his residence. As in the past, such an appeal will add years and additional expense to the already insolvent Receivership.

17. The Bankruptcy Court may very well be better suited to conduct a swift and efficient sale of any assets in which the Debtors claim an interest. Specifically, 11 U.S.C. § 363 provides the Bankruptcy Court with the tools required to conduct a sale, with finality, and to moot the types of appeals that have burdened this Receivership.

18. Again, USAC supports an independent review by either the court or a Chapter 11 trustee to determine whether the bankruptcy process is best suited to efficiently liquidate the Debtors' remaining assets. Such an evaluation is required in order to determine the course of action which is in the best interest of creditors.

19.     Accordingly, USAC has no objection to the continuation of the Debtors' Chapter 11 cases <u>provided that</u> this Court appoint a Chapter 11 trustee to (a) take possession of and preserve all estate assets and (b) assess and determine whether dismissal of these proceedings are in the best interest of creditors or whether the remaining assets can be most efficiently liquidated in bankruptcy.

### IV.     USAC'S RIGHTS REGARDING RECEIVERSHIP ASSETS

20.     To the extent that the Receiver delivers property to a Chapter 11 trustee, USAC reserves all of its rights pursuant to 11 U.S.C. § 543(c). Section 543(c) provides that, after notice and a hearing, the court shall "(1) protect all entities to which a custodian has become obligated with respect to [turned-over property of the debtor]." One potential protection would be a requirement that the Receiver or Chapter 11 trustee segregate sufficient funds to pay USAC's post-Receivership claim and other similarly-situated expenses[6] from the rest of the funds turned over pursuant to 11 U.S.C. § 543.

21.     In addition, USAC reserves all rights regarding Court Orders which entered during the Receivership and entitle USAC to payments. Among other things, the Supplemental Sale Order which authorized the sale of the Debtors' business operations [MA Receivership Dkt. No. 827] requires the Receiver to retain sufficient funds on hand and available to pay the USF obligations in the full amount asserted by USAC (which was $450,000 as of January 13, 2012).

---

[6] In Footnote 3 of the Motion to Dismiss, the Receiver indicates that 90% of Receivership property shall be distributed to Verizon and 10% shall be distributed to SNET, although he "expects that as part of the claims process, the Massachusetts District Court will make Receivership Property available for distribution on account of [other] allowed claims… in order of their priority." This characterization of the claims process ignores the fact that expenses of the Receivership, such as USAC's post-Receivership claim, must be paid before any "Receivership property" is available for distribution to judgment creditors. In addition, it fails to account for Verizon and SNET's obligations to pay expenses incurred by the Receiver once presented.

## V. CONCLUSION

22. As discussed above, USAC would support a <u>brief</u> continuance of this hearing in order to allow the parties to provide this Court with the factual background required to assess the issues before the Court. Further, USAC has no objection to these bankruptcy proceedings, provided that this Court appoint a trustee to (a) take possession of and preserve all estate assets and (b) assess and determine the best course of action for creditors including whether dismissal of these proceedings is in the best interest of creditors. Finally, USAC reserves all of its rights to be paid from the assets of the Receivership pursuant to, among other things, 11 U.S.C. § 543(c)(1).

UNIVERSAL SERVICE
ADMINISTRATIVE COMPANY

By its attorneys,

Mirick, O'Connell, DeMallie & Lougee, LLP
Christine E. Devine, Esq. BBO #566990
Gina Barbieri O'Neil, Esq. BBO #670596
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax:    (508) 791-8502

-and-

SULLIVAN · HAZELTINE · ALLINSON LLC

*/s/ William A. Hazeltine*
William A. Hazeltine (No. 3294)
901 North Market Street, Suite 1300
Wilmington, DE 19801
Tel: (302) 428-8191
Fax: (302) 428-8195
whazeltine@sha-llc.com

Dated: October 21, 2014