**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FERROUS MINER HOLDINGS, LTD., | Bky. No. 14-12343 (BLS) |
| Alleged Debtor. | **Re: Dkt. Nos. 6, 11, 28** |
| In re: | Chapter 11 |
| GLOBAL NAPS, INC., | Bky. No. 14-12344 (BLS) |
| Alleged Debtor. | **Re: Dkt. Nos. 6, 11, 28** |
| | **Hearing Date: October 31, 2014 at 9:30 a.m.** |
| | **Objections Due: October 27, 2014, at 4:00 p.m.** |
| | **Replies Due: October 29, 2014, at 4:00 p.m.** |

**VERIZON NEW ENGLAND INC.'S REPLY TO DEBTORS' OBJECTION TO
RECEIVER'S MOTION TO DISMISS CHAPTER 11 BANKRUPTCY CASES
PURSUANT TO 11 U.S.C. § 305(a) AND/OR § 1112**

Verizon New England Inc. ("Verizon") files this Reply to the *Debtors' Objection to the Motion of Carl F. Jenkins, as Court-Appointed Receiver, to Dismiss Chapter 11 Bankruptcy Cases Pursuant to 11 U.S.C. § 305* [Dkt. No. 28] filed on October 27, 2014, and states:

**REPLY**

1.     Alleged Debtors' objection to the Dismissal Motion demonstrates the true purpose of these bankruptcy cases -– to collaterally attack orders entered by the Massachusetts District Court and the First Circuit and to avoid present and future orders in a forum that has not tolerated their litigation tactics.  At its base, this is an abuse of the bankruptcy system.

2.     Parsing through their objections, Alleged Debtors seek to use this bankruptcy to redress their complaints with the Receiver and the Receivership which include allegations that:

1

a) the Receiver has sold assets for less than the highest offer; b) the Receiver has refused to provide accountings of the receivership estate; c) the Receiver has wasted assets during the receivership; and d) there allegedly exist potential chapter 5 avoidance actions against Verizon and the Receiver. *See* Objection, ¶¶ 9, 35. Each one is fatally flawed. First, each sale has been approved by a Massachusetts District Court Order. *See, e.g.*, MA 2002, Dkt. Nos. 699, 705, 751, 816, 864, 988, 1195. Second, Gangi sought an accounting and the Massachusetts District Court denied the request as premature. MA 2002, Dkt. No. 992, 1032. Third, any alleged claims against the Receiver for waste or otherwise must be brought before the receivership court under the *Barton* doctrine and under the specific language in the Receivership Order. *See Barton v. Barbour,* 104 U.S. 126 (1881) (in order to sue a court-appointed receiver, the petitioning party must first seek leave of the court that issued the receiver's appointment); *see also* Receivership Order, ¶ 11. Finally, Verizon's judgment was obtained more than five years ago and Verizon has not received any payments from any of the Alleged Debtors on account of the judgment. Indeed, aside from the judgment, Verizon and its affiliates (the "Verizon Companies") assert that they hold additional and significant claims against Alleged Debtors. Moreover, the Verizon judgment was reduced by a court-approved Settlement Agreement which Gangi appealed and which the First Circuit affirmed. MA 2002, Dkt. Nos. 939, 1072. The Alleged Debtors vague threat against Verizon is unsupported and unavailing.

3.      This Court cannot be used as a forum to challenge the Massachusetts District Court's Orders and First Circuit Orders. Accordingly, this Court should dismiss these cases under Bankruptcy Code Section 305, or alternatively, Bankruptcy Code Section 1112.

**A.  Receiver's Authority to File the Dismissal Motion is Moot.**

4.      Alleged Debtors' argument that the Receiver does not have standing to file a motion to dismiss because it is not a creditor or party in interest has no merit.  To the extent it did, as several creditors and/or parties in interest have joined in the Receiver's motion, this objection is moot.  *See In re Ofty*, 44 B.R. 479, 482 (Bankr. D. Del. 1984) (holding receiver has standing and, even if it didn't, joinder by a party in interest saves the motion) (citing Fed. R. Civ. P. 17(a)).

**B.  Gangi had no Authority to File the Petitions**

5.      Alleged Debtors cite two cases to support their position that Gangi had the corporate authority to file the bankruptcy petitions.  These cases are not relevant here.

6.      The Receivership Order in the underlying action states that the membership interests and shares of the various Judgment Debtors, including those held by Alleged Debtors and Gangi, individually, are "Receivership Property" to be turned over to the Receiver. Dismissal Motion, Ex. B, ¶ 2.b.  Based on that language, Gangi lost control over his shares in Debtor Ferrous Minor Holdings, Ltd. (corporate parent of Debtor Global NAPs, Inc.).  Thus, his attempt to appoint himself as sole director of both Alleged Debtors the day before the bankruptcy petitions were filed is a violation of the Receivership Order because he lacked the ability to act through those shares.

7.      Neither case relied on by the Alleged Debtors presents this factual situation.  In *In re HydroTech Enters., LP*, No. 09-82179, 2010 Bankr. LEXIS 1110 (Bankr, E.D. Okla. April 9, 2010), the receivership order specifically removed individuals associated with the receivership entities from management or supervision of the business operations and enjoined their

interference with the operation of the business. *Id.* at \*3. Notably absent, however, is any indication that the equity interests in the receivership entities were transferred to the receiver.

8.      Similarly, the *Corporate & Leisure* case considered the authority of a state court to enjoin authorized persons from filing a bankruptcy petition on behalf of the receivership entities. *In re Corporate & Leisure Event Prods., Inc.*, 351 B.R. 724, 727 (Bankr. D. Ariz. 2006). Similar to *HydroTech*, the court removed the officers and directors of the receivership entity based on their bad acts. *Id.* Again, however, the Court did not direct the turnover of the equity interests of the receivership entities to the receiver. Thus, the receivership order in *Corporate & Leisure* did not impair the equity holders' rights to possess and, accordingly, exercise control over the stock of the entities.

9.      Moreover, the *Corporate & Leisure* case addresses the affect on a bankruptcy petition, as a federal matter, as it relates to state court orders/injunctions. Here, the relief sought by Alleged Debtors requires the bankruptcy court, an arm of the federal district court, to overrule (or at a minimum disregard) an injunction issued by a different federal district court. The requested relief is little more than an impermissible attempt to have this bankruptcy court enjoin a federal district court from acting or considering an issue, which would be in derogation of the principals of comity among coordinate tribunals. *See Matter of Mahurkar Double Lumen Hemodialysis Cath.*, 140 Bankr. 969, 974 (N.D.Ill 1992) ("For one federal court to issue an injunction forbidding litigation in another is extraordinary, given principles of comity among coordinate tribunals. For a bankruptcy judge to issue an injunction with the effect of preempting resolution of a pending motion in a district court is unheard of."); *see also Lower Brule Const. v. Sheesley's Plumbing & Heating Co.,* 84 Bankr. 638, 644 (D.S.D. 1988) ("While the bankruptcy court has the authority in some circumstances to enjoin parties from proceeding with actions in

state court, section 105 does not authorize a bankruptcy court to enjoin parties from proceeding in a federal district court.").

10.    Dismissal under Section 305 of the Bankruptcy Code is appropriate to prevent Alleged Debtors from using this Court and the bankruptcy process to collateral attack orders entered by the Massachusetts District Court and First Circuit.

### C.  There is Ample Support for Dismissal under Bankruptcy Code Section 305

11.    Dismissal of these cases better serves the interests of Alleged Debtors and creditors.  The Alleged Debtors have no assets and no ability to reorganize.  The Receivership is over four years old and virtually all of the assets have been sold.  The bankruptcy will simply layer additional administrative claims on top of those already incurred by the Receiver.  Alleged Debtors fail to consider that the Receivership funds will likely not even be available to pay any administrative expenses that will be incurred in these cases.  Receivership creditors, including Verizon, may seek to ear mark those funds to protect their claims under Section 503 and 543(c)(1). Indeed, several creditors have already indicated their intent to do so should the bankruptcies proceed. *See* USAC Statement, Dkt. No. 16, p.2; October 21, 2014 Hr'g Tr. 26:1-11 (Presentation by Amtrak).  Even if the Alleged Debtors had capital, it is incredible to think that they can begin operating in a highly regulated and competitive industry from a two-year standstill, be successful on any litigation that will bring monies into the estates, and pay a meaningful distribution to creditors.  Verizon alone holds a $36 million pre-receivership judgment and the Verizon Companies hold at least a $36 million post-receivership claim which makes any reorganization a fantasy. Restarting operations of these entities would only create additional administrative expenses with the risk born entirely by creditors that have already been through more than four years of business wind downs, asset sales and liquidations.  In addition,

there is under way a court-approved claims process in the receivership.  Quite simply, creditors would be significantly harmed by these bankruptcies and would bear all of the risk of their likely failure.

**D.  The *PrimeStone* Factors Favor Dismissal under Bankruptcy Code Section 1112**

12.     Alleged Debtors' analysis of the various factors considered for dismissal under Section 1112 of the Bankruptcy Code is fatally flawed.  A proper analysis of these factors, as stated in *In re Primestone Inv. Partners L.P.*, 272 B.R. 554 (D. De. 2002), as well as other factors that the Third Circuit has cited with approval, leads to an inevitable conclusion—these cases were filed in bad faith.

a.      Single Asset Case.  This is akin to a single asset case — i.e., a pot of money is all that is left of these Alleged Debtors.

b.      Few unsecured creditors.  Verizon and the Verizon Companies hold significant claims against these Alleged Debtors consisting of over 90% of pre- and post-receivership claims.

c.      No ongoing business and employees.  Alleged Debtors have no employees and have not operated for more than two years.  Additionally, they have no capital with which to restart operations, and no customers.  Based on these facts and Alleged Debtors' proposed strategy, these cases cannot succeed.

d.      Petition filed on eve of foreclosure or major court hearings.  These cases were filed in an attempt to stay hearings set on Verizon's motion to execute against Gangi's personal residence and another home purchased and paid for by Gangi that were scheduled before the Massachusetts District Court for October 15, 2014, and in connection with the Receiver's sale of property of another judgment debtor scheduled for October 22, 2014.

Specifically, at the October 15th hearing before the Massachusetts District Court, Gangi's attorney stated:

> Mr. Somma:  [A]ny claims that are derivative by a committee or a trustee or a creditor through Global NAPS as against Mr. Gangi or other non-debtor companies is also within the penumbra of the automatic stay.
>
> Accordingly, we submit to the Court that you should not go forward with today's proceedings or, at the very least, suspend them for a period of time until likely challenges to the filings emerge. We expect that there will be motions to abstain, to withdraw the reference, to change the venue, and so forth. That's going to take some period of time within which to sort out.

October 15, 2014 Hr'g Tr. at 8:10-20.

Later in the hearing, another of Gangi's attorneys argued that the stay should be imposed as to Gangi's personal assets:

> Mr. Osterberg:  [T]he fact is that all of the amount that Verizon is seeking to collect from Mr. Gangi is money that it claimed that Global NAPS owed and just in my own sort of naive way, why are they the only ones that would make that claim and why is that the only thing that is -- why would that not be something that may come up in the bankruptcy and that the bankruptcy court would have the first right to hear?
>
> THE COURT: To personal assets of Mr. Gangi?
>
> MR. OSTERBERG: Well, yes, your Honor. I mean, that's what we're here on. We're here on Verizon's motion –
>
> THE COURT: No. Are you saying that the pending bankruptcy pertains not only to Global NAPS and Ferrous Miner assets, but also to assets owned personally by Mr. Gangi?
>
> MR. OSTERBERG: I'm saying that it could.
>
> THE COURT: I mean, such as if he still had the Porsche and the airplanes --
>
> MR. OSTERBERG: Your Honor –
>
> THE COURT: -- if they were in his name?

> MR. OSTERBERG: Your Honor, I would -- so, I don`t remember the theory on the Porsche and the airplanes, but if the theory was Global NAPS bought the Porsche and its – and that was Global NAPS's money, why isn't that the same theory that would be entertained in the bankruptcy court?

*Id.* at 17:3-25.

Moreover, when asked by this Court if the Alleged Debtors would consent to the sale hearings moving forward against an affiliated party, Alleged Debtor's counsel replied that he had no authority to consent. October 21, 2014 Hr'g Tr. at 18:7-15. The intent is clear. The Alleged Debtors attempted to use these bankruptcy filings as a litigation tactic to stay attachment of personal assets of Gangi as well as to stay the sale of the last remaining asset in the Receivership.

   e.  Two party dispute.  This is a two-party (or alternatively three-party) dispute between Gangi and the Receiver and/or Verizon.  Gangi is attempting to use the bankruptcy process to collaterally attack the orders entered by the Massachusetts District Court concerning the Receiver's administration of the receivership and/or to collaterally attack orders Verizon has obtained and is seeking to obtain.

   f.  No cash or income.  The Alleged Debtors have no operating income.

   g.  No pressure from non-moving creditors.  This factor is not applicable because these are voluntary cases.

   h.  Previous bankruptcy petition.  While no previous bankruptcy was filed, Gangi has an adjudicated history of abusive litigation tactics and maneuvering aimed at thwarting creditor recoveries.

   i.  Prepetition conduct was improper.  This Court need to look no further than the Massachusetts District Court and First Circuit Orders for a discussion of the egregious

conduct prior to the petition date that caused harm to these Alleged Debtors and, most importantly, their creditors.  *See also* Verizon's Joinder, Dkt. No. 11.

j.    No possibility of reorganization.   There is no capital to restart these businesses.  Aside from the fact that Verizon holds the largest pre- and post-Receivership claims that will be need to be satisfied in full, to the extent that the post-Receivership claims are afforded priority, in order to confirm a plan, those claims must be paid in cash in full for any plan to be effective.

k.    Debtor formed immediately pre-petition.  N/A.

l.    Debtor filed solely to create the automatic stay. Demonstrated by discussion in (d) above.

13.    Examining the totality of the facts and circumstances in these cases, the Court has ample bases to dismiss the case under Section 305 or alternatively, under Section 1112 of the Bankruptcy Code.

WHEREFORE, Verizon respectfully requests that the Court grant the Dismissal Motion, enter an order dismissing these cases and granting such other relief as the Court deems just and equitable.

Respectfully submitted,

Dated:  October 29, 2014

**BLANK ROME LLP**

By: */s/ Regina Stango Kelbon*
Regina Stango Kelbon (DE 5444)
1200 Market Street, Suite 800
Wilmington, DE 19801-4226
Tel: (302) 425-6400
Fax: (302) 425-6464
Email: Kelbon@blankrome.com

Gregory F. Vizza
One Logan Square
130 N. 18th Street
Philadelphia, PA  19103
Tel: (215) 569-5500
Fax:  (215) 569-5555
Email: Vizza@blankrome.com

and

**GIBSON, DUNN & CRUTCHER LLP**
Jason Myatt
200 Park Ave
New York, NY 10166-0193
Tel: (212) 351-4085
Fax: (212) 351-6258
Email:  JMyatt@gibsondunn.com

*Co-Counsel to Verizon New England Inc.*